**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**OTAY MESA PROPERTY L.P. et al.,**

**Plaintiffs,**

**vs.**

**U.S. Department of Interior et al.,**

**Defendants,**

**and**

**CENTER FOR BIOLOGICAL DIVERSITY,**
**1333 N. Oracle Rd.**
**Tucson, AZ  85705**

**Intervenor-Defendant –Applicant.**

Civ. No. 1:08-cv-00383-(RMC)

**INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION
TO INTERVENE AS A DEFENDANT**

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the Center for Biological Diversity ("Center") hereby moves this Court to intervene as of right as a Defendant in this case, or, in the alternative, for permissive intervention.  The Center's motion to intervene is opposed by the Plaintiffs and the Federal Defendants take no position on the motion.

This motion is based on the attached Memorandum of Points and Authorities in support thereof and its exhibits, the pleadings, and any other matters that may be submitted to the Court during oral argument.  This motion is filed concurrently with the following documents:

[PROPOSED] ORDER GRANTING INTERVENTION;

EXHIBIT A: DECLARATION OF JONATHAN EVANS IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS A DEFENDANT;

EXHIBIT B:   DECLARATION OF DAVID HOGAN IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS A DEFENDANT**;**

EXHIBIT C: ANSWER   TO   COMPLAINT   FOR   DECLARATORY   AND INJUNCTIVE RELIEF;

EXHIBIT C, ATTACHMENT 1: MAP OF SAN DIEGO FAIRY SHIRMP CRITICAL HABITAT - UNIT 5D, UNITED STATES DEPARTMENT OF INTERIOR, U.S. FISH AND WILDLIFE SERVICE;

EXHIBIT D:  CERTIFICATE REQUIRED BY LCvR 7.1 OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA;

EXHIBIT E: COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, <u>OTAY MESA L.P., V. UNITED STATES DEPARTMENT OF INTERIOR</u>, Civ. No. 08-383 (D.D.C. filed March 3, 2008).

Respectfully submitted this Tuesday May 20, 2008.

/s/ Michael Senatore

Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: <u>msenatore@biologicaldiversity.org</u>

Jonathan Evans (<u>Pro Hac Vice</u> Applicant)
(CA Bar No. 247376)
CENTER FOR BIOLOGICAL DIVERSITY
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940
Email: <u>jevans@biologicaldiversity.org</u>

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **OTAY MESA PROPERTY L.P. et al.,** | **Civ. No. 1:08-cv-00383-(RMC)** |
| **Plaintiffs,** | |
| **vs.** | |
| **U.S. Department of Interior et al.,** | |
| **Defendants,** | |
| **and** | |
| **CENTER FOR BIOLOGICAL DIVERSITY,**<br>**1333 N. Oracle Rd.**<br>**Tucson, AZ  85705** | |
| **Intervenor-Defendant-Applicant.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE AS A DEFENDANT**

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the Center for Biological Diversity ("Center") submits this Memorandum of Points and Authorities in support of its Motion to Intervene as a Defendant.

## INTRODUCTION

In this case, Plaintiffs challenge the December 12, 2007, final rule designating critical habitat for the San Diego fairy shrimp. Designation of Critical Habitat for the San Diego Fairy Shrimp, Final Rule, 72 Fed. Reg. 70648 (December 12, 2007).  At issue in this case is the San Diego fairy shrimp, a small aquatic crustacean that inhabits vernal pools—a fragile, unique habitat—that form in shallow depressions on the hard clay mesas of southwestern California and northwestern Baja California.  The vast majority of vernal pools that provide the home for entire life cycle of the San Diego fairy shrimp have been destroyed.  These fragile species are

extremely sensitive to the environmental degradation that has accompanied southern California's rapid urbanization.  The narrow range of disappearing and degraded habitat of the San Diego fairy shrimp has left it on the brink of extinction.

The case at hand is directly related to long series of actions brought by the Center for Biological Diversity, formerly the Southwest Center for Biological Diversity, ("Center"), its employees and members seeking full protection for this rare and imperiled invertebrate under the Endangered Species Act ("ESA").  16 U.S.C. §§ 1531, et seq.  The Center has been involved in every step of the process to require ESA protection for the San Diego fairy shrimp.  In 1992, current Center employee, David Hogan, petitioned the United States Fish and Wildlife Service ("FWS") to list the San Diego fairy shrimp as endangered under the ESA.  Proposed Rule to List the San Diego Fairy Shrimp as Endangered.  59 Fed. Reg. 39874, 397875 (August 4, 1994).  The Center was forced to file suit against the FWS to compel the FWS to meet the statutorily required deadlines for making a listing determination under the ESA.  Sierra Club v. Rogers, Civ. No. 93-1717 (S.D.Cal. filed November 5, 1993); Southwest Ctr. for Biological Diversity v. Babbitt, Civ. No. 96-1170 (S.D.Cal. filed June 27, 1996).

The Center filed suit to compel the FWS to conduct the statutorily required designation of critical habitat for the San Diego fairy shrimp under the ESA.  Southwest Ctr. for Biological Diversity v. Berg., Civ. No. 98-1866 (S.D. Cal. Filed October 14, 1998).  Most recently the Center was forced to challenge the FWS's issuance of a permit allowing the illegal destruction of San Diego fairy shrimp and its critical habitat within the City and County of San Diego.  Southwest Ctr. for Biological Diversity v. Bartel, 457 F. Supp. 2d 1070, amended at 470 F. Supp. 2d 1118 (S. D. Cal. 2006).  The Center therefore seeks to intervene as of right as a Defendant.

The Center's intervention is opposed by the Plaintiffs, and Defendants' take no position on the intervention.  Exhibit A at ¶¶ 2,3.  (Declaration of Jonathan Evans in Support of Intervenor-Applicant Center for Biological Diversity's Motion to Intervene as a Defendant ("Evans Dec.")).

The Center readily meets the test under Federal Rule of Civil Procedure 24(a) for intervention as of right, which is warranted whenever: (1) the application is timely; (2) the applicant has a legally protected interest in the action; (3) the action threatens to impair that interest; and (4) none of the existing parties adequately represent the would-be intervenor's interests. In this case, intervention is clearly timely because the case is in the very early stages. The Center also has a legally cognizable interest in the fate of the San Diego Fairy Shrimp, as evidenced by the Center's involvement in protection of this species over many years. Additionally, this suit clearly has the potential to prejudice the Center's interests. Plaintiffs here seek to invalidate critical habitat designations of the San Diego Fairy Shrimp, which would result in reduced protections of habitat under the ESA. Finally, the Center's interests are not adequately represented by Plaintiffs, nor are they protected by the Federal Defendants, who have designated and protected critical habitat for the San Diego Fairy Shrimp only after multiple successful lawsuits by the Center.

As argued below, the Center's Motion to intervene as a Defendant should be granted.

## LEGAL FRAMEWORK

### Protection under the Endangered Species Act

This case concerns the protection of the San Diego fairy shrimp under the Endangered Species Act ("ESA"), a law enacted by Congress to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." Tennessee Valley Authority v. Hill, 437 U.S. 153, 184 (1978).

The ESA requires the Secretary of Interior, through his designee the FWS, to determine whether any species is "endangered" or "threatened." Only those species that have been listed as "endangered" or "threatened" receive protection under the ESA. 16 U.S.C. § 1533(a). A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." Id. § 1532(6). A species is "threatened" if it "is likely to become an endangered species

within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20). The term "species" is defined broadly under the ESA to include "any subspecies of fish or wildlife or plants." Id. § 1532(16).

The ESA sets forth a detailed process by which the Secretary of Interior must add to or modify the list of threatened and endangered species via notice and comment rulemaking. Id. § 1533. The process to list, de-list, or reclassify a species from endangered to threatened or vice-versa can begin either by citizen petition or by internal FWS processes. The FWS must base all listing determinations "solely on the basis of the best scientific and commercial data available." Id. § 1533(b)(1)(A).

Once a species is listed under the ESA, an array of statutory protections applies. For example, Section 7 requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse modification" of its "critical habitat." Id. § 1536(a)(2). In addition, the "take" of listed species is generally prohibited. Id. § 1538(a); 50 C.F.R. § 17.31(a). "Take" means "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

## Designation of Critical Habitat under the ESA

To the maximum extent prudent and determinable the FWS shall also designate critical habitat for listed species. 16 U.S.C. § 1533(b)(6)(C)(ii); 50 C.F.R. §424.12. Critical habitat is defined as those "specific areas within the geographical areas occupied by the species, at the time it is listed… on which are found those physical or biological features [that are] (I) essential to the conservation of the species and (II) which may require special management considerations or protection." 16 U.S.C. § 1532(5)(A)(i). The FWS may also designate "specific areas outside of the geographical area occupied by the species at the time it is listed… upon a determination by the Secretary that such areas are essential for the conservation of the species." 16 U.S.C. § 1532(5)(A)(ii). These critical habitat designations must be delineated on a map. 50 C.F.R. §§ 424.12(c), 424.18.

When considering the designation of critical habitat, the FWS shall focus on the principal biological or physical constituent elements within the defined area that are essential to the conservation of the species. 50 C.F.R. §424.12(b). Primary constituent elements may include, but are not limited to, the following: roost sites, nesting grounds, spawning sites, feeding sites, seasonal wetland or dryland, water quality or quantity, host species or plant pollinator, geological formation, vegetation type, tide, and specific soil types. 50 C.F.R. §424.12(b). In making the critical habitat designation the FWS may also consider the following: (1) space; (2) food, water, air light, minerals, or other nutritional or physiological requirements; (3) cover or shelter; (4) breeding and nesting sites; and (5) habitats protected from disturbance or representative of historical geographic or ecological distribution of the species. 50 C.F.R. §424.12(b).

When promulgating a final rule designating critical habitat for a listed species, the FWS must rely on the best scientific data available and take into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat. 16 U.S.C. § 1533(b)(2). When a critical habitat decision is not made contemporaneously with the listing decision the FWS has 12 months from the date of listing to designate critical habitat. 16 U.S.C. § 1533(b)(6)(C); 50 C.F.R. §424.17(b)(2). Any interested person may also petition the FWS for critical habitat designation independent of any listing petition. 50 C.F.R. §424.14

### Habitat Conservation Plans under the ESA

Section 10 of the ESA provides a narrow exception to the take prohibition, permitting a "regulated kill" of endangered species under narrow circumstances. §1539(a)(l)(B). In these specially-controlled situations, Congress allows the sacrifice of a certain number of creatures provided that, among other things, such take will be minimized and mitigated and that such take will not "appreciably reduce the likelihood of survival and recovery of the species." Id. § 1539(a).

In order to be granted incidental take of endangered species, the property owner or developer must prepare and the FWS must approve a detailed application known as a Habitat Conservation Plan ("HCP"). The HCP must contain specific information, analysis, and plans

(including financial support) that specify how the applicant will "minimize and mitigate" the adverse impact on the protected species. § 1539(a)(2)(A).

## FACTUAL AND PROCEDURAL HISTORY

The biology and natural history of the endangered San Diego fairy shrimp (*Branchinecta sandiegoensis*) is summarized below.[1]  The San Diego fairy shrimp is a small aquatic crustacean that inhabits vernal pools—a fragile, unique habitat—that form in shallow depressions on the hard clay mesas of southwestern California and northwestern Baja California.  Southwest Ctr. for Biological Diversity v. Bartel, 470 F. Supp. 2d at 1126.  The San Diego fairy shrimp is considered a habitat specialist because its entire life cycle is spent in the seasonal habitat of vernal pools.  62 Fed. Reg. at 4926.  Vernal pools contain water in the short winter months, but can often be difficult to discern during the long dry months.  Southwest Ctr. for Biological Diversity v. Bartel, 470 F. Supp. 2d at 1126.  Fairy shrimp are extremely sensitive to their environment existing in only a narrow range of conditions where the water availability, water temperature, and water quality in vernal pools meet specific conditions.  Southwest Ctr. for Biological Diversity v. Bartel, 470 F. Supp. 2d at 1127.

San Diego fairy shrimp have been severely impacted by habitat destruction and fragmentation from urban development and agricultural conversion, alterations of vernal pool hydrology, off-road vehicle use, and livestock overgrazing.  62 Fed. Reg. 4925.  Substantial losses of vernal pools have occurred within the Otay Mesa area—the general vicinity of Plaintiffs properties—where over 40 percent of vernal pools were destroyed between 1979 to 1990.  Proposed Designation of Critical Habitat for the San Diego Fairy Shrimp, 65 Fed. Reg. 12182 (March 8, 2000).  Significant portions of Otay Mesa have been designated for development and many of those projects would eliminate the majority of San Diego fairy shrimp

---

[1] A more detailed account of the biology, natural history, and threats to the San Diego fairy shrimp can be found in the Determination of Endangered Status for the San Diego Fairy Shrimp, 62 Fed. Reg. 4925 (February 3, 1997) and Southwest Center for Biological Diversity v. Bartel,.470 F. Supp. 2d at 1126-1127.

habitat.  62 Fed. Reg. at 4932-4933.  These impacts are compounded because vernal pools are a finite resource, while new development is not.  New vernal pools cannot be created because there is no known effective method to replace destroyed or degraded pools.  <u>Southwest Ctr. for Biological Diversity v. Bartel</u>, 470 F. Supp. 2d at 1127; 62 Fed. Reg. at 4931.

## I.   PROTECTION OF THE SAN DIEGO FAIRY SHRIMP AS "ENDANGERED"

The long road to protection for the San Diego fairy shrimp officially began in March of 1992, when the FWS received a petition from David Hogan, formerly of the San Diego Biodiversity Project in Julian, California, and Dr. Denton Belk of the Lady of Our Lake University in San Antonio, Texas, to list the San Diego fairy shrimp as an endangered species. 62 Fed. Reg. at 4926.  Dr.  Belk was one of the nation's foremost experts on the life history, evolution, and identification of freshwater crustaceans, including fairy shrimp.  Mr. Hogan has filed listing petitions for more than two dozen species and currently works as the Conservation Manager at the Center.  The petition requested that critical habitat be designated for the San Diego fairy shrimp concurrently with listing and identified the loss of vernal pool habitat as the primarily reason for the decline of the species.

The FWS had a statutory requirement to issue a finding on the San Diego fairy shrimp listing petition within 12 months.  16 U.S.C. 1533(b)(3)(B).  When FWS did not respond to the petition in a timely manner, the Center sued to compel a preliminary 90-day determination and a 12-month finding.  A court in the Southern District of California ordered FWS to comply with these statutory deadlines. <u>Sierra Club v. Rogers</u>, Civ. No. 93-1717 (S.D.Cal. November 5, 1993). On August 4, 1994, the FWS published the "Proposed Rule to List the San Diego Fairy Shrimp as Endangered" under the ESA.  59 Fed. Reg. 39874.

A year later, the FWS missed the next mandatory statutory deadline for a final listing and critical habitat determination.  <u>See</u> 16 U.S.C. § 1533(b)(6)(A) & (C); 50 C.F.R. 424.17(a)(1). Consequently, the Center was forced to sue again when the FWS had not acted by the August 4, 1995 deadline.  On October 24, 1996, the Court held that the FWS violated its mandatory duties,

rejected all FWS's excuses for non-compliance, and ordered final action within three months. Southwest Ctr. for Biological Diversity v. Babbitt, Civ. No. 96-1170 (S.D.Cal. file June 27, 2996) October 24, 1996 Order.

Shortly thereafter, the FWS moved to clarify the Court's October 24, 1996 Order to determine whether the duty to designate critical habitat was also due February 1, 1997. The Court responded by citing the relevant statutory provision requiring concurrent final listing and critical habitat determinations. Id. at November 15, 1996 Order. Compelled by court order, the FWS listed as an endangered species the San Diego fairy shrimp. 62 Fed. Reg. 4925. At the same time, the FWS determined that designating critical habitat was "not prudent." Id. at 4937.

## II. PROTECTION OF THE SAN DIEGO FAIRY SHRIMP BY DESIGNATING CRITICAL HABITAT

To the maximum extent prudent and determinable the FWS shall also designate critical habitat for a listed species. 16 U.S.C. § 1533(b)(6)(C)(ii); 50 C.F.R. §424.12. When the FWS published the final rule listing the San Diego fairy shrimp it also determined that designating critical habitat for the San Diego fairy shrimp is not prudent because critical habitat delineations would likely increase the degree of threat from vandalism or other human activities. 62 Fed. Reg. at 4937.

On October 14, 1998, the Center filed a lawsuit in the U.S. District Court for the Southern District of California challenging the FWS's decision not to designate critical habitat for the San Diego fairy shrimp. Southwest Center for Biological Diversity v. Berg, Civ. No. 98-1866 (S.D. Cal. filed October 14, 1998). The Center alleged the following:

- The FWS had not met its heavy burden warranting an exception to the obligation to designate critical habitat;

- Despite a voluminous record the FWS never discussed the issue of whether to designate critical habitat and did not include evidence of past or the likelihood of future vandalism;

- The FWS failed to consider the fact that publishing maps and descriptions of vernal pool locations could not cause an increase in vandalism because maps and the locations were already widely available and publicly distributed; and

- Nothing in the record demonstrates that the FWS considered the benefits of a critical habitat designation or balanced the pros and cons of a designation before making its not prudent decision.

Again compelled by a court order resulting from the Center's suit the FWS was forced to withdraw the existing "not prudent" critical habitat determination and publish a new proposed critical habitat determination for the San Diego fairy shrimp by February 29, 2000. Designation of Critical Habitat for the San Diego Fairy Shrimp, Proposed Rule, 68 Fed. Reg. 19890 (April 22, 2003).

On March 8, 2000 the FWS proposed to designate approximately 36,501 acres of critical habitat for the San Diego fairy shrimp. Proposed Designation of Critical Habitat for the San Diego Fairy Shrimp, 65 Fed. Reg. 12181 (March 8, 2000). In May of 2000, the Center, on behalf of seven other conservation organizations,[2] submitted comments on the March 2000 critical habitat designation encouraging the expansion of the critical habitat proposal to assure protection and recovery of the San Diego fairy shrimp. Specifically, the conservation organizations encouraged the critical habitat designation to encompass the following: all vernal pool complexes included in the FWS's "Recovery Plan for Vernal Pools of Southern California"; pools located within the boundaries of the City and County of San Diego Habitat Conservation Plan—the San Diego Multiple Species Conservation Program; and pools within the Camp Pendleton and Miramar Marine bases.

The FWS's October 2000 final rule designated approximately 4,025 acres as critical habitat, a fraction of the proposed 36,501 acres proposed as critical habitat. Final Designation of

---

[2] Other conservation organizations commenting with the Center on the March 2000 San Diego fairy shrimp critical habitat designation include the Friends of Los Penasquitos Canyon, Preserve South Bay, Preserve Wild Santee, San Diego Audubon, San Diego Chapter Sierra Club, San Diego Earth Times, and the Vernal Pool Society.

Critical Habitat for San Diego Fairy Shrimp, 65 Fed. Reg. 63438 (Oct. 23, 2000). The FWS's October 2000 final rule designating critical habitat for the San Diego fairy shrimp was challenged in a lawsuit by the Building Industry Association of Southern California, the National Association of Home Builders, and the Foothill/Eastern Transportation Corridor Agency. Building Industry Association of Southern California v. Norton, Civ. No. 01-7028 (C.D.Cal. filed January 17, 2001). On June 11, 2002 The US District Court for the Central District of California granted the request for a remand of the final rule designating critical habitat to the FWS for further consideration of the economic impact of that designation. Id..[3]

Less than a year later the FWS published a proposed revised rule designating critical habitat for the San Diego fairy shrimp on approximately 6,098 acres. Designation of Critical Habitat for the San Diego Fairy Shrimp, 68 Fed. Reg. 19888 (April 22, 2003). Again, the Center provided comments on the FWS's proposed critical habitat designation for the San Diego fairy shrimp advocating for stronger protections to assure the species' recovery and compliance with the ESA. Specifically the Center criticized the exclusion of San Diego fairy shrimp and their vernal pools in existing individual HCPs in the City and County of San Diego, and Department of Defense Integrated Natural Resources Management Plans because those plans do not provide adequate protection for the species.

On December 12, 2007, the FWS published a revised final rule designating 3,082 acres of critical habitat for the San Diego fairy shrimp. Designation of Critical Habitat for the San Diego Fairy Shrimp, 72 Fed. Reg. 70648 (December 12, 2007). This designation represented roughly half of the April 2003 proposed revised critical habitat designation, and less than one tenth of the March 2000 proposed original critical habitat designation.

---

[3] Plaintiffs Building Industry Association of Southern California also challenged the critical habitat designation for the California gnatcatcher along with Plaintiffs in the following related cases: Rancho Mission Viejo LLC v. Babbitt, Civ. No 01-08412 (C.D.Cal filed December 28, 2000), and Natural Resources Defense Council v. United States Department of Interior, Civ. No. 99-5246 (C.D.Cal. filed September 29, 1993). On June 11, 2002 the Court granted the motion for voluntary remand of the San Diego fairy shrimp and California gnatcatcher critical habitat designations and stayed the three pending cases pending resolution of the remand.

Both the April 2003 proposed revised and December 2007 final revised critical habitat designation contained San Diego fairy shrimp critical habitat unit 5D, which allegedly included portions of Plaintiffs' alleged properties.  Complaint at ¶¶ 1-3.  In the final rule the FWS found that critical habitat unit 5D in East Otay Mesa was properly designated as critical habitat:

> The areas we are designating as critical habitat contain the features essential for the conservation of the San Diego fairy shrimp. Critical habitat subunit 5D on eastern Otay Mesa contains vernal pools that support known locations of the San Diego fairy shrimp and the watershed area necessary to maintain the vernal pools. The area designated as critical habitat gently slopes to the south and contains several vernal pools dispersed across an area of approximately 391 ac (158 ha). The area on East Otay Mesa included in the designation is relatively undamaged by development and offroad vehicle activity.

72 Fed. Reg. 70653 (Dec. 12, 2007).

## III. PROTECTION OF SAN DIEGO FAIRY SHRIMP AND ITS CRITICAL HABITAT

One of the primary threats to San Diego fairy shrimp and their vernal pools is urban development.  62 Fed. Reg. at 4932.  The Center has advocated for the conservation and protection of the San Diego fairy shrimp and its critical habitat through administrative and judicial review of individual development projects as well as the City of San Diego Multiple Species Conservation Plan.

From 1996 to the present the Center advocated for the preservation and protection of vernal pool ecosystems and San Diego fairy shrimp on numerous individual projects.  Several examples include the following.  From 1996 through 1998, the Center worked to protect vernal pools in the City of San Diego from a development entitled "Neighborhood 8A".  Ex. B, Hogan Dec. at ¶ 7.  This advocacy resulted in increased protections for vernal pool species in that area. In 1998, the Center worked to protect vernal pool species from a commercial and residential project in the City of San Diego entitled "Cousin's Market Center." Id..  During 2003 to 2004, the Center worked to protect vernal pool species from "Rhodes Crossing", a residential development in the City of San Diego impacting San Diego fairy shrimp habitat.  Id..  Recently, during the 2007-2008 period, the Center worked to protect San Diego fairy shrimp vernal pools from the "Shaw Lorenz" and "Fanita Ranch" residential developments.  Id.

In an attempt to streamline the ESA permit process the County and City of San Diego sought, and obtained, an ESA § 10 incidental take permit ("ITP") through the HCP process. The City and County HCP process was entitled the San Diego Multiple Species Conservation Plan ("MSCP"). The City obtained an "umbrella" permit from the FWS to kill protected species— including the San Diego fairy shrimp—and developers seeking approval of specific projects obtained authorization from the City rather than going through their own cumbersome application and review process with the FWS. Southwest Ctr. for Biological Diversity v. Bartel, 470 F. Supp. 2d at 1128  The ITP covers 543,243 acres within San Diego county. Id. The MSCP provided a general, regional framework plan and Subarea Plans under the MSCP contained specific components of each jurisdictions' portion of the entire MSCP area. Id. The City of San Diego prepared its own local Subarea Plan under the general, regional framework of the MSCP.

The Center closely monitored the development, permitting, and implementation of the San Diego MSCP. After monitoring massive destruction of vernal pool species permitted through the San Diego MSCP process, including the destruction of 26 out of 27 vernal pools resulting from one project alone, the Center and thirteen other environmental groups challenged the FWS's issuance of an ITP for vernal pool species through the City of San Diego subarea plan under the San Diego MSCP in December of 1998. Southwest Ctr. for Biological Diversity v. Bartel, 2007 U.S. Dist. LEXIS 64232, *4-5 (S.D. Cal. 2007). A crucial component of the Center's argument was that the San Diego MSCP is not an adequate substitute for the designation of critical habitat for the San Diego fairy shrimp and its associated vernal pools species. The Court ruled in favor of the Center invalidating the City of San Diego subarea plan of the San Diego MSCP as it relates to vernal pool species because the "ITP would permit monumental destruction of the vernal pool species, which are extremely sensitive to their environment and were virtually extinct in 1995." Southwest Ctr. for Biological Diversity v. Bartel, 470 F. Supp. 2d at 1123. The Court specifically noted the Center's role in assuring FWS met its legal obligations under the ESA:

> [t]hese citizens did what FWS should have done in the first instance. The lawsuit ensured that the regulated kill of certain number of endangered species will minimize and mitigate the impact on protected species so that they may survive and recover overall as contemplated by the ESA. 16 U.S.C. §§ 1532, 1536, 1539

Southwest Ctr. for Biological Diversity v. Bartel, 2007 U.S. Dist. LEXIS 64232, *14.

It is important to note that the Service has not adequately represented the Center's interests as it relates to property holders, developers, and the building industry during the litigation over the San Diego fairy shrimp.  In June of 1999 the Center opposed intervention by the building industry in MSCP case, which was not opposed by FWS.  Southwest Ctr. for Biological Diversity v. Bartel, 2007 U.S. Dist. LEXIS 64232, *7.  In addition to taking differing legal opinions the Center and the Service have advanced different arguments regarding the litigation.  Southwest Ctr. for Biological Diversity v. Bartel, 2007 U.S. Dist. LEXIS 64232, *8 ("Plaintiffs and Federal Defendants opposed the legal position of the Builder Intervenors, though each from its unique point of view.")

The Center, its employees, and members continue to advocate for the protection of San Diego fairy shrimp through various revisions of the San Diego MSCP, and through administrative review of development projects.  The Center is currently engaged in settlement discussions with the FWS over the injunction and pending appeal of the San Diego MSCP case, Southwest Center for Biological Diversity v. Bartel, 470 F. Supp. 2d 1118 (S.D. Cal. 2006).  Ex. B, Hogan Dec. at ¶ 6.  The Center also remains involved in individual review and approval of development projects in the City of San Diego as a result of that suit to assure that development projects minimize take of San Diego fairy shrimp and the destruction of its vernal pools or critical habitat.  Id.

Based on this procedural history, it is clear that the Center clearly meets the test for intervention as of right to assure the protection of the San Diego fairy shrimp and its critical habitat.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 24(a)(2) provides as follows:

On timely motion, the court must permit anyone to intervene who… claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest..

The D.C. Circuit uses the following four-part test to evaluate motions to intervene as of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." S.E.C. v. Prudential Securities, Inc., 136 F.3d 153, 156 (D.C. Cir. 1998). See also Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998). In addition, the applicant must demonstrate that it has standing. Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs, 519 F. Supp. 2d 89, 91-92 (D.D.C. 2007) In assessing these factors, it is relevant that the D.C. Circuit counsels for "a liberal application in favor of permitting intervention" under Rule 24(a). Nuesse v. Camp, 385 F.2d 694, 702 (D.C. Cir. 1967). See also The Wilderness Society v. Babbitt, 104 F. Supp.2d 10, 18 (D.D.C. 2000) (noting that "the D.C. Circuit has taken a liberal approach to intervention") (citing NRDC v. Costle, 561 F.2d 904, 910-911 (D.C. Cir. 1977)).

Following its liberal application of Rule 24, this Court and the D.C. Circuit routinely grant conservation organizations' motions to intervene where they have an interest in pending litigation. [4]

---

[4] See, e.g. Home Builders Association of Northern California et al. v. United States Fish and Wildlife Service et al., Civ. No. 06-932 (D.D.C. filed May 17, 2006) July 31, 2006 Order on Motion to Intervene (Center granted intervention in case challenging listing of endangered species by building industry); George E. Warren Corp. v. EPA, 159 F.3d 616 (D.C. Cir. 1998), as amended by 164 F.3d 676 (D.C. Cir. 1999) (three environmental groups authorized to intervene on EPA's behalf in industry challenge to EPA air rules); Wilderness Society v. Morton, 463 F.2d 1261 (D.C. Cir. 1972) (Canadian environmental group allowed to intervene in U.S.

## ARGUMENT

## I.    THE CENTER SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT

The Center's Motion should be granted because the Center clearly meets the standard set forth in Federal Rules of Civil Procedure Rule 24(a)(2), and meets all four parts of the D.C. Circuit's test for intervention as reviewed below.  The Center has timely demonstrated an interest in the protection of the San Diego fairy shrimp and its critical habitat that may be impaired by this lawsuit, and the Center's interests are not adequately represented by the existing parties. The Center also has standing to intervene.

### A.    The Center's Motion to Intervene is Timely

Timeliness is determined by examining all the circumstances of a case.  Southern Christian Leadership Conference v. Kelley, 747 F.2d 777, 779 (D.C. Cir. 1984).  Of particular importance are the time elapsed since the inception of the suit, the probability of prejudice from the intervention to those already parties, the purpose of the intervention, and the degree to which intervention is necessary to preserve the applicant's rights.  Id.; Safari Club Int'l v. Babbitt, 1994 U.S. Dist. LEXIS 18183 (D.D.C. Dec. 15, 1994)

---

environmental group's challenge to Interior Department's compliance with environmental procedures); National Coal Association v. Uram, 39 Env't Rep. Cas. (BNA) 1624 & n.2, 1994 U.S. Dist. LEXIS 16404, *1 & n.2 (D.D.C. 1994) (environmental group authorized to intervene in industry challenge to environmental rules, and to act as plaintiff in challenging other aspects of those rules); Kerr-McGee Corp. v. Hodel, 630 F. Supp. 621 (D.D.C. 1986), vacated as moot on other grounds 840 F.2d 68 (D.C. Cir. 1988) (environmental group authorized to intervene in industry litigation challenging alleged government inaction on mining leases).  Other Courts have reached similar results. See In re: Sierra Club, 945 F.2d 776 (4th Cir. 1991) (environmental groups could intervene as of right to protect interests in related administrative proceeding); Washington State Building & Construction Trades Council v. Spellman, 684 F.2d 627 (9th Cir. 1982), cert. denied 461 U.S. 913 (environmental group that sponsored initiative could intervene as of right in litigation over that law); California v. Bergland, 29 F.R.Serv.2d 144 (E.D. Cal. 1979) (environmental groups could intervene as of right in a case of first impression, since stare decisis effect could affect group's interests); U.S. v. Reserve Mining Co., 56 F.R.D. 408 (D. Minn. 1972) (environmental groups who sought to protect members' recreational and aesthetic interests could intervene as of right in federal action against polluter).

Here, the Plaintiffs filed their complaint on March 3, 2008. Less than three months have elapsed since the inception of the suit. No dispositive motions have been filed, no hearings have occurred, the record has not been submitted, and no discovery has been taken. Because there has been no delay, the Center's motion is clearly timely. See, e.g., Admiral Ins. Co. v. National Cas. Co., 137 F.R.D. 176, 177 (D.D.C. 1991) (holding a motion to intervene timely where "[t]he major substantive issues . . . have not yet been argued or resolved, and the movants filed their motions promptly"). The probability of prejudice to the existing parties is extremely low because intervention at this early stage will not cause delay in the proceedings and applicants have concurrently filed an answer with this intervention motion.

The purpose of the intervention serves an important public interest in maintaining protections for endangered wildlife that have been recognized by the FWS as imminently threatened with extinction. Intervention is necessary to preserve the applicant's rights for full protection of the San Diego fairy shrimp and critical habitat for the San Diego fairy shrimp as discussed supra at §§ C, D. Because the Center's intervention motion is filed at this early stage—before any substantive issues have been argued or resolved—and the intervention is necessary to protect the Center's interest in maintaining conservation protections for the endangered San Diego fairy shrimp the intervention is timely.

## B. The Center Has a Legally Protected Interest in the Subject Matter of This Action

When assessing the interest requirement of Rule 24(a), the D.C. Circuit has adopted a liberal approach, looking to the "policies behind the 'interest' requirement" in the rule, and viewing the rule as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d at 700; see also Foster v. Gueory, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (quoting Nuesse). This Circuit has observed that "[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real

stake in a controversy are afforded an opportunity to be heard." Hodgson v. United Mine Workers of America, 473 F.2d 118, 130 (D.C. Cir. 1972).

As is apparent from the procedural history described above, the Center and its members have a clear and legally cognizable interest in this action. It was the Center's advocacy and past lawsuits that compelled the FWS to protect the San Diego fairy shrimp and its critical habitat in the first instance. The Center's primary mission is the protection of imperiled species such as the San Diego fairy and its habitat. Ex. B, Hogan Dec at ¶ 2. Further, the Center and its members and staff have significant professional and personal interests in the San Diego fairy shrimp, its habitat, and its protection. Ex. B, Hogan Dec..

Both the Center and its members have demonstrated a long-standing interest in the protection of the San Diego fairy shrimp. That interest easily provides a sufficient basis for intervention in this case. See, e.g., Idaho Farm Bureau Fed'n. v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995) ("[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it had supported."); Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior, 100 F.3d 837, 841-44 (10th Cir. 1996) (individual's involvement with a species through his activities as a photographer, amateur biologist, naturalist, and conservation advocate amounted to sufficient interest for purpose of intervention in litigation covering a species' under the ESA); Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 526-528 (9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife interests" were sufficient for intervention as a matter of right).

Stated another way, the Center's and its members' interest in preserving the San Diego fairy shrimp and its habitat easily demonstrates Article III standing. See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 181-83 (2000) (harm to recreation opportunities constitutes injury in fact for purposes of standing); Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-63 (1992) ("desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing").

The Center has standing to bring this action because: 1) its members have standing to sue

in their own right; 2) the interests at stake are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires its members to participate directly in the lawsuit.  See Consumer Fed'n of Am. v. Fed. Commc'ns Comm'n, 358 U.S. App. D.C. 271, 348 F.3d 1009, 1011 (D.C. Cir. 2003) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)); Nat'l Ass'n of Home Builders v. United States Army Corps of Eng'rs, 519 F. Supp. 2d 89, 92 (D.D.C. 2007).

Regarding element (1), members have standing to sue in their own right if "they have suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical, . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Ecological Rights Found. v. Pacific Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000) quoting Friends of the Earth v. Laidlaw, 528 U.S. 167, 180-181 (2000).

The continued existence of the San Diego fairy shrimp is extremely important to Center for Biological Diversity employee and member David Hogan, who derives scientific, academic, aesthetic, recreational, professional, and other benefits from the existence of this unique animal. Ex. B, Hogan Dec. at ¶¶ 3-7, 9-12 (Hogan Dec.).  Mr. Hogan will suffer concrete, particularized, actual, and imminent harm if Plaintiffs' lawsuit were to succeed, because the San Diego fairy shrimp is more likely to continue its decline toward extinction and to become extinct through weakened protections for its habitat.  Id. at ¶¶ 9-12.  Mr. Hogan visits the vernal pool habitat of the San Diego fairy shrimp on an annual basis wherever possible and intends to continue to do so into the future.  Id at ¶¶ 8.  Mr. Hogan's aesthetic, conservation, and recreational interests would be lessened by the elimination of San Diego fairy shrimp critical habitat, which provides a crucial tool under the ESA for wildlife protection, conservation, and public education.

Mr. Hogan would also lose the opportunity to visit the San Diego fairy shrimp and vernal pools in that critical habitat unit if Plaintiffs are granted their requested relief, the protections removed, and the property developed.  That population of San Diego fairy shrimp would no longer be available for academic, scientific, and professional study for Mr. Hogan.  Specifically,

Mr. Hogan would suffer an increased likelihood of the loss of San Diego fairy shrimp and their vernal pool habitat in the Otay Mesa area and in critical habitat unit 5D.  The challenged critical habitat designation contains relatively undamaged "features essential for the conservation of the San Diego fairy shrimp", and "vernal pools that support known locations of the San Diego fairy shrimp and the watershed area necessary to maintain the vernal pools."  72 Fed. Reg. at 70653. Eliminating protections for these vernal pools, that is the habitat of the San Diego fairy shrimp, would negatively impact the scientific, academic, aesthetic, recreational, and professional interests of Mr. Hogan.  This increase in harm from the disturbance of the environment is "sufficiently concrete" for the purposes of standing, and demonstrate a "concrete injury" to the organization's interests. Sierra Club v. Mainella, 2005 U.S. Dist. LEXIS 18911, at *24-25 (D.D.C. Sept. 1, 2005).  These injuries can be prevented if the lawsuit is defeated and the critical habitat designation is upheld.

Regarding element (2), the Center has standing because the present case is germane to the organization's interest of protecting wildlife, wildlife habitat and biological diversity.  The Center's primary mission is to preserve and recover endangered species, including the San Diego fairy shrimp.  Ex. B, Hogan Dec. at ¶ 2.  This mission would be harmed by reduced protections for the endangered San Diego fairy shrimp and the loss of their vernal pool habitat.

Regarding element (3), the Center has standing because neither the claim asserted nor the relief requested requires its members to participate directly in the lawsuit.  As shown during previous litigation involving the listing of the San Diego fairy shrimp and the designation of its critical habitat, the Center is capable of litigating this case vigorously without member participation.  See e.g. Sierra Club v. Rogers, Civ. No. 93-1717 (S.D.Cal. filed November 5, 1993); Southwest Center v. Babbitt, Civ. No. 96-1170 (S.D.Cal filed June 27, 1996); Southwest Center for Biological Diversity v. Berg et al., Civ. No. 98-1866 (S.D. Cal. Filed Ocrober 14, 1998); Southwest Center for Biological Diversity v. Bartel, 470 F. Supp. 2d 1118 (S.D. Cal. 2006).

### C.    This Action Threatens to Impair the Center's Interests

Rule 24(a)'s "impairment" requirement concerns whether, as a practical matter, the denial of intervention will impede the prospective intervenor's ability to protect its interests in the subject of the action.  As the Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  In keeping with this direction, the D.C. Circuit has observed that the rule's emphasis on "practical disadvantage" was "designed to liberalize the right to intervene in federal actions."  Nuesse, 385 F.2d at 701-02.

There is no question that the disposition of Plaintiff's claim has the potential to impair the Center's interests.  The Center's interests will be directly and adversely affected by the relief Plaintiffs seek: vacating the final rule designating portions of the critical habitat for the San Diego fairy shrimp.  If Plaintiffs were to succeed, the San Diego fairy shrimp would lose part of the protection it currently enjoys under the ESA.

Courts have repeatedly found sufficient impairment to sustain intervention for environmental groups in suits such as this.  In Idaho Farm Bureau Federation, the Ninth Circuit held that a disposition of the action in favor of plaintiffs resulting in the delisting of the Bruneau Hot Springs Snail "would impair [intervenor's] ability to protect their interest in the Springs Snail and its habitat."  58 F.3d at 1398.  In Coalition of Arizona/New Mexico Counties for Stable Economic Growth, the Tenth Circuit held that intervenor's interest in the protection of the Mexican spotted-owl would, "as a practical matter," be impaired by a ruling in favor of the plaintiffs to delist the owl "by the stare decisis effect of the district court's decision, not to mention the direct effect of a possible permanent injunction."  100 F.3d at 844.

Further, the Center and its members and staff will be harmed both professionally and personally if the San Diego fairy shrimp habitat is no longer protected under the ESA as critical habitat.  Ex. B, Hogan Dec. at ¶¶ 9-12.  In addition, if the Center is not allowed to intervene in this action, its ability to carry out its missions and protect its members' interests will be

significantly impaired.  Ex. B, Hogan Dec. at ¶ 2, 11.  Because the Center is so situated that the disposition of this action may as a practical matter impair its ability to protect its interests in the San Diego fairy shrimp, the Center satisfies the third requirement of intervention as of right.

### D.    The Center's Interests Are Not Adequately Represented by the Existing Parties

The Supreme Court has explained that the "inadequate representation" requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n. 10 and acc. text (1972) (citation omitted).  Under this lenient approach, representation may be inadequate where the interests of the party seeking intervention and those of the existing party are "different," even if they are not "wholly 'adverse,'" Nuesse, 385 F.2d at 703, or where they are "similar but not identical." American Tel. & Tel. Co., 642 F.2d 1285, 1293 (D.C. Cir. 1980).  Indeed, "the [D.C. Circuit] Court of Appeals has stated that 'the burden is on those opposing intervention to show that representation for the absentee will be adequate.'"  Alexander v. FBI, 186 F.R.D. 21, 31 (D.D.C. 1998) (quoting American Tel. & Tel., 642 F.2d at 1293).

This standard is met here.  First, as discussed above, the Center was required to sue the Service to get the challenged rules and protections in place for the San Diego fairy shrimp in the first instance, and therefore it is very unlikely that the Service will present all of the arguments that the Center would.  See, e.g., Idaho Farm Bureau Federation, supra, 58 F.3d at 1398 ("FWS was unlikely to argue on behalf of [applicants], the very organizations that compelled FWS to make a final decision by filing a lawsuit.  FWS would not have adequately represented [applicant]'s interests."); County of Fresno v. Andrus, 622 F.2d 436, 439 (9th Cir. 1980) ("[T]here is further reason to doubt that the Department [of the Interior] will fully protect [the applicant's] interest . . . in light of the fact that the Department began its rulemaking only reluctantly after [the applicant] brought a law suit against it.").

The lengthy process leading to full protection for the San Diego fairy shrimp has been circumvented by weakened protections provided by FWS, contrary to the Center's interest.  The Center was forced to sue the FWS for its illegal issuance of an ITP permitting the destruction of the San Diego fairy shrimp and its critical habitat.  Southwest Ctr. for Biological Diversity v. Bartel, 2007 U.S. Dist. LEXIS 64232, *14.  ("These citizens did what FWS should have done in the first instance.").  The Center has also consistently commented on the need for greater amounts of critical habitat for the San Diego than proposed by FWS.  The failure of the Service to advocate for full and fair protection of the San Diego fairy shrimp in the past is a clear indication that the Service will not adequately represent the Center's interest in the future.

The Service has also failed to represent the Center's interests in positions related to the opposition of arguments posed by the building industry in past cases relating to San Diego fairy shrimp protections. The Center opposed intervention by the building industry in the MSCP case, which was not opposed by FWS.  Southwest Ctr. for Biological Diversity v. Bartel, 2007 U.S. Dist. LEXIS 64232, *7.  The Center and the Service have also advanced different arguments regarding protection of San Diego fairy shrimp habitat and legal actions.  Southwest Ctr. for Biological Diversity v. Bartel, 2007 U.S. Dist. LEXIS 64232, *9, 41 ("Plaintiffs and Federal Defendants opposed the legal position of the Builder Intervenors, though each from its unique point of view.")

The Center also seeks intervention in order to object to any settlement that is contrary to the purposes of the ESA, illegal, or unreasonable.

The D.C. Circuit has frequently recognized that governmental representation of private intervenors may be inadequate, particularly where the private intervenors can be expected to make different arguments from their governmental counterparts.  Dimond v. District of Columbia, 792 F.2d 179, 193 (D.C.Cir. 1986); see also Forest Conservation Council v. United States Forest Service, 66 F.3d 1489, 1498-99 (9th Cir. 1985) (Defendant U.S. Forest Service could not be expected to make all the arguments of proposed intervenors).  There are also

substantive legal ESA issues upon which the Center and the Service have disagreed in litigation in the past, and which could arise in this litigation. Overall, the test of whether the Service *may not* represent the Center's interests is more than met in this instance, where it can be said with relative certainty that the Service *will not* adequately represent the Center's interests.

For these reasons, this Court should not hesitate to grant intervention as of right pursuant to Rule 24(a).

## II.    IN THE ALTERNATIVE TO INTERVENTION OF RIGHT, PERMISSIVE INTERVENTION IS WARRANTED

Should this Court find that the Center is not entitled to intervene as of right under Rule 24(a), the Center moves that this Court grant permission to intervene pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b)(2) provides that:

> On timely motion, the court may permit anyone to intervene who… has a claim or defense that shares with the main action a common question of law or fact… In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The D.C. Circuit has stated that permissive intervention may be granted in the court's discretion if the proposed Intervenor presents "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." E.E.O.C. v. National Children's Center, Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998). Additionally, permissive intervention must not "delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2).[5] Like intervention of right, permissive intervention is to be granted liberally. E.E.O.C., 146 F.3d at 1045 (permissive intervention granted where intervenor has substantial interest at stake even if no common claim or defense claimed; "flexible interpretations" of rule appropriate in favor of intervention);

---

[5] In this Circuit, "there is uncertainty over whether standing is necessary for permissive intervention." In re Vitamins Antitrust Class Actions, 215 F.3d 26, 31 (D.C. Cir. 2000). As discussed supra at § I.B. the Center has standing in this action.

<u>Nuesse</u>, 385 F.2d at 704-06 (D.C. Circuit eschews strict reading of rules to advance policy favoring liberal allowance of permissive intervention to advance the "public interest").

      The Center easily meets all of these requirements.  The Court has jurisdiction over the Center and its defenses under 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (the APA), and 28 U.S.C. § 2201 (the Declaratory Judgment Act) as they all involve issues of federal law in defending against the Plaintiffs' claims under federal law.  As discussed above in the context of intervention as of right, the Center's application is timely and existing parties will not be prejudiced because of intervention in this early phase of the proceeding.  Lastly, the Center's defenses are in common with Plaintiffs' claims both in law and fact, as they address the exact matters raised by Plaintiffs having to do with the necessity for protection of San Diego vernal pool habitat under the Endangered Species Act.  As demonstrated in previous actions seeking to gain full enforcement of federal laws for the protection for the San Diego fairy shrimp, and explained above, the Center continues to raise common questions of law related to the Endangered Species Act as it relates to the common questions of fact in protection of the San Diego fairy shrimp.

///

///

///

**CONCLUSION**

For the reasons set forth above, the Center respectfully requests that this Court grant its motion to intervene as of right or, in the alternative, permissive intervention.


Respectfully submitted this Tuesday, May 20, 2008.


/s/ Michael Senatore
_____

Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: msenatore@biologicaldiversity.org

Jonathan Evans (Pro Hac Vice Applicant)
(CA Bar No. 247376)
CENTER FOR BIOLOGICAL DIVERSITY
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940
Email: jevans@biologicaldiversity.org

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OTAY MESA PROPERTY L.P. et al.,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**U.S. Department of Interior et al.,**<br><br>**Defendants,**<br><br>and<br><br>**CENTER FOR BIOLOGICAL DIVERSITY,**<br>**1333 N. Oracle Rd.**<br>**Tucson, AZ  85705**<br><br>**Intervenor-Defendant-Applicant.** | **Civ. No. 1:08-cv-00383-(RMC)** |

## [PROPOSED] ORDER GRANTING INTERVENTION

Having reviewed the Center for Biological Diversity's Motion for Intervention as a Defendant, Memorandum of Points and Authorities in support of its motion and supporting declarations, the responses and replies thereto, and the entire file in this case, the Court hereby finds that pursuant to Fed. R. Civ. P. 24(a), and for good cause shown, the Center for Biological Diversity is entitled to intervene as a matter of right as a defendant in this case. Accordingly, it is hereby:

ORDERED that the Center for Biological Diversity's Motion to Intervene as a Matter of Right as a Defendant in this case is GRANTED.

ORDERED that the Center for Biological Diversity's Motion for Jonathan Evans to appear pro hac vice is deemed filed as of this date.

Page 1

IT IS SO ORDERED this _____ day of _____, 2008.


_____

UNITED STATES DISTRICT COURT JUDGE

LOCAL RULE 7(k) LIST OF PERSONS TO BE SERVED WITH ORDER

Please serve the following electronically:

Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: msenatore@biologicaldiversity.org

Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Avenue, NW
Suite 410
Washington, DC 20036-1737
(202) 822-6760
202-822-6774 (fax)
nancie@marzulla.com

James A. Maysonett
U.S. DEPARTMENT OF JUSTICE
P.O.Box 7369
Ben Franklin Station
Washington, DC 20044-7369
(202) 305-0216
(202) 305-0275 (fax)
james.a.maysonett@usdoj.gov

# Exhibit A
# Civ. No. 1:08-cv-00383-(RMC)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**OTAY MESA PROPERTY L.P. et al.,**

        **Plaintiffs,**

        **vs.**

**U.S. Department of Interior et al.,**

        **Defendants,**

        **and**

**CENTER FOR BIOLOGICAL DIVERSITY,**
**1333 N. Oracle Rd.**
**Tucson, AZ  85705**

        **Intervenor-Defendant –Applicant.**

**Civ. No. 1:08-cv-00383-(RMC)**

**DECLARATION OF JONATHAN EVANS IN SUPPORT OF INTERVENOR-
APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE
AS A DEFENDANT**

I, Jonathan Evans, declare as follows:

1.      I am staff counsel for Intervenor-Defendant-Applicant Center for Biological

Diversity ("Center"). I have personal knowledge of the facts and statements contained herein

and, if called as a witness, could and would competently testify thereto.

2.      I have conferred with James A. Maysonett, counsel for Federal Defendants in this

action, by telephone concerning the Center's Motion to Intervene as a Defendant and Transfer

Venue to the Northern District of California. Mr. Maysonett informed me that the Federal

Defendants take no position on the Center's intervention.

3.      I have conferred with Nancie G. Marzulla, counsel for Plaintiffs in this action, by

telephone concerning the Center's Motion to Intervene as a Defendant.  Ms. Marzulla informed me that Plaintiffs oppose the Center's intervention.

4.    I received the referenced "Map of San Diego Fairy Shrimp Critical Habitat - Unit 5D, United States Department of Interior, U.S. Fish and Wildlife Service" via an information request to the U.S. Fish and Wildlife Service.  The "Map of San Diego Fairy Shrimp Critical Habitat - Unit 5D, United States Department of Interior, U.S. Fish and Wildlife Service" is included as Attachment 1, to Exhibit C ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF.

I declare under penalty of perjury that the forgoing is true and correct. Executed on this Tuesday, May 20, 2008.


_____

Jonathan Evans (Pro Hac Vice Applicant)
CENTER FOR BIOLOGICAL DIVERSITY
(CA Bar. No. 247376)
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940

Email: jevans@biologicaldiversity.org


Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: msenatore@biologicaldiversity.org


Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

Exhibit B
Civ. No. 1:08-cv-00383-(RMC)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OTAY MESA PROPERTY L.P. et al.,

        Plaintiffs,

        vs.

U.S. Department of Interior et al.,

        Defendants,

        and

CENTER FOR BIOLOGICAL DIVERSITY,
1333 N. Oracle Rd.
Tucson, AZ  85705

        Intervenor-Defendant –Applicant.

Civ. No. 1:08-cv-00383-(RMC)

## DECLARATION OF DAVID HOGAN IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS A DEFENDANT

I, David Hogan, declare as follows:

1.    I am a Conservation Manager for the Center for Biological Diversity (formerly the Southwest Center for Biological Diversity, collectively "the Center"). I am also a member of the Center.  This declaration is made in support of the Center's Motion to Intervene as a Defendant. I have personal knowledge of the facts and statements contained herein and, if called as a witness, could and would competently testify thereto.

2.    The Center is a non-profit corporation with offices in San Francisco, Joshua Tree, Los Angeles, and San Diego, California; Tucson, Phoenix, and Prescott, Arizona; Silver City, New Mexico; Portland and Bend, Oregon; Richmond, Vermont, and Washington, DC. The

Center's primary mission is to preserve and recover endangered species and their habitats, including all populations of the San Diego fairy shrimp. In my role as Conservation Manager, my primary duty is to advocate for the preservation and recovery of imperiled species, including the San Diego fairy shrimp. I work primarily out of an office in San Diego County, California.

3.    In 1991-1992 I conducted extensive field surveys for San Diego fairy shrimp and vernal pools under direction of Dr. Marie Simovich of the University of San Diego. Dr. Simovich is a professor at the University of San Diego focusing on the population biology, life history, and species compositions of vernal pool organisms with emphasis on conservation and management considerations.  She has authored numerous articles on the life history, taxonomy, and threats to vernal pool fauna, in particular the San Diego fairy shrimp.  My work conducting field surveys for the San Diego fairy shrimp contributed to the scientific understanding of this species and its needs for long term conservation and protection.

4.    In March of 1992, with my personal involvement, the San Diego Biodiversity Project in Julian, California, and Dr. Denton Belk of the Lady of Our Lake University in San Antonio, Texas, submitted the Endangered Species Act petition to list the San Diego fairy shrimp as an endangered species.

5.    With my personal involvement, the Center has taken a number of steps and initiatives to protect the San Diego fairy shrimp. These actions include, but are not limited to: drafting comments on the proposal to list the San Diego fairy shrimp as an endangered species; filing suit against the FWS to compel the FWS to meet the statutorily required deadlines for making a listing determination under the ESA.  Sierra Club v. Rogers, Civ. No. 93-1717 (S.D.Cal. November 5, 1993); Southwest Center v. Babbitt, Civ. No. 96-1170 IEG (CGA) October 24, 1996 Order; filing suit in October of 1998 to compel the U.S. Fish and Wildlife

Service to designate critical habitat for the San Diego fairy shrimp under the Endangered Species Act, Southwest Center for Biological Diversity v. Berg et al., 3:98-CV-1866-IEG-LAB (S.D. Cal.); drafting and submission of comments on the multiple proposed critical habitat designations for the San Diego fairy shrimp in 2000 and 2003; filing a successful suit challenging the U.S. Fish and Wildlife Service decision to allow harm, harassment, or destruction of vernal pool species in San Diego including the San Diego fairy shrimp under the San Diego Multiple Species Conservation Plan ("MSCP"), Southwest Center for Biological Diversity v. Bartel, 470 F. Supp. 2d 1118 (S.D. Cal. 2006); writing, posting, and disseminating via our internet and mail outreach systems educational pieces concerning the plight of the San Diego fairy shrimp; and advocating orally and in writing before various federal and state agencies for the protection of this species.

6.     With my personal involvement the Center remains engaged in revisions of the San Diego MSCP to meet the Court's order in Southwest Center for Biological Diversity v. Bartel, 470 F. Supp. 2d 1118 (S.D. Cal. 2006). The Center also remains involved in individual review and approval of development projects in the City of San Diego as a result of that suit to assure that development projects minimize take of San Diego fairy shrimp and destruction of its vernal pools in accordance with the Court's order.

7.     With my involvement, from 1996 to the present, the Center advocated for the preservation and protection of vernal pool ecosystems and San Diego fairy shrimp on numerous individual projects. Several examples follow. From 1996 through 1998, CBD worked to protect vernal pools in the City of San Diego from a development entitled "Neighborhood 8A". This advocacy resulted in increased protections for vernal pool species. In 1998, CBD worked to protect vernal pool species from a commercial and residential project in the City of San Diego

entitled "Cousin's Market Center." During 2003 to 2004, CBD worked to protect vernal pool species from "Rhodes Crossing", a residential development in the City of San Diego impacting San Diego fairy shrimp habitat. Recently, during the 2007-2008 period CBD worked to protect San Diego fairy shrimp vernal pools from the "Shaw Lorenz" and "Fanita Ranch" residential developments.

8.    The Center maintains four offices throughout California and is involved in a broad array of conservation initiatives involving the vernal pool, grassland, and upland habitats that support San Diego fairy shrimp. I have traveled many times to areas inhabited by the San Diego fairy shrimp to observe this animal in its natural habitat. I regularly visit and travel throughout San Diego, Orange, Riverside, and Ventura counties as part of my conservation duties, and plan to continue visiting San Diego fairy shrimp habitat throughout the southern California. I have traveled to Critical Habitat Unit 5D in the past and I intend to return to that critical habitat unit as part of my regular visits to the Otay Mountain Wilderness via Otay Mountain road, a.k.a. Otay Moutain truck trail. Portions of Critical Habitat Unit 5D are accessible via roads open to the public, and I often stop at a prominent vista overlooking Critical Habitat Unit 5D on my trips to and from the Otay Mountain Wilderness. My visits to the Otay Mountain Wilderness via Critical Habitat Unit 5D occur, approximately, on an annual basis.

9.    I am extremely concerned about the health of the environment and the maintenance of biological diversity. I choose to live in California in large part because of its incredibly rich and diverse natural environment. Being able to visit and appreciate the beauty and complexity of natural systems such as the vernal pools, grasslands, and oak woodlands inhabited by the San Diego fairy shrimp is extremely important to me. Witnessing the disappearance of these habitats from impacts such as urban and agricultural development, off

road vehicle use, as well as the decline of the San Diego fairy shrimp from this habitat loss and additional factors such as introduced species, has a highly negative psychological impact on me and causes me great distress.

10.     I am extremely concerned about the survival of the San Diego fairy shrimp and its habitat. I derive great professional and scientific benefit from the existence of this unique creature, which is an integral part of the vernal pool wetlands and vernal pool complex upland ecosystems it inhabits. I also derive aesthetic, recreational, and spiritual benefits from healthy San Diego fairy shrimp populations, by having the chance to see them in the wild, and because their ecosystem is healthier with them in it, and less enjoyable without their presence, even when I cannot see them.

11.     In addition, the Center has members throughout California who support the Center's work to protect imperiled species, including members who live near and visit San Diego fairy shrimp habitat. The Center's members include local residents and also visitors to these areas with educational, moral, spiritual, scientific, ecological and/or recreational interests in the San Diego fairy shrimp. The Center's members also enjoy the biological, scientific, recreational, and/or aesthetic values of the areas inhabited by these species. I have been contacted on numerous occasions by Center members who have encouraged the Center to take all possible actions to protect the San Diego fairy shrimp.

12.     The Center and its members will be irreparably harmed if the critical habitat determination for the San Diego fairy shrimp is limited to exclude San Diego fairy shrimp and their vernal pool ecosystem habitats. If the San Diego fairy shrimp habitat is excluded from the critical habitat designation, the San Diego fairy shrimp would lose important protections and be less likely to recover as a species. If the San Diego fairy shrimp continues to decline and/or go

extinct, the Center and I will suffer a professional, academic, and scientific loss, because it is our job to protect this species, and this goal cannot be achieved without protection of its critical habitat under the Endangered Species Act and all protections that designation provides. The Center, I and other Center staff, and Center members will all also suffer a biological, recreational, spiritual, and aesthetic loss if a portion or all of the critical habitat designation of the San Diego fairy shrimp were overturned. If the Center is not allowed to intervene in this action, its ability to carry out its mission and protect its members; interest, as described above, will be severely impeded.

I declare under penalty of perjury that the forgoing is true and correct. Executed on this Monday, ~~Sunday~~, May 12, 2008.

David Hogan
Conservation Manager
Center for Biological Diversity

Exhibit C
Civ. No. 1:08-cv-00383-(RMC)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**OTAY MESA PROPERTY L.P. et al.,**

**Plaintiffs,**

**vs.**

**U.S. Department of Interior et al.,**

**Defendants,**

**and**

**CENTER FOR BIOLOGICAL DIVERSITY,**
**1333 N. Oracle Rd.**
**Tucson, AZ  85705**

**Intervenor-Defendant –Applicant.**

Civ. No. 1:08-cv-00383-(RMC)

**[PROPOSED] ANSWER TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF**

In response to Plaintiffs' Complaint for Declaratory and Injunctive Relief, Intervenor Defendant-

Applicant Center for Biological Diversity ("the Center") hereby admits, denies, and avers as

follows:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The first unnumbered paragraph consists of Plaintiffs' characterization of their lawsuit,

for which no response is required. To the extent a response is required, the Center denies the

averments.

**Parties**

1.       The Center lacks sufficient information to either admit or deny the averments in

this paragraph, and on this basis denies the averments.  The Center further denies that Exhibit 1

attached to the Plaintiff's Complaint purporting to depict designated critical habitat for the San Diego fairy shrimp is an accurate depiction of the area designated critical habitat or of the existence of San Diego fairy shrimp in San Diego Fairy Shrimp Critical Habitat - Unit 5D, and on this basis denies the second sentence of Paragraph 1.

2.    The Center lacks sufficient information to either admit or deny the averments in this paragraph, and on this basis denies the averments.  The Center further denies that Exhibit 1 attached to the Plaintiff's Complaint purporting to depict designated critical habitat for the San Diego fairy shrimp is an accurate depiction of the area designated critical habitat or of the existence of San Diego fairy shrimp in San Diego Fairy Shirmp Critical Habitat - Unit 5D, and on this basis denies the second sentence of Paragraph 2.

3.    The Center lacks sufficient information to either admit or deny the averments in this paragraph, and on this basis denies the averments.  The Center further denies that Exhibit 1 attached to the Plaintiff's Complaint purporting to depict designated critical habitat for the San Diego fairy shrimp is an accurate depiction of the area designated critical habitat or of the existence of San Diego fairy shrimp in San Diego Fairy Shirmp Critical Habitat - Unit 5D, and on this basis denies the second sentence of Paragraph 3.

4.    The Center admits the averments of this paragraph.

5.    The Center admits the first sentence of this paragraph.  The Center lacks sufficient information to either admit or deny the averments in the second sentence of this paragraph, and on this basis denies the averments.

**Jurisdiction and Venue**

6.    This paragraph consists of a conclusion of law to which no response is required.

7.    This paragraph consists of a conclusion of law to which no response is required.

8.    To the degree the averments consist of legal conclusions, they require no response, and to the degree they require a response they are denied.  The Center admits that the agency action listed in the referenced federal register notice became effective on January 11, 2008.

9.     This paragraph consists of conclusions of law to which no response is required. To the extent a response is required, the Center denies the averments.

**Statutory and Regulatory Framework**

10.     This paragraph purports to quote from the Endangered Species Act. This statute speaks for itself and provides the best evidence of its contents.

11.     This paragraph purports to quote from the Endangered Species Act. This statute speaks for itself and provides the best evidence of its contents.

12.     This paragraph purports to quote from the Endangered Species Act. This statute speaks for itself and provides the best evidence of its contents.

13.     This paragraph purports to quote from the Code of Federal Regulations. These regulations speak for themselves and provide the best evidence of their contents.

**Operative Facts**

14.     The Center admits the averments in this paragraph.

15.     To the degree the second sentence of this paragraph consists of factual averments, the Center lacks sufficient information to either admit or deny the averments, and on this basis denies the averments.  The remaining sentences in this paragraph consist of characterizations of federal register notices, which speak for themselves and that provide the best evidence of their contents.

16.     This paragraph purports to characterize the contents of the case <u>Building Industry Association of Southern California v. Norton</u>, CV 01-7028 (D.D.C. filed January 17, 2001) and U.S. District Court remand, which speaks for itself and provides the best evidence of its contents.

17.     The Center admits the averments in this paragraph.

18.     This paragraph consists of factual averments, the Center lacks sufficient information to either admit or deny the averments, and on this basis denies the averments.

19.     This paragraph consists of factual averments, the Center denies the factual averments to the extent that the Plaintiffs land did not contain the physical and biological features necessary to the conservation of the San Diego fairy shrimp, and avers that the San

Diego fairy shrimp has been documented repeatedly on Plaintiffs' land as recognized by the U.S.

Fish and Wildlife Service and California Natural Diversity Database in Exhibit C, Attachment 1,

Map of San Diego Fairy Shirmp Critical Habitat - Unit 5D, United States Department of Interior,

U.S. Fish and Wildlife Service.  On this basis the Center denies the averments.   To the degree

this paragraph seeks to characterize the contents of an April 19, 2007 letter, the Center lacks

sufficient information to either admit or deny the averments in the second sentence of this

paragraph, and on this basis denies the averments.

20.     The Center admits that on December 12, 2007, Defendants published a final rule

designating critical habitat for the San Diego fairy shrimp.  The Center denies the remaining

factual averments in the first sentence.  The remaining sentences in this paragraph consist of

characterizations of federal register notices, which speak for themselves and that provide the best

evidence of their contents.

**CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**(Administrative Procedures Act, 5 U.S.C. §§ 702, 706)**

21.     This first two sentences purport to paraphrase the Administrative Procedures Act.

This statute speaks for itself and provides the best evidence of its contents.  The Center admits

the averments in the third sentence.

22.     The first portion of the first sentence before the colon consists of conclusions of

law to which no response is required.  The Center denies the first full sentence following the

colon and avers that the San Diego fairy shrimp has been documented repeatedly on Plaintiffs'

land as recognized by the U.S. Fish and Wildlife Service and California Natural Diversity

Database in Exhibit C, Attachment 1, Map of San Diego Fairy Shirmp Critical Habitat - Unit 5D,

United States Department of Interior, U.S. Fish and Wildlife Service.  To the extent the first full

sentence following the colon purports to quote from the Endangered Species Act, this statute

speaks for itself and provides the best evidence of its contents.  The Center denies the second full

sentence of the paragraph and avers that the critical habitat subunit 5D in question in this action

contains occupied habitat of the San Diego fairy shrimp, Attachment 1, and "contains all of the features essential to the conservation of the species." 72 Fed. Reg. 70674. The Center denies the third sentence of the paragraph.

23.     To the degree the averments in this paragraph consist of legal conclusions, they require no response, and to the degree they require a response they are denied. To the degree the averments in this paragraph consist of factual averments, the Center lacks sufficient information to either admit or deny the averments, and on this basis denies the averments.

The Center denies that Plaintiffs are entitled to any relief.

## GENERAL DENIAL

Any averment in the complaint that is not expressly admitted and which requires a response is denied.

## AFFIRMATIVE DEFENSES

1.     The Center avers that the Complaint fails to allege facts sufficient to state a cause of action against the United States.

2.     The Center avers that the claims for relief, and each of them, are barred because Plaintiffs have failed to exhaust their administrative remedies.

3.     The Center avers that the claims for relief under the ESA, and each of them, are barred because Plaintiffs failed to provide a legally sufficient 60-day notice of intent to sue.

4.     The Center avers that the Plaintiffs may lack standing to sue.

5.     The Center avers that the complaint is barred by the doctrine of unclean hands, and other equitable doctrines.

6.     The Center avers that the Plaintiffs are not entitled to relief in equity, as the balance of harms do not warrant equitable relief.

7.    This action should be transferred because venue is more appropriate in another judicial district.

Respectfully submitted on this Tuesday May 20, 2008.

/s/ Michael Senatore
_____

Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: msenatore@biologicaldiversity.org

Jonathan Evans (Pro Hac Vice Applicant)
(CA Bar No 247376)
CENTER FOR BIOLOGICAL DIVERSITY
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940
Email: jevans@biologicaldiversity.org

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

Exhibit C, Attachment 1
Civ. No. 1:08-cv-00383-(RMC)



UNITED STATES
Department of the Interior

San Diego Fairy Shrimp
Critical Habitat - Unit 5D

Final Critical Habitat
San Diego fairy shrimp locations (CNDDB)
San Diego fairy shrimp locations (USFWS)
Parcels

Exhibit D
Civ. No. 1:08-cv-00383-(RMC)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**OTAY MESA PROPERTY L.P. et al.,**

**Plaintiffs,**

**vs.**

**U.S. Department of Interior et al.,**

**Defendants,**

**and**

**CENTER FOR BIOLOGICAL DIVERSITY,**
**1333 N. Oracle Rd.**
**Tucson, AZ  85705**

**Intervenor-Defendant –Applicant.**

**Civ. No. 1:08-cv-00383-(RMC)**

**CERTIFICATE REQUIRED BY LCvR 7.1 OF THE LOCAL RULES OF THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

I, the undersigned, counsel of record for Intervenor-Defendant-Applicant Center for

Biological Diversity, certify that to the best of my knowledge and belief, the Center for

Biological Diversity does not have any outstanding securities in the hands of the public.

These representations are made in order that judges of this court may determine the need

for recusal.

Respectfully submitted on this Tuesday May 20, 2008.

/s/ Michael Senatore
_____

Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY

1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: msenatore@biologicaldiversity.org

Jonathan Evans (<u>Pro Hac Vice</u> Applicant)

CENTER FOR BIOLOGICAL DIVERSITY
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940

Email: jevans@biologicaldiversity.org

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

Exhibit E
Civ. No. 1:08-cv-00383-(RMC)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| OTAY MESA PROPERTY L.P., <br> a California limited partnership; <br> RANCHO VISTA DEL MAR, <br> a California corporation, <br> and OTAY INTERNATIONAL, LLC, <br> a California limited liability company, <br> 5440 Morehouse Drive <br> Suite 4000 <br> San Diego, CA 92121, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | Civil Action No. _____ |
| v. | ) <br> ) | Judge _____ |
| UNITED STATES DEPARTMENT OF <br> THE INTERIOR, <br> 1849 C Street, N.W. <br> Washington, DC 20240, | ) <br> ) <br> ) <br> ) <br> ) | |
| UNITED STATES FISH <br> AND WILDLIFE SERVICE, <br> 1849 C St., NW <br> Washington, D.C. 20240, | ) <br> ) <br> ) <br> ) <br> ) | |
| DIRK KEMPTHORNE, in his official <br> capacity as Secretary of the <br> Department of the Interior, <br> 1849 C Street, N.W. <br> Washington DC 20240, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| LYLE LAVERTY, in his official capacity <br> as Assistant Secretary for Fish, Wildlife <br> and Parks, Department of the Interior, <br> 1849 C Street, NW <br> Washington, DC 20240, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This is a suit under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551-706 (2006), to declare unlawful and set aside a final rule promulgated by the United States Fish and Wildlife Service designating portions of the land owned by Plaintiffs as critical habitat for the San Diego fairy shrimp (*Branchinecta sandiegonensis*), an endangered species, on the ground that the record contains no evidence that Plaintiffs' lands meet the statutory and regulatory definitions of critical habitat for the fairy shrimp. Because Plaintiffs' lands do not, in fact, contain fairy shrimp critical habitat, this rule so designating them, as it applies to Plaintiffs' lands, is arbitrary, capricious, and not in accordance with law.

**Parties**

1.      Plaintiff Otay Mesa Property, L.P., is a limited partnership organized under the laws of the State of California and the owner in fee of several parcels of unimproved land in the Otay Mesa area of San Diego County, 74.55 acres that have been designated as critical habitat for the San Diego fairy shrimp, as described below.  These lands are shown on Exhibit 1.

2.      Plaintiff Rancho Vista Del Mar is a corporation organized under the laws of the State of California and the owner in fee of several parcels of unimproved land in the Otay Mesa area of San Diego County, 120 acres that have been designated as critical habitat for the San Diego fairy shrimp, as described below.  These lands are shown on Exhibit 1.

3.      Plaintiff Otay International, LLC, is a limited liability corporation organized under the laws of the State of Nevada and the owner in fee of approximately 80 acres of unimproved land in the Otay Mesa area of San Diego County that have been

2

designated as critical habitat for the San Diego fairy shrimp, as described below. These lands are shown on Exhibit 1.

4.      Defendant, United States Department of the Interior, is an agency of the federal government, which is authorized to designate critical habitat for endangered species under 16 U.S.C. § 1533(a)(3)(A). Defendant, Secretary of the Interior Dirk Kempthorne, is sued in his official capacity as the officer of the United States charged with proper implementation of the Endangered Species Act, including the designation of critical habitat.

5.      Defendant, United States Fish and Wildlife Service, is an agency of the Department of the Interior, which promulgated the rule under examination. Defendant, Assistant Secretary for Fish, Wildlife, and Parks, Lyle Laverty, is sued in his official capacity as the officer in charge of the United States Fish and Wildlife Service, the agency of the Department of the Interior, which published and administers the final rule under examination, designating Plaintiffs' land as critical habitat for the San Diego fairy shrimp.

**Jurisdiction and Venue**

6.      This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (the APA), and 28 U.S.C. § 2201 (the Declaratory Judgment Act).

7.      Specifically, the APA authorizes this Court to review final agency action and authorizes the Court to hold unlawful and set aside such action, findings, and conclusions when they are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right; without observance of procedure required by law; or unsupported by substantial evidence.  5 U.S.C. § 706(2)(A)-(E).

8.     This agency action became final on January 11, 2008, and is now ripe for review.  Designation of Critical Habitat for the San Diego Fairy Shrimp, 72 Fed. Reg. 70,648 (Dec. 12, 2007) (to be codified at 50 C.F.R. pt. 17).

9.     Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e), as this is a civil action against two agencies of the United States and two officers of the United States, acting in their official capacities, brought in the district court in which they reside.

**Statutory and Regulatory Framework**

10.    The Endangered Species Act (ESA) authorizes the Secretary of Interior to list a species as "endangered" if he finds that it is "in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  Once a species is listed as endangered, the Secretary has a duty, "to the maximum extent prudent and determinable," to concurrently, "designate any habitat of such species which is then considered to be critical habitat."  16 U.S.C. § 1533(a)(3)(A).

11.    "Critical habitat" for an endangered species is defined in the ESA as follows:

> (i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section 1533 of this title, on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection . . . .

16 U.S.C. § 1532(5)(A).

12.     The ESA requires the Secretary to make the designation of critical habitat

and make revisions to the designation, "on the basis of the best scientific data available

and after taking into consideration the economic impact, and any other relevant impact,

of specifying any particular area as critical habitat." 16 U.S.C. § 1533(b)(2).  It gives the

Secretary the discretion to exclude any area from critical habitat if he determines that "the

benefits of such exclusion outweigh the benefits of specifying such an area as part of the

critical habitat," unless he determines, "based on the best scientific and commercial data

available," that to do so will result in the extinction of the species. 16 U.S.C.

§ 1533(b)(2).

13.     Department of the Interior regulations prescribe that:

> When considering the designation of critical habitat, the Secretary shall
> focus on the principal biological or physical constituent elements within
> the defined area that are essential to the conservation of the species.
> Known primary constituent elements shall be listed with the critical
> habitat description.  Primary constituent elements may include, but are not
> limited to, the following: roost sites, nesting grounds, spawning sites,
> feeding sites, seasonal wetland or dryland, water quality or quantity, host
> species or plant pollinator, geological formation, vegetation type, tide, and
> specific soil types.

Criteria for Designating Critical Habitat, 50 C.F.R. § 424.12(b)(5).

**Operative Facts**

14.     The San Diego fairy shrimp (*Branchinecta sandiegonensis*) is a small

aquatic crustacean in the order *Anostraca*, generally restricted to vernal pools and other

ephemeral basins in coastal Orange and San Diego Counties in southern California and in

northwestern Baja California, Mexico.  Under the authority of the Endangered Species

Act, on February 3, 1997, Defendants published a final rule listing the fairy shrimp as an

5

endangered species. Determination of Endangered Status for the San Diego Fairy Shrimp, 62 Fed. Reg. 4,925 (Feb. 3, 1997) (codified at 50 C.F.R. § 17.11).

15.     On October 23, 2000, Defendants published a final rule designating approximately 4,025 acres of critical habitat for the San Diego fairy shrimp in Orange and San Diego Counties, California. Plaintiffs' land was not included in this designation. Final Determination of Critical Habitat for San Diego Fairy Shrimp, 65 Fed. Reg. 63,438 (Oct. 23, 2000) (to be codified at 50 C.F.R. pt. 17)

16.     Defendants' October 23, 2000 final rule designating critical habitat for the San Diego fairy shrimp was challenged in an Administrative Procedure Act lawsuit filed by multiple parties, including the Building Industry Association of Southern California, the National Association of Home Builders, and the Foothill/Eastern Transportation Corridor Agency. Following various proceedings in that case, Defendants requested remand of the final rule for further consideration and, on June 11, 2002, the U.S. District Court for the Central District of California granted that request.

17.     Following their reconsideration, on April 22, 2003, Defendants published a new proposed rule to revise their October 23, 2000 final rule and designated approximately 6,098 acres of land within Orange and San Diego counties, California, as critical habitat for the San Diego fairy shrimp. That proposed rule is found at 68 Fed. Reg. 19,888.

18.     In contrast to the 2000 final rule, the 2003 proposed rule included as proposed critical habitat a substantial portion of Plaintiffs' land.

19.     On April 19, 2007 and at the request of the U.S. Fish and Wildlife Service, Plaintiffs submitted written comments on the 2003 proposed rule, pointing out that

Plaintiffs' land did not contain the physical and biological features necessary to the conservation of the San Diego fairy shrimp, and that it therefore did not meet the statutory definition for designation as critical habitat as proposed by Defendants.

20.     Nevertheless, without explanation, on December 12, 2007, Defendants published a final rule designating Plaintiffs' land as critical habitat for the San Diego fairy shrimp.  That final rule is found at 72 Fed Reg. 70,648.  This rule became effective January 11, 2008.  (A map of Plaintiffs' land, showing the designated critical habitat in blue, is attached as Exhibit 1.)

## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### (Administrative Procedure Act, 5 U.S.C. §§ 702, 706)

21.     5 U.S.C. § 702 provides that the actions of each agency of the government of the United States is subject to judicial review.  Section 706 provides that, in all cases, agency action must be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege, or immunity"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; "without observance of procedure required by law"; or "unsupported by substantial evidence."  Agencies must maintain a record in support of their action, and there must be evidence in that record to support the agency action.

22.     Defendants' designation of Plaintiffs' land as critical habitat for the San Diego fairy shrimp is arbitrary, capricious, and otherwise not in accordance with law because, *inter alia*:

There is no evidence in the record to support the statutorily required finding that Plaintiffs' land is one of "the specific areas within the geographical area occupied by the

7

species, at the time it is listed in accordance with the provisions of section 1533 of this title, on which are found those physical or biological features" that are "(I) essential to the conservation of the species and (II) which may require special management considerations or protection," as required by 16 U.S.C. § 1532(5)(A)(i).

There is no evidence in the record to support a finding that Plaintiffs' land possesses the principal constituent elements identified for fairy shrimp conservation, viz.:

(i) Vernal pools with shallow to moderate depths (2 in. (5 cm.) to 12 in. (30 cm.)) that hold water for sufficient lengths of time (7 to 60 days) necessary for incubation, maturation, and reproduction of the San Diego fairy shrimp, in all but the driest years;

(ii) Topographic features characterized by mounds and swales and depressions within a matrix of surrounding uplands that result in complexes of continuously, or intermittently, flowing surface water in the swales connecting the pools described in paragraph (2)(i) of this entry, providing for dispersal and promoting hydroperiods of adequate length in the pools (i.e., the vernal pool watershed); and,

(iii) Flat to gently sloping topography, and any soil type with a clay component and/or an impermeable surface or subsurface layer known to support vernal pool habitat (including Carlsbad, Chesterton, Diablo, Huerhuero, Linne, Olivenhain, Placentia, Redding, and Stockpen soils).

There is no evidence in the record to support Defendant's finding, pursuant to Executive Order 12,630, that designation of Plaintiffs' land as critical habitat for the San Diego fairy shrimp "does not pose significant takings implications for lands within or affected by the designation." Exec. Order 12,630, 53 Fed. Reg. 8,859 (Mar. 18, 1988).

23.     As a result of Defendants' wrongful acts, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury by reason of their inability to develop and market this highly valuable land.  This damage will continue until this Court sets aside Defendants' wrongful designation of Plaintiffs' land as critical habitat for the San Diego fairy shrimp.  Plaintiffs have no plain, speedy or adequate remedy in the ordinary course of law, and pecuniary damages are inadequate.

WHEREFORE, Plaintiffs pray for relief as follows:

1.     An order of this Court declaring unlawful and setting aside that portion of Defendants' December 12, 2007 final rule designating Plaintiffs' land as critical habitat for the San Diego fairy shrimp, and permanently enjoining Defendants from enforcing that final rule as it applies to Plaintiffs' land;

2.     Attorneys' fees and costs for the bringing of this action; and,

3.     Such other and further relief as the Court may deem just.


Respectfully submitted,


Nancie G. Marzulla, D.C. Bar No. 400985
Roger J. Marzulla, D.C. Bar No. 394907
MARZULLA LAW
1350 Connecticut Avenue, NW
Suite 410
Washington, DC  20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated:  March 3, 2008          Counsel for Plaintiffs



Otay Inter-National LLC

Otay Mesa Property LP

RANCH VISTA DEL MAR

UNITED STATES
Department of the Interior

San Diego Fairy Shrimp
Critical Habitat - Unit 5D