## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**OTAY MESA PROPERTY L.P. <u>et al</u>.,**

        **Plaintiffs,**

        **vs.**

**U.S. Department of Interior <u>et al</u>.,**

        **Defendants,**

        **and**

**CENTER FOR BIOLOGICAL DIVERSITY,**
**1333 N. Oracle Rd.**
**Tucson, AZ  85705**

        **Intervenor-Defendant –Applicant.**

**Civ. No. 1:08-cv-00383-(RMC)**

### INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S
### REPLY IN SUPPORT OF MOTION TO INTERVENE

        Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7 the Center for Biological Diversity ("Center") hereby submits a Reply in Support of Motion to Intervene.  The Center moves to intervene of right as a Defendant in this case, or, in the alternative, for permissive intervention.

        This Reply is based on the attached Memorandum of Points and Authorities in support thereof and its exhibits, the pleadings, and any other matters that may be submitted to the Court during oral argument.  This Reply is filed concurrently with the following documents:

        EXHIBIT A:  DECLARATION OF JONATHAN EVANS IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S REPLY;

        EXHIBIT B:  DECLARATION OF DAVID HOGAN IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S REPLY;

EXHIBIT C:  DECLARATION OF KERI DIXON IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S REPLY;

EXHIBIT D:  DECLARATION OF CURT BRADLEY IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S REPLY.

Respectfully submitted this June 16, 2008.

/s/ Michael Senatore

Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: msenatore@biologicaldiversity.org

Jonathan Evans (Pro Hac Vice Applicant)
(CA Bar No. 247376)
CENTER FOR BIOLOGICAL DIVERSITY
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940
Email: jevans@biologicaldiversity.org

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Civ. No. 1:08-cv-00383-(RMC)

**OTAY MESA PROPERTY L.P. et al.,**

**Plaintiffs,**

**vs.**

**U.S. Department of Interior et al.,**

**Defendants,**

**and**

**CENTER FOR BIOLOGICAL DIVERSITY,**
**1333 N. Oracle Rd.**
**Tucson, AZ  85705**

**Intervenor-Defendant-Applicant.**

**INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S
REPLY MEMORANDUM
IN SUPPORT OF MOTION TO INTERVENE AS A DEFENDANT**

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7, the Center for

Biological Diversity ("Center") submits this Reply Memorandum of Points and Authorities in

support of its Motion to Intervene as a Defendant.

**INTRODUCTION**

For over 15 years the Center has worked through legal, administrative, and scientific

means towards the protection of the San Diego fairy shrimp ("fairy shrimp") led primarily

through the efforts of current staff employee and member David Hogan.  Instead of recognizing

Mr. Hogan's experience, expertise, and knowledge of the fairy shrimp, including fairy shrimp

populations on the Plaintiffs' properties that could be harmed as a result of this suit, Plaintiffs'

engage in a mix of misstatements, unsubstantiated claims, and factual inaccuracies in an attempt to limit the Center's continued work to protect the fairy shrimp and its habitat.

The Opposition contests the Center's motion to intervene on the basis that (1) the Center has failed to demonstrate standing, (2) the Center lacks a legally protected interest in the subject matter of the case, (3) the Center's interests are adequately represented by the Federal Defendants, and (4) the Center should not be granted permissive intervention. As described below these arguments are legally and factually flawed and must be dismissed.

## FACTUAL HISTORY

The biology and natural history of the endangered San Diego fairy shrimp (*Branchinecta sandiegoensis*) and the Center's long history of working through legal and administrative means to protect the fairy shrimp and its critical habitat is summarized in the Center's opening Motion to Intervene. Center's Mot. Intervene at 6-13. Populations of fairy shrimp have been surveyed and mapped on the Plaintiffs property by the US Fish and Wildlife Service ("FWS") and private consultants. Center's Answer, Attach. 1 (showing known populations of fairy shrimp on the northeast corner of Critical Habitat Unit 5D on Plaintiffs' property); Center's Reply Ex. D, Declaration of Curtis Bradley ("Bradley Decl."), Attach. 1 (showing known populations of fairy shrimp on Plaintiffs' property). Topography on Plaintiffs' property also indicates vernal pool habitat. Center's Reply Ex. B, Declaration of David Hogan ("Reply Hogan Decl.") at ¶ 6.

Since 1991 Mr. Hogan has studied the fairy shrimp through field studies, collaboration with leading fairy shrimp scientific researchers, drafting of legal and scientific petitions, drafting of administrative comments, negotiation with federal wildlife agencies and developers, and participation in lawsuits to protect the fairy shrimp. Center's Mot. Intervene Ex. B, Declaration of David Hogan ("Opening Hogan Decl.") at ¶ 3-7. Mr. Hogan has appreciated fairy shrimp

populations and vernal pools in Critical Habitat Unit 5D, which includes Plaintiffs' properties. Opening Hogan Decl. at ¶ 8; Reply Hogan Decl. at ¶ 4-6.  Mr. Hogan maintains a habit of visiting fairy shrimp habitat and returns to derive aesthetic, professional, scientific, recreational, and spiritual benefits from appreciation of the species and its habitat, including Critical Habitat Unit 5D and Plaintiffs' property, on, approximately, an annual basis.  Opening Hogan Decl. ¶ 9-10, 12; Reply Hogan Decl. at ¶ 2, 8.

With Mr. Hogan's participation, as an employee and member the Center has sought to protect the fairy shrimp for over 17 years, including participation in four successful lawsuits to protect the species.  Opening Hogan Decl. at ¶ 1, 3-7; Center's Reply Ex. C, Declaration of Keri Dixon ("Dixon Decl.") at ¶ 6.  If critical habitat protection for the fairy shrimp is not maintained Mr. Hogan and the Center will suffer aesthetic, professional, scientific, recreational, and spiritual loss because the loss of protection will facilitate destruction of the fairy shrimp populations on the Plaintiffs' Property.   Opening Hogan Decl. at ¶ 9-10, 12; Reply Hogan Decl. at ¶ 2, 8.

## PROCEDURAL HISTORY

Procedural history prior to this Reply is summarized in the Center's opening Motion to Intervene.  Center's Mot. Intervene at 6-13.

Despite requests for a response via phone and e-mail Plaintiffs failed to respond to the Center's request to participate in the meet and confer process.  Center's Reply Ex. C, Declaration of Jonathan Evans ("Reply Evans Decl.") at ¶ 2.  As such the Center was unable to participate in the meet and confer process.  Id.

On less than 48-hours notice the Plaintiffs' requested to depose Mr. Hogan on the morning of June 4, 2008.  Reply Evans Decl. at ¶ 4.  Counsel for the Center explained, that such notice for a deposition was unreasonable but that the Center would be willing to request that the

court stay resolution of the Center's motion to intervene until the Defendants' motion to transfer was resolved because the test for intervention as a matter of right and specifically whether an intervenor must demonstrate Article III standing differs in the Ninth Circuit. See United States v. Oregon, 913 F.2d 576, 587 (9th Cir. 1990) (four part test of Fed. R. Civ. P. 24(a) does not include Article III standing requirement); Reply Evans Decl. at ¶ 4. The Plaintiffs refused such a compromise. Reply Evans Decl. at ¶ 4.

The Center and Federal Defendants agree that the Southern District of California is a more appropriate venue for this proceeding. Reply Evans Decl. at ¶ 3.

## ARGUMENT

## I. THE CENTER SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT

The parties agree that Federal Rules of Civil Procedure Rule 24(a) governs intervention as a matter of right. The Plaintiffs' contest the Center's motion to intervene as of right on the basis that (1) the Center has failed to demonstrate standing, (2) the Center lacks a legally protected interest in the subject matter of the case, and (3) the Center's interests are adequately represented by the Federal Defendants.

By failing to contest other elements of Fed. R. Civ. P. 24 (a) such as timeliness of the intervention motion, Center's Mot. Intervene at 15-16, and impairment of the Center's interest by this lawsuit, Center's Mot. Intervene at 20-21, Plaintiffs have conceded these points and the Center will not address them here.

### 1. The Center Has Demonstrated Article III Organizational Standing

The Parties agree that standing is required for an intervenor-applicant in the D.C. Circuit. Center's Mot. Intervene at 14; Plaintiffs' Opp'n at 9. Through its employee and

member David Hogan the Center has demonstrated Article III standing required for intervention. Center's Mot. Intervene at 17-19. By failing to address all of the elements of organizational standing the Plaintiffs concede that the interests at stake are germane to the Center's purpose and that the relief does not require its members to participate directly in the lawsuit. Center's Mot. Intervene at 19.

The Plaintiffs oppose the Center's standing based on factually inaccurate statements and a strained reading of the Supreme Court's decision in Lujan v. Defenders of Wildlife. 504 U.S. 555 (1992). First, Mr. Hogan has observed and appreciated fairy shrimp vernal pools in Critical Habitat Unit 5D, including Plaintiffs' property. Second, vernal pools and fairy shrimp exist on Plaintiffs properties. Third, Mr. Hogan is a member of the Center; thus whether he exhibits "the indicia of true membership" in the eyes of the Plaintiffs is irrelevant. Plaintiffs' Opp'n at 11.

It is well settled that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing." Friends of the Earth v. Laidlaw Envtironmental Services, 528 U.S. 167, 181, (2000), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-563 (1991). Plaintiffs' do not contest the harm to the Center's interests from the loss of critical habitat on their property or the redressability of the harm through the Court's decision to uphold the critical habitat designation. Instead, they claim that the Center cannot have standing because Mr. Hogan "has never visited the subject property (and cannot do so without trespassing)." Plaintiffs Opp'n at 10. Visitation to an arbitrary private land boundary is not a requirement to suffer an injury in fact. Mr. Hogan has viewed fairy shrimp vernal pool habitat on Plaintiffs' property with the knowledge that fairy shrimp have been found on the site. Opening Hogan Decl. at ¶ 8; Reply Hogan Decl. at ¶ 2, 4-6; Answer, Attach. 1; Bradley Decl., Attach. 1. Plaintiffs' attempts to narrow standing

requirements to an inflexible guideline to enter private property should be rejected.  Ecological Rights Found. v. Pacific Lumber Co., 230 F.3d 1141, 1148 (9th Cir. 2000)  ("The 'injury in fact' requirement in environmental cases is not, however, reducible to inflexible, judicially mandated time or distance guidelines, as Laidlaw makes clear").

An injury is sufficient even when the impacts are felt from a distance nearby and plaintiffs make a concrete and particularized showing of the impact.  See e.g.  Japan Whaling Ass'n v. American Cetacean Society, 478 U.S. 221, 230 n.4 (1986) (injury sufficient when "whale watching and studying of their members will be adversely affected by continued whale harvesting").[1]    Indeed as the Lujan court acknowledges standing is recognized,

> [W]here a person who observes or works with animals of a particular species in the very area of the world where that species is threatened by a federal decision is facing such harm, since some animals that might have been the subject of his interest will no longer exist.

504 U.S. 566-567, citing Japan Whaling Ass'n, 478 U.S. at 230 n.4.  Mr. Hogan's over 17 years of work with the fairy shrimp in San Diego County and his appreciation for vernal pool habitat on the site provide him with a sufficiently concrete injury should the Plaintiffs' lawsuit succeed.  Mr. Hogan does not simply have the "vocational nexus" Plaintiffs and Justice Scalia criticize in Lujan,[2] Mr. Hogan works with the fairy shrimp in the "very area of the world where that species is threatened" by the potential elimination of critical habitat.  Id.  Ninety to ninety seven percent

---

[1] See Friends of the Earth v. Laidlaw Environmental Services, 528 U.S. at 181-182 (injury sufficient where plaintiffs use of areas nearby a polluted river were affected); Fund for Animals, Inc. v. Espy, 814 F.Supp. 142, 149-50 (D.D.C., 1993) (holding that organization committed to preservation of animal species in their natural habitats had concrete, aesthetic viewing interest in wildlife for standing purposes).

[2] The Center notes that in Lujan Justices Blackmun, O'Connor, Stevens, Kennedy, and Souter did not carry such a limited view of the injury-in-fact standing requirements as Justice Scalia. Many of the Justices argued in favor of standing in circumstances similar to this case where the standing declarant works with species in the area affected and his return to the potentially impacted area was reasonable.  504 US at 579-580, 582, 590-595.

of the vernal pools necessary for fairy shrimp have been eliminated from San Diego County. 60 Fed. Reg. at 4926. Should the fairy shrimp lose critical habitat protection it would push the species further towards extinction, concretely injuring Mr. Hogan's longstanding appreciation of the fairy shrimp in San Diego County.

The Supreme Court's denial of standing in Lujan is not analogous to the present circumstances. 504 U.S. 555. The plaintiffs in Lujan sought protection for wildlife across the world in Egypt and Sri-Lanka, while Mr. Hogan seeks to protect and observe fairy shrimp vernal pools in his County of residence where he has sought to observe and study them since 1991. Opening Hogan Decl. at ¶ 2-3. Mr. Hogan is familiar with the Critical Habitat Unit and Plaintiffs' property, has visited the area on many occasions in the past, and intends to continue his habit of returning there. Reply Hogan Decl. at ¶ 2, 4. Mr. Hogan's pattern and habit of visitation is much more concrete than the affiant in Lujan that did not have plans to return to Sri Lanka because of a civil war in a foreign country. Lujan, 504 U.S. at 564.

Contrary to Plaintiffs' assertions Mr. Hogan views and appreciates fairy shrimp vernal pool habitat on the Plaintiffs' property. Mr. Hogan has viewed mima mounds—elevated soils associated with vernal pools in San Diego County—from the prominent overlook above the Plaintiffs's properties. Reply Hogan Decl. at ¶ 4-6. Mr. Hogan's longstanding professional, scientific, and aesthetic appreciation for vernal pool species like the fairy shrimp provide him with a keen ability to spot and observe fairy shrimp habitat from a distance. Mr. Hogan's appreciation of San Diego vernal pool habitat does not require him to trespass on Plaintiffs' property when he can view, observe, and appreciate the vernal pool habitat from a prominent overlook above Plaintiffs' property. Mr. Hogan's specific appreciation of vernal pool habitat on Critical Habitat Unit 5D and Plaintiffs' property and the Plaintiffs' attempt to remove protection

from that habitat provides the sufficiently concrete injury in fact for standing purposes. Cf. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (U.S. 1990) ("averments which state only that one of respondent's members uses unspecified portions of an immense tract of territory" do not provide sufficient injury).

Under Plaintiffs' interpretation the only way to assure standing doesn't fail Lujan's "roughly 'in the vicinity'" language would require the standing declarant to trespass on private property. Lujan, 504 U.S. at 566.   In other words, no private party could obtain standing for ESA cases where the species only exists on private property.  To interpret Article III standing in a way that completely prohibits the enforcement of the wildlife protection laws on lands where third party actions prevent access is not supported by the Courts.  Center for Biological Diversity v. Pirie, 191 F. Supp. 2d 161, 172 (D.D.C. 2002) superseded by statute on another point of law Center for Biological Diversity v. England, 2003 U.S. App. LEXIS 1110 (environmental plaintiff's ability to view wildlife provided standing to enforce protection of wildlife on island even though island was not publicly inaccessible); Coho Salmon v. Pacific Lumber Co., 61 F. Supp. 2d 1001, 1012 (N.D. Cal. 1999) (upholding standing for environmental plaintiffs and rejecting argument that "because plaintiffs' members have no access to [] private lands their injury is merely a generalized injury … which is insufficient to confer standing upon plaintiffs' members.")

Plaintiffs' claim that there are no fairy shrimp or vernal pools on the subject property is contrary to all available evidence.  Populations of fairy shrimp have been surveyed and mapped on the Plaintiffs property by the FWS and private consultants.  Center's Answer, Attach. 1; Reply Bradley Decl., Attach. 1 (showing known populations of fairy shrimp in red and yellow cross hatching on the northeast corner of Critical Habitat Unit 5D on Plaintiffs' property).  The

Center received the map documenting fairy shrimp populations on the Plaintiffs' property via an information request to the FWS, and created a similar map using publicly accessible data. Opening Evans Decl. at ¶ 4; Bradley Decl. at ¶ 4. Simply because Plaintiffs' review of information from the US Fish and Wildlife Service failed to uncover this information, and Plaintiffs' unnamed expert failed to find fairy shrimp or evidence of vernal pools on site does not negate their documented presence on Plaintiffs' properties. Plaintiffs' claims of absence of evidence due to oversight must be rejected.

Plaintiffs' claim that Mr. Hogan "does not exhibit the indicia of true membership" is frivolous, unsubstantiated, and false. Plaintiffs counsel has been informed repeatedly, including through official court documents, that employees of the Center are also members of the Center. Opening Hogan Decl. at ¶ 1; Reply Evans Decl. at ¶ 5. This response is enough. However, to further respond to the Plaintiffs' "indicia of true membership" argument the Center submits the declaration of Center Membership Director, Keri Dixon, and the Center's Bylaws. Dixon Decl. at ¶ 6; Reply Evans Decl., Attach. 2.

Finally, the Center's grievance falls within the "zone of interests" protected by the statute. Animal Legal Def. Fund v. Glickman, 154 F.3d 426, 444 (D.C. Cir. 1998). Mr. Hogan's, and other Center members', interests in observing and studying fairy shrimp are within the zone of interests encompassed by the statute. See e.g., Humane Soc'y of the United States. v. Hodel, 840 F.2d 45, 61 (D.C. Cir 1988) (Activities of observing and studying animals and birds "are within the zone of interests protected by the ESA" quoting National Audubon Society v. Hester, 801 F.2d 405, 407 n.2 (D.C. Cir 1986).

**2. The Center Has a Legally Protected Interest in the Subject Matter of This Action**

When assessing the interest requirement of Rule 24(a), the D.C. Circuit views the rule as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967). The Center's intervention furthers this purpose.

In order to dispute the Center's interest the Plaintiffs again engage in a series of factual inaccuracies and misguided application of caselaw. First, as described supra at § I.1, the Center and its members are not required to trespass on the subject property for the purposes of standing. Second, fairy shrimp exist on Plaintiffs' property and the Center and FWS have provided evidence of the existence of fairy shrimp and vernal pool habitat on Plaintiffs' property. Center's Answer, Attach. 1; Bradley Decl., Attach. 1; Reply Hogan Decl. at ¶ 5-6.

Third, Plaintiffs create a bizarre argument that the Center does not have a legally protectable interest because "the Center has not identified any scientific work regarding the fairy shrimp which it has undertaken, nor has it identified anyone on staff (including Mr. Hogan) who has credentials to scientifically study the fairy shrimp." Plaintiffs Opp'n at 14-15. The Plaintiffs' seem to pull this new legal requirement out of thin air, and cite to no authority for this requirement. Further, it overlooks the established caselaw that impacts to recreational and aesthetic interests constitute the necessary injury in fact; there is no "scientific" interest requirement. See, e.g., Friends of the Earth, Inc.. v. Laidlaw Environmental Services, Inc., 528 U.S. at 181-83 (harm to recreation opportunities constitutes injury in fact for purposes of standing); Lujan, 504 U.S. 555, at 562-63 ("desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest"). Here, the Center has

demonstrated that it has a legally protectable interest in the San Diego fairy shrimp and its habitat.

Factually, Plaintiffs' grossly overlook the facts in this case to make their lack of scientific work claim. Mr. Hogan conducted field surveys for Dr. Marie Simovich of the University of San Diego—an authority on vernal pool species—contributing to the scientific understanding of the species. Opening Hogan Decl. at ¶ 3. Mr. Hogan also co-authored the scientific and legal petition to list the fairy shrimp as endangered with Dr. Denton Belk of the Lady of Our Lake University in San Diego. Opening Hogan Decl. at ¶ 4. Plaintiffs' denigration of the Center's work and Mr. Hogan's expertise is both unnecessary and unfounded.

Fourth, Plaintiffs create a distinction without a difference by asserting that because the Center was not involved in the most recent industry challenge to the critical habitat designation, they don't have a legally cognizable interest in the outcome of this case. Plaintiffs overlook the Center's four independent lawsuits seeking to list the fairy shrimp, designate its critical habitat under the ESA, and challenge the illegal "take" or adverse modification of fairy shrimp or their critical habitat. Center's Mot. Intervene at 7-8, 12. It was the Center's suit that forced the FWS to designate critical habitat in the first instance. Critical habitat designation is the issue in this present action. The Center's continued interest in the full enforcement of the Court's order to designate critical habitat is a legally cognizable interest. Idaho Farm Bureau Fed'n. v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995) ("[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it had supported").

Finally, the Plaintiffs' claim that this case only impacts the Plaintiffs' use of their property ignores the real outcome of the removal of critical habitat protection on the subject property, and the potential for fairy shrimp and their habitat to disappear from the property if it is

developed.  Plaintiffs' use of the property in a way that might degrade or destroy the Center's appreciation of fairy shrimp habitat threatens a protectable right of the Center.  Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of the Interior, 100 F.3d 837, 841-44 (10th Cir. 1996) (individual's involvement with a species through his activities as a photographer, amateur biologist, naturalist, and conservation advocate amounted to sufficient interest for purpose of intervention in litigation covering a species' under the ESA); Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 526-528 (9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife interests" were sufficient for intervention as a matter of right).  Contrary to Plaintiffs' assertions ownership or use of the Property is not required to impact the Center's interest in protecting the fairy shrimp and its habitat.

Plaintiffs' reliance on Donaldson v. United States is inapposite.  400 U.S. 517 (1971), superceded by statute on other grounds, In re EEOC, 709 F. 2d 392, 397 (1983).  In Donaldson the applicant-intervenor sought to prevent the IRS from performing its statutory enforcement duty in obtaining financial records related to the applicant-intervenor's tax returns.  400 U.S. at 531.  The present case is not a situation where the intervenor-applicant's interest is "nothing more than a desire [] to counter or overcome" a requirement by the government agency and courts to produce records under summons, the judicial recognition of which "would unwarrantedly cast doubt upon and stultify the [government's] every investigatory move." Donaldson v. United States, 400 U.S. 517, 531 (U.S. 1971).  The present case involves the well recognized interest of an environmental group to intervene in a case to protect the environment. [3]

---

[3] See, e.g. George E. Warren Corp. v. EPA, 159 F.3d 616 (D.C. Cir. 1998), as amended by 164 F.3d 676 (D.C. Cir. 1999) (three environmental groups authorized to intervene on EPA's behalf in industry challenge to EPA air rules); Wilderness Society v. Morton, 463 F.2d 1261 (D.C. Cir. 1972) (Canadian environmental group allowed to intervene in U.S. environmental group's challenge to Interior Department's compliance with environmental procedures); National Coal

The Center's interest to assure the full enforcement of the ESA's protections for the fairy shrimp and its critical habitat designation as a result of its lawsuit, and the Center's longstanding involvement in the study and protection of the species at issue in this case provides a sufficient interest for intervention.

### D.      The Center's Interests Are Not Adequately Represented by the Existing Parties

The Federal Defendants do not adequately represent the Center's interest because the Center has made a concrete showing of a continuing adverse interest between the Center and the Federal Defendants in relation to the listing and protection of the fairy shrimp.  These continuing adverse interests satisfy the burden that the representation provided by the Federal Defendants may be inadequate.  The Supreme Court has explained that the "inadequate representation" requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n. 10 and acc. text (1972) (citation omitted).  Under this lenient approach, representation may be inadequate where the interests of the party seeking intervention and those of the existing party are "different," even if they are not "wholly 'adverse,'" Nuesse, 385 F.2d at 703, or where they are "similar but not identical." American Tel. & Tel. Co., 642 F.2d 1285, 1293 (D.C. Cir. 1980).  Plaintiffs' attempt to rely on a different standard should be rejected because this case does not involve a state

---

Association v. Uram, 39 Env't Rep. Cas. (BNA) 1624 & n.2, 1994 U.S. Dist. LEXIS 16404, *1 & n.2 (D.D.C. 1994) (environmental group authorized to intervene in industry challenge to environmental rules, and to act as plaintiff in challenging other aspects of those rules); Kerr-McGee Corp. v. Hodel, 630 F. Supp. 621 (D.D.C. 1986), vacated as moot on other grounds 840 F.2d 68 (D.C. Cir. 1988) (environmental group authorized to intervene in industry litigation challenging alleged government inaction on mining leases).

representing the interests of its political subdivisions or citizens under the <u>parens patriae</u> doctrine, but instead involves an environmental group's attempts to uphold public trust resources without the involvement of the state.

As evidenced in the Center's opening brief, through cases not addressed by the Plaintiffs, the Center was forced to sue the FWS to get the challenged regulations and protections in place, indicating the Defendants are unlikely to present all of the arguments made by the Center. Center's Mot. Intervene at 21. The Center has historically and continues to disagree with the FWS's protection, delineation of critical habitat, and allowance of take permits for the species at issue in this case. Center's Mot. Intervene at 22. Further the Center has advanced affirmative defenses that are different than government positions in this case. Center's Answer at 5.

Federal defendants have also taken, and may again take, positions regarding settlement or voluntary remand of this case that are directly adverse to the Center's interests in upholding full protection of critical habitat for threatened and endangered species.[4] This adverse position takes on a special circumstance in this case because the Center has forced FWS to protect the fairy shrimp and, despite the objections of the Center, the FWS has already agreed to a settlement and

---

[4] <u>See e.g</u>. <u>New Mexico Cattle Growers Ass'n v. Norton</u>, Civ. No. 02-0461 (NM February 14, 2003) (agricultural groups' challenge to critical habitat designation for the Arkansas shiner voluntarily remanded over the Center's objection); <u>Agua Caliente Band of Cahuilla Indians v. Norton</u>, Civ. No. 05-187 (C.D. Cal. Filed March 7, 2005) (Tribe's challenge to designation of critical habitat for Peninsular bighorn sheep settled over Center's objections); <u>Bldg. Indust. Legal Def. Found. v. Norton</u>, 231 F. Supp. 2d 100, 102 (D.D.C. 2002) (Challenge to Arroyo toad and Riverside Fairy Shrimp critical habitat designation voluntarily vacated and remanded over objections by the Center); <u>Home Builders Ass'n of Northern California v. Norton</u>, Civ. No. 01-1291 (D.D.C. filed June 8, 2001) (Home Builders challenge to critical habitat designation for the California red-legged frog ended in a consent decree over the objections of environmental intervenors); <u>National Homebuilders v. Evans</u>, Civ. No. 00-02799 (D.D.C November 20, 2000), (Home Builders challenge to salmon critical habitat in DC voluntarily remanded over environmental groups' objections).

voluntary remand to reduce the critical habitat for the fairy shrimp.[5]  The Center does not assert that it will merely bring additional "vigor" to the proceeding or "fail to make any showing whatsoever that any difference exists" as in <u>Humane Soc'y of the United States v. Clark</u>, 109 F.R.D. 518, 520 (D.D.C. 1985).   The longstanding history of the Center's litigation to require the FWS to enforce the ESA and the Center's continuing different and adverse position to that of the FWS demonstrate that the FWS will not adequately represent the Center's interest.

The Center does not, as the Plaintiffs contend "question the integrity or competence of the Justice Department."  Plaintiffs Opp at 18.  Plaintiffs narrow view is again divorced from reality.  As the D.C. Circuit notes in <u>Natural Resources Defense Council v. Costle</u>:

> a shared general agreement … does not necessarily ensure agreement in all particular respects about what the law requires. Without calling the good faith of EPA into question in any way, appellants may well have honest disagreements with EPA on legal and factual matters.

561 F.2d 904, 912 (D.C. Cir. 1977).  The Center and the FWS have honest disagreements on legal and factual matters related to the fairy shrimp.  Again, for example, the San Diego Multiple Species Conservation Plan—permitting destruction of fairy shrimp and adverse modification of fairy shrimp critical habitat—was entered into in good faith by the FWS.  However, upon judicial review it was found unlawful.  <u>Southwest Ctr. for Biological Diversity v. Bartel</u>, 470 F. Supp. 2d 1118 (S.D. Cal. 2006).

To assert that the Center is not permitted to intervene because there is no "discretionary decision-making" in litigation and settlement is a myopic and incorrect view of environmental litigation, as demonstrated by the frequency in which the FWS has settled developer challenges

---

[5] <u>Mission Viejo LLC v. Babbitt</u>, Civ. No 01-08412 (C.D.Cal filed December 28, 2000), <u>Natural Res. Def. Council v. U.S. Dept. of Interior</u>, Civ. No. 99-5246 (C.D.Cal. filed September 29, 1993); <u>Bldg. Indust. Association of Southern California v. Norton</u>, Civ. No. 01-7028 (C.D.Cal. filed January 17, 2001) (Homebuilders challenge to critical habitat designation for the California gnatcatcher and San Diego fairy shrimp vacated and remanded over objections by the Center).

to critical habitat designations. It also ignores the inherent nature of an executive branch agency that must also deal with politically based decisions, instead of solely basing decisions on sound legal or scientific judgment.

Contrary to evidence the Plaintiffs' assert that the Center has "no knowledge or expertise" regarding fairy shrimp habitat in the area and "no knowledge at all about Plaintiffs' 143 acres of designated critical habitat." Plaintiffs Opp'n at 18. Therefore, argue Plaintiffs', the Center cannot contribute to the case. However, Plaintiffs' ignore that Mr. Hogan *has* expressed knowledge and familiarity with Critical Habitat Unit 5D, encompassing the Plaintiffs's property, familiarity with land forms such as drainages on Plaintiffs' property, and familiarity with vernal pool habitat, such as mima mounds, on Planitiffs' Property. Opening Hogan Decl. at ¶ 8; Reply Hogan Decl. at ¶ 4-5. Plaintiffs' conveniently overlook the knowledge and expertise gained from over 17 years of experience by the Center and Mr. Hogan regarding fairy shrimp in San Diego County, including the Center's expertise in obtaining protection for them under the ESA.

Plaintiffs' reliance on Environmental Defense Fund v. Costle[6] is misapplied for this case. Environmental Defense Fund involved a challenge to the EPA's salinity standards in the Colorado River by environmental groups in which states, subdivisions of the state, water districts and a Utah utility sought intervention. 79 F.R.D. 235 (D.D.C. 1978). Unlike the Center, the Utah utility company admitted that it did not disagree with the positions taken by other defendants, and the court emphasized that the states of Utah and Wyoming currently represented the interests of the Utah utility company. 79 F.R.D. at 242. In the present case the Center has

---

[6] Plaintiffs' state incorrectly that they rely on Natural Resources Defense Counsel v. Costle, 183 U.S. App. D.C. 11 (D.C. Cir. 1977), but the citation and facts referenced are from Environmental Defense Fund, Inc. v. Costle, 79 F.R.D. 235 (D.D.C. 1978).

made a concrete showing of special circumstances surrounding the Center's continued adverse interest versus the Defendants in regards to fairy shrimp protection.

## II.     IN THE ALTERNATIVE TO INTERVENTION OF RIGHT, PERMISSIVE INTERVENTION IS WARRANTED

In the alternative, the Center's request for permissive intervention should be granted. Like intervention of right, permissive intervention is to be granted liberally.  E.E.O.C. v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("flexible interpretations" of rule appropriate in favor of intervention).  Under Rule 24(b) permissive intervention may be granted in the court's discretion if the proposed Intervenor presents "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Id.* 1046.  Plaintiffs do not contest that the Center's motion is timely, and the Center shares claims and defenses on the same question of law and fact.  Instead Plaintiffs engage in a series of arguments divorced from reality that miss the mark.

The Plaintiffs do not contest the Center's statutory basis for subject matter jurisdiction, Center's Mot. Intervene at 24, but assert that the Center has not demonstrated standing.  As stated supra at § I.1, the Center has standing in this case.  Plaintiffs also fail to disclose that in this Circuit, "there is uncertainty over whether standing is necessary for permissive intervention." In re Vitamins Antitrust Class Actions, 215 F.3d 26, 31 (D.C. Cir. 2000).  Plaintiffs arguments against the Center's subject matter jurisdiction must fail.

Permissive intervention should be granted because the Center's participation "will contribute a perspective which may not otherwise be represented in this matter," and the Center

has a "demonstrated [] willingness and ability to contribute to the full development of the factual and legal issues presented." Humane Soc'y of the United States v. Clark, 109 F.R.D. 518, 521 (1985). Like the intervenors in Humane Society the Center has participated in administrative proceedings promulgating the regulations at issue, and has demonstrated its willingness to develop the full legal issues at hand in protection of fairy shrimp and their critical habitat.

Plaintiffs' opposition to the Center's permissive intervention is based largely on the peculiar claim that "[t]his case, of course, has nothing to do with the necessity for protecting vernal pools under the ESA" and the "Center's interest in enforcing the ESA and protecting fairy shrimp are [sic] irrelevant." Plaintiffs' Opp'n at 20. Plaintiffs appear to be stating that the administrative record and judicial outcome of this case have no bearing on the reality of protection of wildlife and enforcement of the ESA. This is patently untrue.

Removal of critical habitat protections facilitates the destruction of fairy shrimp vernal pool habitat on the Plaintiffs' property, impacting the Center's interest in appreciation and protection of the fairy shrimp. This threat is compounded by the Plaintiffs' denial that vernal pool habitat and fairy shrimp exist on the Plaintiffs' property contrary to evidence. Center's Answer Attach. 1; Reply Hogan Decl. at ¶ 5-6; Bradley Decl., Attach 1. Should Plaintiffs' prevail in this case the critical habitat protections would be eliminated and Plaintiffs' would claim development is unimpeded due to the negative surveys of their experts and the failure to uncover evidence of fairy shrimp or vernal pools.

The Plaintiffs' opposition then goes into a mix of contradictions against Permissive intervention because the Center and Federal Defendant's Answer are "virtually identical" even though the Plaintiffs simultaneously recognize that the Center raised different substantive affirmative defenses in its Answer. Plaintiffs' Opp'n at 20-21. The Plaintiffs' seems to assert

that addressing the similar factual allegations or addressing different substantive defenses will delay the adjudication of this case.   However, the Center's timely intervention motion and attempts to coordinate in the meet and confer process indicate an attempt to timely adjudicate these matters.   Attempts to deny permissive intervention simply because the factual admissions in the Answers are similar, or the affirmative defenses are different runs contrary to the flexible interpretations of the rule favoring intervention.   <u>E.E.O.C</u>, 146 F.3d at 1046.

Here, the Center has met every requirement for permissive intervention and should be permitted to intervene even if intervention as of right is denied.

///

///

///

**CONCLUSION**

For the reasons set forth above, the Center respectfully requests that this Court grant its motion to intervene as of right or, in the alternative, permissive intervention.


Respectfully submitted June 16, 2008.


/s/ Michael Senatore
_____

Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: msenatore@biologicaldiversity.org

Jonathan Evans (Pro Hac Vice Applicant)
(CA Bar No. 247376)
CENTER FOR BIOLOGICAL DIVERSITY
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940
Email: jevans@biologicaldiversity.org

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

# Exhibit A
# Civ. No. 1:08-cv-00383-(RMC)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **OTAY MESA PROPERTY L.P. et al.,** | **Civ. No. 1:08-cv-00383-(RMC)** |
| **Plaintiffs,** | |
| **vs.** | |
| **U.S. Department of Interior et al.,** | |
| **Defendants,** | |
| **and** | |
| **CENTER FOR BIOLOGICAL DIVERSITY,**<br>**1333 N. Oracle Rd.**<br>**Tucson, AZ  85705** | |
| **Intervenor-Defendant –Applicant.** | |

**DECLARATION OF JONATHAN EVANS IN SUPPORT OF INTERVENOR-**
**APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S REPLY**

I, Jonathan Evans, declare as follows:

1.      I am staff counsel for Intervenor-Defendant-Applicant Center for Biological

Diversity ("Center"). I have personal knowledge of the facts and statements contained herein

and, if called as a witness, could and would competently testify thereto.

2.      On May 28, 2008 the Center contacted both the Defendants, through Ms.

Meredith Flax, and Plaintiffs, through messages to Ms. Nancie Marzulla, to request to participate

in the scheduled meet and confer process to address issues related to discovery, joining of

parties, timing of procedural and substantive motions, and other matters.  Defendants stated they

would not oppose the Center's participation, and indicated they would convey such an opinion to

the Plaintiffs.  Despite requests for a response via phone and e-mail Plaintiffs failed to respond to

the Center's request to participate in the meet and confer process. As a result the Center was unable to participate in the meet and confer process.

3.    In conversations with Defendants the Center agreed that the Southern District of California was the appropriate venue for this proceeding.

4.    On the afternoon of June 2, 2008 the Plaintiffs requested via email to me to depose Mr. Hogan on the morning of June 4, 2008. Counsel of record for the Center was not provided a copy of the deposition by the Plaintiffs. In telephonic conversations about the matter on June 3, 2008 with Mr. Roger Marzulla I explained, that such short notice for a deposition was unreasonable but that the Center would be willing to request that the court stay resolution of the Center's motion to intervene until the Defendants' motion to transfer was resolved because the test for intervention as a matter of right and specifically whether an intervenor must demonstrate Article III standing differs in the Ninth Circuit. I expressed that the Center would be willing to consider deposition and discovery issues after the transfer issue was decided. The Plaintiffs refused such a compromise.

5.    In telephonic conversations on June 3, 2008 I repeatedly explained to Mr. Marzulla that employees of the Center for Biological Diversity are also members of the Center for Biological Diversity. I further drafted a letter to Mr. Marzulla to again clarify that employees of the Center for Biological Diversity are also members of the Center for Biological Diversity, and correct misrepresentations Mr. Marzulla had made of our conversation. Attachment 1, Letter from Jonathan Evans to Roger Marzulla June 5, 2008.

6.    Attachment 2, Bylaws of the Center for Biological Diversity is the pertinent section of the Center's Bylaws regarding membership with the Center.


///

///

///

I declare under penalty of perjury that the forgoing is true and correct. Executed on this

June 15, 2008.

_Jonathan Evans_ (signature)

Jonathan Evans (<u>Pro Hac Vice</u> Applicant)
CENTER FOR BIOLOGICAL DIVERSITY
(CA Bar. No. 247376)
PMB 447, 8033 Sunset Blvd.
Los Angeles, CA 90046-2401
Telephone: 213-598-1466
Facsimile: 213-652-1940

Email: <u>jevans@biologicaldiversity.org</u>


Michael Senatore
(D.C. Bar No. 453116)
CENTER FOR BIOLOGICAL DIVERSITY
1601 Connecticut Ave. N.W., Suite 701
Washington, D.C. 20009-1056
Telephone: 202-232-1216
Facsimile: 202-232-1217
Email: <u>msenatore@biologicaldiversity.org</u>


Attorneys for Intervenor-Defendant-Applicant Center for
Biological Diversity

# Exhibit A, Attachment 1
# Civ. No. 1:08-cv-00383-(RMC)



CENTER *for* BIOLOGICAL DIVERSITY                    *Because life is good.*

*protecting and restoring natural ecosystems and imperiled species through
science, education, policy, and environmental law*

Roger Marzulla
Marzulla Law
1350 Connecticut Ave., NW, Suite 410
Washington, DC. 20036-1722
roger@marzulla.com

***via electronic and US mail***

June 5, 2008

RE:    *Otay Mesa Property, L.P., et al v. United States Dept. of Interior, et al.*, Response to
          Plaintiffs' June 5 letter

Dear Mr. Marzulla:

         This letter is a clarification and response to your June 5, 2008 letter to the Center
for Biological Diversity ("Center").

         The Center is concerned with the mischaracterization of our June 3, 2008
conversation in the June 5, 2008 letter addressed to our office.  I trust that you will not
provide such a representation—which the Center maintains is a factually inaccurate
characterization of events—to the Court regarding this matter for the case referenced
above.   Neither did we agree that the Center would provide you with written
documentation, nor did I respond that the Center has a "written directive or policy that
makes all employees of the organization members."   I specifically requested that
Plaintiffs' provide any such request for information in writing to avoid this type of
misunderstanding or mischaracterization so we could properly consider and respond to
such a request.  Thank you for providing such a request in writing, and our response is
below.

         The following is our response to your inquiry in the June 5, 2008 letter.  I reiterate
my verbal response provided to you during our June 3, 2008 conversation, employees of
the Center for Biological Diversity are also members of the Center for Biological
Diversity.   Additionally, please refer to paragraph one of the "Declaration of David
Hogan in Support of Intervenor-Applicant Center for Biological Diversity's Motion to
Intervene as a Defendant" where Mr. Hogan declares under penalty of perjury, "I am also
a member of the Center [for Biological Diversity]."

*Tucson • Phoenix • San Francisco • San Diego • Los Angeles • Joshua Tree • Silver City • Portland • Washington, DC*

Jonathan Evans, Staff Attorney
PMB 447, 8033 Sunset Blvd. • Los Angeles, CA 90046-2401
*tel:* (213) 598.1466   *fax:* (213) 652.1940   *email:* jevans@biologicaldiversity.org
*www.BiologicalDiversity.org*

Please direct all future requests and correspondence in writing to our attention and be sure to also copy counsel of record for the Center on any future correspondence.

Best regards,

Jonathan Evans
Staff Attorney
Center for Biological Diversity

cc:

Michael Senatore

# Exhibit C, Attachment 2
# Civ. No. 1:08-cv-00383-(RMC)

BYLAWS
OF
CENTER FOR BIOLOGICAL DIVERSITY, INC.

\*\*\*

ARTICLE VI

MEMBERS

Section 1.

Members are individuals or households who have voluntarily and affirmatively associated with the Center for Biological Diversity and satisfied the requirements for membership. These requirements shall be determined by the Membership Director and can include the donation of money, goods, volunteer time, or services. The Membership Director shall maintain a list, regularly updated, of all current Members.

Section 2.

Membership entitles an individual or household to regular communications from the Center. Members shall have no voting rights.

Section 3.

Membership constitutes authorization for the Center for Biological Diversity to represent members' interests in judicial and regulatory proceedings within the scope of the activities of the Center as they pertain to fulfillment of its mission.

Section 4.

Members may choose to cancel their membership and disassociate with the Center at any time, by requesting such cancellation in writing to the Membership Director.

\*\*\*

Robin Silver, Chairperson

Todd Schulke, Secretary

Exhibit B
Civ. No. 1:08-cv-00383-(RMC)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**OTAY MESA PROPERTY L.P. et al.,**

          **Plaintiffs,**

           **vs.**

**U.S. Department of Interior et al.,**

          **Defendants,**

           **and**

**CENTER FOR BIOLOGICAL DIVERSITY,**
**1333 N. Oracle Rd.**
**Tucson, AZ  85705**

          **Intervenor-Defendant –Applicant.**

**Civ. No. 1:08-cv-00383-(RMC)**

---

**DECLARATION OF DAVID HOGAN IN SUPPORT OF INTERVENOR-APPLICANT
CENTER FOR BIOLOGICAL DIVERSITY'S REPLY**

I, David Hogan, declare as follows:

1.      I am a Conservation Manager for the Center for Biological Diversity (formerly the Southwest Center for Biological Diversity, collectively "the Center").  I am also a member of the Center.  This declaration is made in support of the Center's Reply to Intervene as a Defendant. I have personal knowledge of the facts and statements contained herein and, if called as a witness, could and would competently testify thereto.

2.      I have traveled to Critical Habitat Unit 5D in the past and I intend to return to that critical habitat unit as part of my regular visits to the area.  I also visit the Otay Mountain Wilderness via Otay Mountain road, a.k.a. Otay Mountain Truck Trail as part of my regular

visits to the area.  The Otay Mountain Wilderness is located east of Plaintiffs' Property, and my travels to, from, and within the Otay Mountain Wilderness bring me within easy view of Critical Habitat Unit 5D and the Plaintiff's properties from prominent vista points.  My visits to Critical Habitat Unit 5D occur, approximately, on an annual basis, usually in the spring when vernal pools hold water, San Diego fairy shrimp are in their active life cycle, other wildlife species are most active, and plants are in their growing and reproductive season.  I have a habit of visiting the area for aesthetic, spiritual, professional, and scientific interests.  I also intend to return to Critical Habitat Unit 5D and the Otay Mountain Wilderness via Otay Mountain Truck Trail, including the prominent vistas overlooking Plaintiffs' properties, for aesthetic, spiritual, and scientific interest as part of my regular travels in my County of residence.  For example, I intend to return that area in the spring of 2009 to visit Critical Habitat Unit 5D and the Otay Mountain Wilderness via Otay Mountain Truck Trail overlooking the Plaintiffs' property.

3.    Attachment 1 to Exhibit B is a Google Earth aerial photo and map showing the general area of Critical Habitat Unit 5D and Plaintiffs Properties.  Portions of Critical Habitat Unit 5D are accessible via roads open to the public.  For example, Alta road is a publicly accessible road running from north to south that accesses the western portion of Critical Habitat Unit 5D.  There are no gates blocking public access and no signs warning against trespassing or public use of Alta Road.  There are signs warning against trespassing located immediately east of Alta road that are oriented west and parallel to Alta Road, thereby suggesting that a traveler should not diverge from Alta Road onto adjacent land.  However, there is no indication that access to Alta road itself is prohibited.  In contrast, an eastern extension of Otay Mesa Road originating from the same intersection as Alta Road is clearly marked with signs oriented west and perpendicular to the road indicating that public use of the road is prohibited.

4.     I often stop at a prominent vista overlooking Critical Habitat Unit 5D and Plaintiffs' Properties on my trips to and from the Otay Mountain Wilderness via Otay Mountain Truck Trail.  The promontory off of Otay Mesa Truck Trail provides a very clear elevated view of the area in which Critical Habitat Unit 5D is located, including the Plaintiffs' properties.  My years of experience in visiting the area and a working knowledge of maps and aerial photos provide me with the certainty that I appreciate the view of Plaintiffs' Properties.  Specifically, to be certain I viewed Plaintiffs' properties I have used Attachment 1 to this Exhibit (a google earth printout of an aerial satellite photo), Attachment 1 to Intervenor-Applicants Answer (a similar aerial photograph map indicating fairy shrimp locations and critical habitat provided by USFWS), and Exhibit 1 to Plaintiffs' complaint (a map of critical habitat and Plaintiffs' Properties).

5.     Using those maps and satellite photos I was able to locate prominent landmarks including, but not limited to, power lines, dirt roads, buildings in Mexico, the border fence, and prominent land forms like hills and drainages.  Specific features observed from the prominent vista include the drainage that forms the eastern boundary of the critical habitat unit in the Otay International LLC property, and the area of mima mound vernal pool topography in the eastern area of the Critical Habitat Unit 5D also on Otay International LLC property.  From my years of experience visiting the area and knowledge of maps and physical features I was able to view Plaintiffs' other properties as well.

6.     Mima mound vernal pool topography is an important geographic feature on Plaintiffs' properties that indicate vernal pools and the presence of fairy shrimp and that I appreciate from the prominent vista on Otay Mountain Truck Trail.  Mima mounds are a type of concentrated, natural mounding of ground that occur in close association with vernal pools.

3

Mounding formed by mima mounds is associated with the depressions that allow vernal pools to pond in between the mounds. In San Diego County it is relatively rare to have mima mound topography without vernal pools. It is also relatively rare in San Diego to have vernal pools that do not contain San Diego fairy shrimp. Mima mounds are readily visible from aerial and satellite photos, and prominent elevated vistas located above the topography, appearing like polka dots on the landscape, and can be seen both from the prominent vista on Otay Mountain Truck Trail and in the above referenced exhibits.

  7. The U.S. Bureau of Land Management maintains a public easement across private property for the Otay Mountain Truck Trail and public access to the Otay Mountain Wilderness, according to communications with the agency. Also, in order to access the Otay Mountain Truck Trail from the west it is not necessary to pass any active gate or to pass any signs indicating no trespassing. The only gates observed in my visits to Otay Mountain Truck Trail from the west were several old gates that were not in use and broken down on the side of the road. To access Otay Mountain Truck Trail from the west, one must drive east on Otay Mesa road and then turn left (North) onto Alta road. See attachment 1. Using a Google earth map it is easy to quickly find a well maintained connection between Alta road and the Otay Mountain Truck Trail in the vicinity of a Mexican food café north of Donovan State Prison Road. See attachment 1. The only "no trespassing" signs observed in this area were south of Otay Mesa Road / east of Alta road or eastbound on the continuation of Otay Mesa Road, as discussed above. See attachment 1. The roads to access Otay Truck Trail were in good condition upon my last visit. The way I located Otay Truck Trail on my last visit was by following the maps, indicated above, and the best maintained road which has been graveled and has reflectors on the side of the road to mark the road during the night, presumably for the safety and use by the public and border patrol. To

access the Otay Mountain Truck Trail from the east one must drive south on Highway 94, turn right (Southwest) on Marron Valley Road, and turn right (West) on Otay Mountain Truck Trail. In order to access the Otay Mountain Truck Trail from the east it is not necessary to pass any locked gate or to pass any signs indicating no trespassing.

8.    If critical habitat protection for the fairy shrimp is not maintained I and the Center will suffer aesthetic, professional, scientific, recreational, and spiritual loss because the loss of protection will facilitate destruction of the fairy shrimp populations on the Plaintiffs' Property. Development of the Plaintiffs' Property will eliminate documented fairy shrimp locations on Plaintiffs' property and mima mound vernal pool topography observed on Plaintiffs properties, which will cause me aesthetic, psychological, professional, recreational, and spiritual loss.


I declare under penalty of perjury that the forgoing is true and correct.  Executed on this Saturday, June 14, 2008.



David Hogan
Conservation Manager
Center for Biological Diversity

5

# Exhibit B, Attachment 1
# Civ. No. 1:08-cv-00383-(RMC)



# Exhibit C
# Civ. No. 1:08-cv-00383-(RMC)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OTAY MESA PROPERTY L.P. et al.,

Plaintiffs,

vs.

U.S. Department of Interior et al.,

Defendants,

and

CENTER FOR BIOLOGICAL DIVERSITY,
1333 N. Oracle Rd.
Tucson, AZ  85705

Intervenor-Defendant –Applicant.

Civ. No. 1:08-cv-00383-(RMC)

DECLARATION OF KERI DIXON IN SUPPORT OF INTERVENOR-APPLICANT
CENTER FOR BIOLOGICAL DIVERSITY'S REPLY

I, Keri Dixon, declare as follows:

1.     I am Membership Director for the Center for Biological Diversity (formerly the Southwest Center for Biological Diversity, collectively "the Center"). I am also a member of the Center. This declaration is made in support of the Center's Reply to Intervene as a Defendant. I have personal knowledge of the facts and statements contained herein and, if called as a witness, could and would competently testify thereto.

2.     The Center is a non-profit corporation with offices in San Francisco, Joshua Tree, Los Angeles, and San Diego, California; Tucson, Phoenix, and Prescott, Arizona; Silver City, New Mexico; Portland and Bend, Oregon; Richmond, Vermont, and Washington, DC. The Center's primary mission is to preserve and recover endangered species and their habitats,

including all populations of the San Diego fairy shrimp. I work primarily out of the Center's main office in Tucson, Arizona.

3.      In my role as Membership Director, my primary duty is to oversee membership staff, direct membership communications and fundraising campaigns, including new member recruitment efforts and member relations activities. I also oversee fundraising events, facilitate member communications with Center staff, and oversee the recording of members' activities when they are involved with program actions. I work to maintain effective outbound membership communications including mail, email, and phone efforts as well as oversee response to incoming inquires and requests. I work to assure the efficient and effective maintenance of our membership database recording activity related to all members, including Center employees. I also work to assure our web presence makes available information and opportunities relating to our membership, especially regarding opportunities for our members to participate in and support Center campaigns, events and other activities.

4.      Per direction from our Board of Directors, membership is based on an individual or a group's support for the Center's mission to protect wildlife, endangered species and habitat, as long as they take regular action on that interest that supports the Center and our mission work. What constitutes action necessary for membership is based on, but not limited to, contributions of professional or other services, volunteer activity or advocacy, in-kind contributions, donations of expertise, and financial contributions. Membership does not require or prohibit financial support or transactions. Employees of the Center are also considered members of the Center because of their support for the Center's mission and their continued actions, as listed above, in support of the Center's mission.

5.      We track all of our members in our membership database, including employees. All of the Center's members, including employees, receive mail, email and phone communications according to their personal communication preferences as recorded in the membership database. Our membership database includes comments about activities,

photographs, feedback from our members and records of contributions.  Employees are added to the database on a periodic basis as they are hired.

      6.     David Hogan is a member of the Center because he supports for the Center's mission to protect wildlife and habitat, and takes regular and supportive action on that interest. David's longstanding actions to support the Center's mission are listed, in part, in his declarations for this case.  Attachment 1 to Exhibit C is the membership profile for David Hogan from the Center's database, including member profile information as well as photographs and notes.  The 8/27/06 note indicates a comment converted from the Center's former database as the database conversion occurred on that date.

      I declare under penalty of perjury that the forgoing is true and correct. Executed on this June 12, 2008.

                    Keri B. Dixon
                    Membership Director
                    Center for Biological Diversity

# Exhibit C, Attachment 1
# Civ. No. 1:08-cv-00383-(RMC)



**Requested Information**
**(CBD)**



### Account Profile Report for Account 24479

### Account Display

| | |
|---|---|
| **ACCOUNT ID** | **24479 (INDIVIDUAL)** |
| Household Addressee | David Hogan |
| Household Salutation | David |
| **PRIMARY ADDRESS** | **MAILABLE (Residence Address / okay to use)** |
| | POB 7745 |
| | San Diego CA 92167 |
| | USA |
| Address Last Changed | 06/01/2007 13:08:20 by KEVIN_ROI J007826 |
| Head of household (#24479) | **David Hogan** |
| Primary Home Phone | (760) 809-9244 |
| Primary Email | dhogan@biologicaldiversity.org |
| **ACCOUNT CLASS** | **Individual** |
| Account Status | ACTIVE |
| Member Type | Member |
| Origination Vendor | ROI Solutions, Inc. |
| Origination Vendor ID | 0 |
| | **Head of household — David Hogan** |
| Do not contact | Okay to contact |
| Record added | 11/01/2005 |
| Full Name | David Hogan |
| Account Addressee | David Hogan |
| Account Salutation | David |
| Gender | Male |
| Birth state | California |
| Origination vendor | ROI Solutions, Inc. |

### Address Display

▼ Primary Address

| | |
|---|---|
| address status | MAILABLE |
| address contact status | Y (okay to use) |
| mailing type | Residence |
| street | POB 7745 |
| city state zip | San Diego CA 92167 |
| country | USA |
| congressional district | 00 |
| state senate district | 000 |
| state house district | 000 |
| county fips | 073: San Diego |
| latitude | 32.74578 |
| longitude | -117.24678 |
| cbsa | 41740: San Diego-Carlsbad-San Marcos, Ca Metropolitan Statistical Area |
| last changed | 06/01/2007 13:08:20 by KEVIN_ROI J007826 |

▼ David Hogan (Head of household) — Address Schedule

| | |
|---|---|
| **January** | Primary |
| **February** | Primary |

| | |
|---|---|
| **March** | Primary |
| **April** | Primary |
| **May** | Primary |
| **June** | Primary |
| **July** | Primary |
| **August** | Primary |
| **September** | Primary |
| **October** | Primary |
| **November** | Primary |
| **December** | Primary |

## Phone Details

▼ David Hogan (Head of household) — Primary Home Phone

| | |
|---|---|
| **phone number** | (760) 809-9244 |
| **origination vendor** | User |

## Comments

| | |
|---|---|
| **contacted by** | Keri Beth Dixon |
| **member** | David Hogan |
| **date** | 06/03/2008 |
| **category** | General Comment |
| **access** | -- all users -- |
| **subject** | **Fairy shrimp case standing declarant** |
| **text** | Dave Hogan is a standing declarant in the Center's current case regarding fairy shrimp critical habitat. He has done much of the original work on the case and has been personally and professionally involved in their protection and habitat conservation for many years as a native of the San Diego area. |
| **flags** | |

| | |
|---|---|
| **contacted by** | Keri Beth Dixon |
| **member** | David Hogan |
| **date** | 08/27/2006 |
| **category** | General Comment |
| **access** | -- all users -- |
| **subject** | **STAFF** |
| **text** | Dave Hogan, FT staff in San Diego, CA |
| **flags** | |

**attachment**





**Flags Display**

| category | flag | effective date | cutoff date |
|---|---|---|---|
| Contact | DNT (Do Not Trade) | 08/27/2006 | — |
| DEVELOPMENT | COMP (Complimentary) | — | — |
| Contact | DNC (Do Not Call) | 08/27/2006 | — |
| Contact | NRE (No Renewals) | 08/27/2006 | — |

# Exhibit D
# Civ. No. 1:08-cv-00383-(RMC)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Civ. No. 1:08-cv-00383-(RMC)

OTAY MESA PROPERTY L.P. et al.,

Plaintiffs,

vs.

U.S. Department of Interior et al.,

Defendants,

and

CENTER FOR BIOLOGICAL DIVERSITY,
1333 N. Oracle Rd.
Tucson, AZ  85705

Intervenor-Defendant –Applicant.

## DECLARATION OF CURT BRADLEY IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S REPLY

I, Curt Bradley, declare as follows:

1.     I am GIS Specialist and Information Technology Director for the Center for Biological Diversity (formerly the Southwest Center for Biological Diversity, collectively "the Center"). I am also a member of the Center. This declaration is made in support of the Center's Reply to Intervene as a Defendant. I have personal knowledge of the facts and statements contained herein and, if called as a witness, could and would competently testify thereto.

2.     The Center is a non-profit corporation with offices in San Francisco, Joshua Tree, Los Angeles, and San Diego, California; Tucson, Phoenix, and Prescott, Arizona; Silver City, New Mexico; Portland and Bend, Oregon; Richmond, Vermont, and Washington, DC. The Center's primary mission is to preserve and recover endangered species and their habitats,

including all populations of the San Diego fairy shrimp.  I work primarily out of the Center's main office in Tucson, Arizona.

3.    In my role as GIS Specialist and Information Technology Director I assist Center campaigns with Geographic Information Systems analyses and cartography.  I hold a master's in watershed hydrology and a bachelor of science in mechanical engineering from the University of Arizona.  I have been GIS specialist for the Center for the past 7 years. Before joining the Center I was a GIS specialist at the Sky Island Alliance for 3 years.

4.    Attachment 1 to Exhibit D is a map I created detailing San Diego fairy shrimp populations in the Otay Mesa area.  I used the digital map of Exhibit 1 to the Complaint for Declaratory and Injunctive Relief filed by Plaintiffs in this case as a base map.  This was done by a process called georeferencing where the map image is aligned with spatial data to create a spatially referenced image.  I used the San Diego fairy shrimp critical habitat boundaries as the basis for my spatial alignment.  I then added the June 1, 2008 updated version of the California Natural Diversity Database (CNDDB) observation records and the May 7, 2008 version of the Carlsbad Fish and Wildlife office species occurrence records for the San Diego fairy shrimp.  I added additional attribute data from the CNDDB's RareFind database pertaining to element occurrence number (OCCNUMBER) 59 to the bottom of the map.  The CNDDB data was downloaded from http://www.dfg.ca.gov/biogeodata/cnddb/rf_ftpinfo.asp.  The Carlsbad Fish and Wildlife data was downloaded from
http://www.fws.gov/carlsbad/giswebpage/giswebpage.htm .

5.    Below I include a discussion of the acronyms used in Attachment 1 to Exhibit D.
OCCNUMBER: Element Occurrence Number.  The occurrence number which uniquely identifies a particular instance of a species or community.  Occurrence numbers are assigned sequentially as the occurrence is mapped
ELMDATE : Date Element Last Observed.  According to submitted information, the most recent date that an observer actually saw the element at this site.

ECOCOM: Ecological Comments. Comments on ecological conditions at the population/stand. This can include information on associated species, physical characteristics of site, etc.

DISTCOM: Distribution Comments. Additional information about the location/distribution of an element occurrence.

GENCOM: General Comments about an element occurrence that didn't fit physically or topically in the other comments fields.

TITLE: Title of a source document used to map an Element Occurrence.

ELEMENT OCCURRENCE:

A recorded siting of a rare, California-native species or natural community in the California Natural Diversity Database. Other commonly used terms are EO and OCC.

AUTHOR: Author of a source document used to map an occurrence.


I declare under penalty of perjury that the forgoing is true and correct. Executed on this June 12, 2008.

Curt Bradley
GIS Specialist and Information Technology Director
Center for Biological Diversity

# Exhibit D, Attachment 1
# Civ. No. 1:08-cv-00383-(RMC)



San Diego Fairy Shrimp
Observations and Critical Habitat

San Diego fairy shrimp locations (USFWS)
San Diego fairy shrimp locations (CNDDB)
Final Critical Habitat
Parcels

OCCNUMBER 59

Otay International LLC

Otay Mesa Property LP

RANCHO VISTA DEL MAR

Case 1:08-cv-00383-RMC    Document 1-2    Filed 03/03/200

Attributes from CNDDB for OCCNUMBER: 59

ELMDATE (observation date): 2/7/2001

ECOCOM: AREA HAS MIMA MOUND NATURAL VERNAL POOL COMPLEXES; THE FEW REMAINING NATURALLY-OCCURRING POOLS HAVE BEEN DISTURBED BY AGRICULTURAL ACTIVITIES.

DISTCOM: FAIRY SHRIMP OBSERVED IN ROAD-RUT POOL #5.

GENCOM: 4 INDIVIDUALS OBSERVED, MAY ALSO OCCUR IN POOL #68, WHICH FLOWS INTO POOL #5 DURING PERIODS OF HEAVY INUNDATION.

TITLE: RESULTS OF FOCUSED FAIRY SHRIMP WET SEASON SURVEYS FOR THE EAST OTAY MESA SPECIFIC PLAN AREA AMENDMENT IN THE COUNTY OF SAN DIEGO.

AUTHOR: GRIFFIN, DAVID J. (EDAW, INC.), 9/19/2001