UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
_____

| | |
|---|---|
| OTAY MESA PROPERTY L.P, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:08-CV-00383 |
| | ) (RMC) |
| | ) |
| U.S. DEPARTMENT OF INTERIOR, et al., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| | ) |
| Movant. | ) |

_____ )

## PLAINTIFFS' OPPOSITION TO MOTION TO TRANSFER

Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International, L.L.C. (collectively "Otay Mesa Plaintiffs"), oppose the Government's motion to transfer this case to the Southern District of California. The Government has failed to meet its burden of making a substantial showing that transfer is necessary for convenience or fairness as required by 28 U.S.C. §1404(a).

The Government's motion presents this issue for review:

This is a record-review case brought under the Administrative Procedures Act challenging a rule finalized in Washington, D.C., designating Plaintiffs' land as critical habitat for the endangered fairy shrimp. The rule arises out of litigation in the Central District of California. There are no witnesses, and Defendants and counsel for all parties are located here. The administrative record will be filed digitally. Should this case nevertheless be transferred to the Southern District of California?

The Government's argues that this case should be transferred to the Southern District of California because "a substantial part of the events or omissions" giving rise to

Otay Mesa Plaintiffs' claims arose in San Diego; a transfer "would serve the convenience of the parties"; and, the "impacts" of the agency actions are "specific" to San Diego.[1]

The facts of this case do not, however, support the Government's arguments for transfer. This case seeks a backward-looking review of the administrative rulemaking process that is complete and that has resulted in a final decision. The court will decide this case on an electronic administrative record, on the basis of federal law.  This case involves no State or local laws. There will also be no witnesses in this case. And, although the subject property is located in San Diego, the land is privately owned and is not accessible to the public.

As the Government also concedes, "[t]he Federal Defendants have offices within the District of Columbia and the final rule was reviewed and approved by officials for the Service and the Department of the Interior Solicitor's Offices in the District of Columbia . . . . [T]he connection with the District of Columbia is certainly enough to make it a proper venue . . ."[2]  All Defendants reside in the District, and the Intervenor-Applicant is a national environmental group with offices in Washington, D.C., Tucson, AZ, Phoenix, AZ, Prescott, AZ, San Francisco, CA, Los Angeles, CA, Joshua Tree, CA, San Diego, CA, Silver City, NM, Portland, OR, Bend, OR, and Richmond, VT.[3]  Counsel for all parties are located in Washington, D.C.

The lawsuit that gave rise to the challenged rule was brought by Natural Resources Defense Council and the National Association of Home Builders (among others), both national organizations headquartered in Washington, D.C., and was not

---

[1] Fed. Defs. Mot. to Transfer Venue at 1-2.
[2] *Id.* at 9.
[3] Center for Biological Diversity Website, Contact Us, *available at* http://www.biologicaldiversity.org/about/contact/index.html.

litigated in the Southern District of California.[4]  National environmental groups, as well as several departments of the Federal Government filed written comments on the challenged rule.[5]

In short, the Government states no compelling reasons to override Otay Mesa Plaintiffs' choice of venue and transfer this case to the Southern District of California.

**Factual Background**

In 1997, the Fish and Wildlife Service (FWS) added the San Diego fairy shrimp (*Branchinecta sandiegonensis*) to the list of endangered species,[6] and in 2000 the FWS designated about 4,000 acres in Orange and San Diego counties in California as critical habitat for the species.[7]  That designation did not include any of Otay Mesa Plaintiffs' land.  That rule was challenged by NRDC in District Court for the Central District of California before Hon. Stephen V. Wilson, who granted the FWS' request for voluntary remand for further rulemaking in light of a Tenth Circuit decision[8] concerning the economic impact analysis required by ESA.[9]

On remand, in 2003 the FWS published a new proposed rule designating about 6,000 acres as fairy shrimp habitat,[10] including (for the first time) about 143 acres of Otay Mesa Plaintiffs' land.  Otay Mesa Plaintiffs then retained an expert in San Diego fairy shrimp to survey their land, but he found no fairy shrimp, no vernal pools, and no

---

[4] *Natural Resources Defense Council v. United States  Dept. of the Interior*, 275 F.Supp.2d 1136 (C.D. Cal. 2002).

[5] *See* Ex. 1 (FWS Public Comment Index regarding Proposed Rule to Designate Critical Habitat for the San Diego Fairy Shrimp).

[6] Determination of Endangered Status for the San Diego Fairy Shrimp, 62 Fed. Reg. 4925 (Feb. 3, 1997).

[7] Final Determination of Critical Habitat for the San Diego Fairy Shrimp, 65 Fed. Reg. 63438 (Oct. 23, 2000).

[8] *New Mexico Cattle Growers Association v. United States Fish and Wildlife Service,* 248 F.3d 1277 (10th Cir. 2001).

[9] *NRDC v. United States  Dept of the Interior*, 275 F.Supp.2d at 1156.

[10] Designation of Critical Habitat for the San Diego Fairy Shrimp, 68 Fed. Reg. 19888 (Apr. 22, 2003).

habitat on the subject property.[11]  In their comment on the proposed rule, Otay Mesa

Plaintiffs therefore reported to FWS that its mapping of critical habitat to include their

land was "flawed and/or inaccurate."[12]

Numerous national groups, including Natural Resources Defense Council, Sierra

Club, Defenders of Wildlife, National Wildlife Federation, Center for Biological

Diversity, and Citizens Against Recreational Eviction USA, as well as the Marine Corps,

Departments of the Navy and Army, and the United States Forest Service, filed written

comments on the proposed rule.[13]

By 2007, FWS had not yet finalized the rule, so the plaintiffs in the NRDC case

returned to Judge Wilson to ask the court to order FWS to complete its rulemaking.  FWS

did so on December 12, 2007, designating about 4,000 acres, including a portion of Otay

Mesa Plaintiffs' land, as fairy shrimp habitat.[14]

Otay Mesa Plaintiffs' property is located along the United States-Mexican border

in San Diego County, east of the city of San Diego, in a rugged and hilly coastal-mesa

area, lying west of the foothills of the San Ysidro Mountains.  Most of the area is

accessible only in heavy-duty utility vehicles or on horseback.[15]  The subject property is

privately owned, unimproved but zoned for light industrial use.  Otay Mesa Plaintiffs

together own approximately 274.55 acres, approximately 143 acres of which have been

designated by the FWS as habitat for the San Diego fairy shrimp.  These 143 acres are

included in a 391-acre area that the FWS refers to as Subunit 5D, a parcel designated by

---

[11] Wick Decl. at ¶7 (attached as Ex.2).  This declaration was originally filed as an attachment to Pls.
Opposition to the Motion to Intervene on June 9, 2008.
[12] *Id.* at ¶8.
[13] *See* Ex. 1  (FWS Public Comment Index regarding Proposed Rule to Designate Critical Habitat for the
San Diego Fairy Shrimp).
[14] Designation of Critical Habitat for the San Diego Fairy Shrimp, 72 Fed. Reg. 70648 (Dec. 12, 2007).
[15] Wick Decl. at ¶5.

the FWS as fairy shrimp habitat.[16] The subject property is not accessible by public

roads.[17]

**Procedural Background**

The Otay Mesa Plaintiffs filed their complaint in this case on March 3, 2008. The

Government Answered on May 2, 2008.  The parties filed their Meet and Confer

statement on June 16, 2008. The Center for Biological Diversity filed a motion to

intervene on May 20, 2008.  Briefing on that motion is complete. The Government filed a

motion to transfer venue on June 2, 2008.

**Argument**

### I.      Venue Is Appropriate in this Court

There is no question that venue for this Administrative Procedures Act (APA)

case is properly set in the District of Columbia.  Venue is appropriate in any district

where "(1) a defendant in the action resides, (2) a substantial part of the events or

omissions giving rise to the claim occurred."[18]  As the Government states, "[t]he Federal

Defendants have offices within the District of Columbia and the final rule was reviewed

and approved by officials for the Service and the Department of the Interior Solicitor's

Offices in the District of Columbia . . . . [T]he connection with the District of Columbia

is certainly enough to make it a proper venue . . . ."[19]

### II.     The Government Has Failed to Sustain Its Burden to Establish that this Case Should Be Transferred

Even if venue is proper, the court may transfer the case to another district if the

requirements of 28 U.S.C. §1404(a) are met.  As the Supreme Court has noted, those

---

[16] *See* Wick Decl., Map of Subject Property, attached to Decl. as Ex. 1.
[17] Wick Decl. at ¶5.
[18] 28 U.S.C.A. §1391(e).
[19] Fed. Defs. Mot. to Transfer Venue at 9.

requirements focus on the convenience of witnesses and parties, and the interests of

justice

> for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action in any other district or division where it might have been brought." When a genuine choice of venue exists, the decision to transfer must be made "according to an 'individualized, case-by-case consideration of convenience and fairness.'"[20]

In The *Wilderness Society v. Babbitt*, the court divided the factors

relevant in a transfer motion into private and public interest

considerations:

> The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . ., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

> The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.[21]

The moving party bears the burden of establishing that these factors support

transferring the case to another forum.[22] In this case, the Government has not met its

burden of establishing that this case should be transferred.

**A. Private Interest Considerations**

> **1. The Court Should Defer to the Plaintiffs' Choice of Forum in this Case**

---

[20] *Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988).
[21] 104 F.Supp.2d 10, 12 (D.D.C. 2000).
[22] *Southern Utah Wilderness Alliance v. Norton,* 315 F.Supp.2d 82, 86 (D.D.C. 2004).

The starting point for analysis of a motion to transfer is the deference afforded the Plaintiffs' choice of venue:

> It is settled that a case should not be transferred "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." Absent specific facts that would cause a district court to question plaintiffs' choice of forum, plaintiffs' choice is afforded substantial deference.[23]

Although a plaintiff's choice of forum is entitled to less deference where "that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter," that is not this case. [24] All of the Defendants reside in this District, and "the final rule was reviewed and approved by officials for the Service and the Department of the Interior Solicitor's Offices . . . ."[25]

For example, in *The Wilderness Society v. Babbitt,* the court deferred to the plaintiffs' choice of forum, even though the government argued that another forum would be more appropriate and convenient:

> Plaintiffs' ties to the District of Columbia, Secretary Babbitt's direct involvement in the DOI's decision to commence oil and gas leasing in the NPR-A, and the national scope of the environmental issues plaintiffs raise defeat defendants' claim that the connection between plaintiffs, the controversy and the chosen forum is attenuated. Therefore, plaintiffs' choice of forum is entitled to substantial deference.[26]

Likewise, in *Greater Yellowstone Coalition v. Bosworth,* the court found that substantial activity in Montana relating to bison herd protection did not overcome the deference due to the plaintiff's choice of the District of Columbia as the forum to challenge Interior's denial of a grazing permit:

> While the operative facts and impact of this case are linked to this district,

---

[23] *The Wilderness Society v. Babbitt*, 104 F.Supp.2d at 12 (citations omitted).
[24] *Id.* at 12, *quoting Islamic Republic of Iran v. Boeing Co.,* 477 F.Supp. 142, 144 (D.D.C. 1979).
[25] Fed. Defs. Mot. to Transfer Venue at 9.
[26] *The Wilderness Society v. Babbitt,* 104 F.Supp.2d at 14-15 (citations omitted).

they are also linked to the District of Montana. Considering that the plaintiffs' choice of forum deserves deference, however, the plaintiffs' interests prevail.[27]

And in *Sierra Club v. Van Antwerp*, the court refused to transfer venue in an action against government defendants involving two federal statutes, the Clean Water Act and ESA, because the court concluded that the dispute was national in scope.[28]  The court noted that Congress has specifically indicated that ESA was designed to protect the "national value of endangered species":

> Based on both Congress' express declarations of the national character of the statutes at issue in this case and the fact that the issue here is whether federal agencies complied with federal law, the Court is unable to say that the localized Florida impact of this suit sufficiently weighs in favor of transfer absent other factors that would contribute toward undermining this Court's 'great deference' for the plaintiffs' chosen forum.[29]

The cases cited by the Government do not support overruling Otay Mesa Plaintiffs' choice of forum in this case. In *National Wildlife Federation v. Harvey*, the court transferred the case because the plaintiff failed to provide any evidence that the agency's disputed decisions were made in the District of Columbia,[30] and because this challenge to the Corps' operation schedule for Lake Okeechobee affected the entire watershed of southern Florida:

> The disputed actions of the Corps have a direct and substantial impact on the residents and wildlife of Southern Florida. Lake Okeechobee and the snail kite population are located in Southern Florida, and "[t]he Lake Okeechobee schedule affects the St. Lucie and Caloosahatchee River estuaries where the lake discharges to tide to the East and West, urban drinking water supply, irrigation for agricultural canals, recharge of wellfields, habitat within and surrounding the lake, sportfishing and commercial fisheries, tourism, wading bird breeding and foraging, resident

---

[27] 180 F.Supp.2d 124, 129 (D.D.C. 2001).
[28] *Sierra Club v. Van Antwerp*, 523 F.Supp.2d 5, 13-14 (D.D.C. 2007).
[29] *Id. citing* 16 U.S.C. §1531(a).
[30] 437 F.Supp.2d 42, 47 (D.D.C. 2006).

and migratory waterfowl, and endangered species as well as water available to the Everglades . . . ."[31]

In *Trout Unlimited v. United States Dept. of Agriculture,* the court transferred the case from the District of Columbia because the decision-making process occurred in Colorado, and the case involved issues of Colorado water and property law best decided by a local court[32]:

> In *Trout Unlimited,* plaintiffs objected to the Forest Service's decision granting a private company an easement to operate the Long Draw Reservoir, a water supply for the people of Colorado. The decisions at issue in *Trout Unlimited* were made entirely by Forest Service personnel in Colorado, and the dispute included possible state law claims which a federal court in Colorado would be better able to adjudicate. There was no argument that the disputed easement decision was of national significance or involved a national resource.[33]

In *Hawksbill Sea Turtle v. FEMA*, a case involving construction of a condominium building on St.Thomas, the court transferred the case from the Virgin Islands because the court concluded that a fair trial could not be had in the Virgin Islands.[34]  That case involved a trial in which Virgin Island residents would be required to testify:

> The convenience of the parties and witnesses strongly favors transfer to the District of the Virgin Islands. Every one of the Plaintiffs, and Plaintiffs' lead counsel in this matter, lives on St. Thomas, Virgin Islands, and, as they allege in their Complaint, they are "property owners, residents of St. Thomas . . . and a condominium association made up of unit owners." All of Plaintiffs' witnesses in the earlier trial were located, if not in St. Thomas, at least much closer to the Virgin Islands than to the District of Columbia. And that will presumably be the situation in this case.[35]

In contrast, as the government admits, in a record review case like this one the

---

[31] *Id.* at 47 (citations omitted).
[32] 944 F.Supp. 13, 18 (D.D.C. 1996).
[33] *The Wilderness Society v. Babbitt*, 104 F.Supp.2d at 17.
[34] 939 F.Supp. 1 (D.D.C. 1996).
[35] *Id.* at 3 (citation omitted).

convenience of witnesses is not a factor at all, since there is neither discovery nor testimony at trial:

> [T]here is unlikely to be any discovery or trial in this case seeking judicial review of agency action on the agency's administrative record, since challenges of administrative actions, pursuant to Administrative Procedure Act review, are resolved by cross-motions for summary judgment. For these same reasons, the convenience of witnesses is not a relevant consideration.[36]

Accordingly, the principle of deference to Otay Mesa Plaintiffs' choice of forum weighs against transfer.

### 2. The Southern District of California Is Not the Court From Which the Challenged Rule Arose

The second private interest factor examines the forum chosen by the Defendant. Here, the Government has not chosen to seek transfer of this case to Hon. Stephen V. Wilson, in the Central District of California even though that is the court which decided the case which gave rise to the challenged rule. In *NRDC v. United States Dept of the Interior*, Judge Wilson granted the government's request for voluntary remand of its 2000 rule designating habitat for fairy shrimp and gnatcatcher:

> The NRDC opposes the voluntary remand on grounds that New Mexico Cattle Growers was wrongly decided. Although the plaintiff is correct that the Ninth Circuit has not directly spoken on the proper scope or method of the economic impact analysis in 16 U.S.C. § 1533(b)(2), the Court finds the analysis in New Mexico Cattle Growers persuasive. Accordingly, the Court grants the motion for voluntary remand in order for the Service to reconsider both of the gnatcatcher and fairy shrimp critical habitat designations challenged in this and the related actions.[37]

As FWS states, when the new habitat designation had not materialized by 2007, the plaintiffs returned to Judge Wilson's court seeking an order compelling FWS to issue the challenged rule, which it finally did on December 11, 2007:

---

[36] Fed. Defs. Mot. to Transfer Venue at 11.
[37] *NRDC v. United States Dept of the Interior*, 275 F.Supp.2d at 1141-1142.

On February 8, 2007, a motion was filed by the Plaintiffs requesting the Court to direct us to finalize the revised critical habitat designation for the San Diego fairy shrimp. We reached an agreement with the Plaintiffs whereby a revised final designation would be completed on or before November 1, 2007.[38]

The Government's election to seek transfer to the Southern District rather than to Judge Wilson may be because the Central District would not have been a proper forum in the first instance, since the property and the parties are not located there.  That is why Otay Mesa Plaintiffs did not file in the Central District.   Under 28 U.S.C. §1404(a), a case may be transferred only to another "district or division where [the case] might have been brought."

The Government does cite three lawsuits concerning the fairy shrimp which were brought in the Southern District of California, but none of those cases dealt with whether there was evidence of fairy shrimp or vernal pools on the subject property.  *Southwest Center for Biological Diversity v. Babbitt,* was a "deadline" suit to require the FWS to act on the petition to list the fairy shrimp [and other species] as endangered.[39]  Likewise, *Southwest Center for Biological Diversity v. Berg*, was another deadline suit to compel FWS to designate critical habitat within the 12 months allowed by law.[40]  Finally, *Southwest Center for Biological Diversity v. Bartel,* was a citizens' suit by 14 environmental groups relating to a massive permitting process involving 85 endangered species on 543,243 acres, in which the court enjoined actions to protect seven vernal pool species (including the San Diego fairy shrimp).[41]  None of these cases had anything to do

---

[38] Designation of Critical Habitat for the San Diego Fairy Shrimp, 68 Fed. Reg. 19888 (Apr. 22, 2003).
[39] Civ. No. 96-1170 (S.D. Cal. filed June 27, 1996).
[40] Civ. No. 98-1866 (S.D. Cal. filed Oct. 14, 1998).
[41] 470 F.Supp2d 1118 (S.D. Cal. 2006)

with the issue presented for review in this case—rule-making designating the subject property as fairy shrimp habitat.

Thus, that the order of remand and continuing supervision of the rule-making did not occur in the Southern District of California weighs against the Government's choice of forum.

### 3. The Claim Did Not Arise Elsewhere

The Government's concession that approval of the rule-making occurred in Washington, and not in San Diego, also weighs against its motion to transfer.[42]  Although staff in San Diego may have worked on the rule, it did not become ripe for adjudication under the APA until the rule-making became final here in Washington, D.C.[43]  Otay Mesa Plaintiffs had no cause of action until the rule was signed and promulgated by the appropriate officials, and those officials are named in this suit and are located in Washington, D.C., not San Diego.  Since the rule was finalized and promulgated in Washington, D.C., and not San Diego, the cause of action arose here and weighs heavily against transfer.

### 4. The Convenience of the Parties Weighs Against Transfer

The majority of the work in a record review case like this is done by counsel, private parties and government officials in their own offices, and documents are transferred and filed electronically.  There are no depositions, site inspections, testimony or trial for the parties to attend, and no witnesses at all.  Otay Mesa Plaintiffs obviously chose this forum because it was more convenient for them, and the Government has not established that the forum presents any particular hardship for Defendants.

---

[42] Fed. Defs. Mot. to Transfer Venue at 11.
[43] *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149-151 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99 (1977).

Here, the Government cannot establish any particular hardship in litigating this case in the District of Columbia, and thus the convenience of parties factor weighs against transfer.  As *The Wilderness Society* court said:

> While it would be arguably more convenient for defendants to litigate this suit in Alaska, the defendants have not established any particular hardship in litigating this suit in the District of Columbia, beyond transporting a large administrative record. Defendants are currently represented by Department of Justice counsel in the Environment & Natural Resources Division. Moreover, plaintiffs note that both the State of Alaska and the ASRC (the two intervenors in this case) have both litigated in the District of Columbia before with some frequency.  Accordingly, this factor does not weigh in favor of transfer.[44]

### 5.  The Government Concedes that Convenience of Witnesses Is Not a Factor in this Case

The convenience of witnesses factor also weighs against transfer, since there are no witnesses in this record review case.  As *The Wilderness Society* court stated:

> As the defendants note, "judicial review is generally limited to the administrative record that was before DOI at the time that it rendered the challenged decision."  While it is possible that upon a motion for a preliminary injunction or temporary restraining order this Court may allow witnesses to testify, it is more likely that there will be no witnesses at all in this matter. Accordingly, this factor does not favor transfer.[45]

Here the Government agrees that in a record review case like this one the convenience of witnesses is not a factor at all, since there is neither discovery nor trial:

> [T]here is unlikely to be any discovery or trial in this case seeking judicial review of agency action on the agency's administrative record, since challenges of administrative actions, pursuant to Administrative Procedure Act review, are resolved by cross-motions for summary judgment.  For these same reasons, the convenience of witnesses is not a relevant consideration.[46]

---

[44] *The Wilderness Society v. Babbitt*, 104 F.Supp.2d at 15 (citations omitted).
[45] 104 F.Supp.2d at 15 (citations omitted).
[46] Fed. Defs. Mot. to Transfer Venue at 11 (citations omitted).

**6.  Ease of Access to Sources of Proof Is Not a Factor in this Record Review Case, and Thus Weighs Against Transfer**

At least one court has concluded that in a case based solely upon the administrative record "access to proof [is] irrelevant to the issue of transfer of venue."[47] Not only is this a record-review case to be decided on summary judgment, but the record and the pleadings are filed electronically, so where the record is physically located is irrelevant.  Although in pre-electronic filing cases the location of the record might have been considered, today administrative records are scanned, and then reviewed and prepared for filing by agency counsel (who are not located in the Southern District of California) then filed with the Court by counsel of record (who is located in Washington, D.C.).

Transfer of this case to San Diego will not make the preparation and filing of the administrative record—particularly the review by counsel—any easier.  Once it is scanned, the record can as easily be filed in Washington as in San Diego.

Since no one will be traveling to Carlsbad, California to examine the original paper record, this factor does not weigh in favor of transfer.

**B.  Public Interest Considerations**

**1.  The Southern District of California Has no Greater Familiarity with Governing Law in this Case**

The law governing this case is the rule of record review that authorizes a court to "set aside agency action, findings, and conclusion found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[48] The Southern District of California has no greater familiarity with APA review than does this court; in fact, given

---

[47] *Sierra Club v. Van Antwerp*, 523 F.Supp.2d 5, 12 (D.D.C. 2007).
[48] 5 U.S.C. § 706 *quoted in Bennett v. Spear,* 520 U.S. 154, 174 (1997).

the predominance of the federal government in Washington, it is likely that this Court has the edge on record review.

But where State law is implicated, this factor could weigh in favor of transfer. In *Trout Unlimited v. U.S. Dept. of Agriculture*, for example, the court found significant the fact that Colorado state law might govern the water and easement rights, supporting transfer of the case to Colorado.[49]

This case involves the straightforward question of Federal law: is there evidence in the record to support designation of Otay Mesa Plaintiffs' property as critical habitat for the fairy shrimp? The Southern District of California is in no better position than this Court to judge that issue, and thus transfer is not supported by this factor.

### 2. The Government Provides No Argument Base on Congestion of the Courts

The Government provides no suggestion that the Southern District of California is more or less congested than this Court, and thus provides no basis for transferring the case based on this factor.

### 3. This Is Not a Local Controversy To Be Decided Locally

Although a dispute involving the local water supply[50] or construction of a beach condominium project[51] are local because they directly affect the lives of those in the community where the project is to be built, this is not such a case. The improperly designated fairy shrimp habitat at issue in this case is private land which is not accessible by the public, and there is no construction project currently planned for the property. The

---

[49] 944 F.Supp. at 19.
[50] *See National Wildlife Federation v. Harvey*, 437 F.Supp.2d 42 (D.D.C. 2006); *Sierra Club v. Van Antwerp*, 523 F.Supp.2d 5 (D.D.C. 2007).
[51] *Hawksbill Sea Turtle v. FEMA*, 939 F.Supp. 1 (D.D.C. 1996).

local community has no involvement in, and will not be affected by, the outcome of this case, which involves solely the Otay Mesa Plaintiffs and the Government.

In *National Wildlife Federation v. Harvey*, the court set forth the test for determining if the dispute is "local" in nature:

> [W]here the challenged decision was made, whether the decision directly affected the citizens of the transferee state, the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes, whether the controversy involved issues of state law, whether the controversy has some national significance, and whether there was personal involvement by a DC official.[52]

The designation of fairy shrimp habitat was not a local issue in San Diego. The final rule designating the habitat grew out of litigation in federal court in Los Angeles, not San Diego, and involved national organizations. The lawsuit was handled by counsel none of whom were in the Southern District of California. The final rule implemented federal law, reflecting a national purpose of ensuring that endangered species be protected. The decision to include the subject property within the habitat designation included officials in the Interior Department's Solicitor's Office and the FWS, located in Washington, D.C., and national environmental groups and the National Association of Homebuilders, all of which are based in Washington, D.C. participated in the habitat designation lawsuit and later in the rulemaking.

Here, only the parties will be impacted by a decision in this case: the Otay Mesa Plaintiffs, who have chosen this forum, and the agency (FWS), which is charged with enforcing the ESA and complying with the APA. There are no State or local legal issues in this case, and there will be no "local impact" on the community members of the Southern District of California as that test is normally understood in challenges to venue.

---

[52] 437 F.Supp.2d at 49.

For example, in *National Wildlife Federation,* a case relied on by the Government in support of its motion, the dispute would have affected the local drinking water supply, availability of irrigation water for agricultural canals, recharge of wellfields, sport fishing, commercial fisheries, and tourism.[53]  The will be no such impacts resulting from this lawsuit.

Here, as was the case in *Concerned Rosebud Area Citizens v. Babbitt,* the sole issue in this case is whether the agency defendant has complied with federal law to be determined solely on the basis of the administrative record.[54] Therefore, the court refused to transfer the case to another venue:

> [A] reading of the complaint demonstrates that the lease-validity issue, which the Government concedes must be decided on the record alone, is the issue for which injunctive relief is sought. Concerned Citizens seeks a series of declarations that the Government has violated a number of provisions of law followed by injunctive relief suspending the lease approval.  . . . . However styled, the parties agreed that the basis for granting relief must be found only in the administrative record. . . . Plaintiffs seeks a backward-looking review of an administrative process that is complete and has resulted in a final decision . . . .[55]

**Conclusion**

For all of these reasons, the Otay Mesa Plaintiffs oppose the Government's motion to transfer this case.

---

[53] 437 F.Supp.2d at 47.
[54] 34 F.Supp.2d 775 (D.D.C. 1999).
[55] *Id.* at 776.

Respectfully Submitted,


/s/Nancie G. Marzulla_____
Nancie G. Marzulla, D.C. Bar No. 400985
Roger J. Marzulla, D.C. Bar No. 394907
Marzulla Law
1350 Connecticut Avenue, NW
Suite 410
Washington, DC  20036
(202) 822-6760
(202) 822-6774 (facsimile)

June 30, 2008                    Counsel for Plaintiffs

Exhibit 1

Case No. 1:08-cv-00383-(RMC)

## U. S. Fish and Wildlife Service
## Public Comments Received on the
## Proposed Rule to Designate Critical Habitat
## for the San Diego Fairy Shrimp

| Doc. Num. | Date | Doc. Type | Comment Received From |
|---|---|---|---|
| **2003 Public Comments** | | | |
| 1 | 04/24/03 | Email | Jay Berman |
| 2 | 04/23/04 | Email | Richard J. Durette |
| 3 | 04/23/03 | Email | David Noland |
| 4 | 04/28/04 | Email | R.W. Van DeWeerd |
| 5 | 04/29/03 | Email | Don McKinney |
| 6 | 04/30/03 | Email | Stan Meager |
| 7 | 04/23/03 | Email | Melba Bishop |
| 8 | 05/05/03 | Email | B. Sachau |
| 9 | 06/13/03 | Letter | Deborah Jones |
| 10 | 06/13/03 | Letter | Theresa Acerro |
| 11 | 06/20/03 | Letter | Carrie Schneider |
| 12 | 06/08/03 | Email | Patricia J. Mitchell |
| 13 | 06/10/03 | Letter | McLane Downing |
| 14 | 05/27/03 | Letter | Rick Landavazo |
| 15 | 06/12/03 | Letter | Rick Landavazo |
| 16 | 06/19/03 | Letter | Callie Mack |
| 17 | 06/17/03 | Letter | Laura Emerick |
| 18 | 06/16/03 | Letter | Nuri Pierce |
| 19 | 06/16/03 | Letter | Linda Pardy |
| 24 | 06/23/03 | Email | Ellen T. Bauder, PhD (San Diego State University) |
| 25 | 05/27/03 | Letter | Donald J. McGraw, PhD (University of San Diego) |
| 26 | 06/23/03 | Email | David Hogan (Center for Biological Diversity) |

| Doc. Num. | Date | Doc. Type | Comment Received From |
|---|---|---|---|

| 27 | 06/23/03 | Letter | Robert D. Thornton (Nossaman, Guthner, Knox & Elliott) |
| 28 | 06/23/03 | Fax | Andrew K. Hartzell (Hewitt & O'Neil) |
| 29 | 06/03/03 | Letter | Holly E. Cheong (City of San Diego) |
| 30 | 06/23/03 | Letter | Robert R. Copper (County of San Diego) |
| 31 | 06/24/03 | Letter | Marilyn R.F. Ponseggi (City of Chula Vista) |
| 32 | 06/2/03 | Fax | Stan Norquist (USMC) |
| 33 | 06/20/03 | Letter | M. Todd Smith (Department of the Army)_ |
| 34 | 06/23/03 | Fax | A. L. Whittemore (Department of the Navy) |
| 35 | 04/23/03 | Email | Chris Vargas |
| 36 | 04/28/04 | Letter | Candace Ricks-Oathout (Citizens Against Recreational Eviction) |
| 37 | 06/20/03 | Email | Mary H. Clarke (Sierra Club) |
| 38 | 06/05/03 | Letter | Stephen C. Torbit Ph.D. (National Wildlife Federation) |
| 39 | 06/09/03 | Letter | Cynthia Wilkerson (Defenders of Wildlife) |
| 40 | 06/16/03 | Letter | Peter H. St. Clair (California Native Plant Society) |
| 41 | 06/10/03 | Letter | Van K. Collinsworth (Preserve Wild Santee) |
| 42 | 06/06/03 | Letter | Cindy S. Greenwald (Gladstein & Associates) |
| 43 | 04/29/04 | Email | Vincent van den Brink (Van Den Brink & Associates) |
| 44 | 06/23/03 | Fax | Dave Gatzke (McMillin Land Development) |
| 45 | 06/23/03 | Fax | Dave Gatzke (McMillin Land Development) |
| **Peer Review Comments 2003** | | | |
| 20 | 05/18/03 | Letter | Mary Schug Belk (Belk Consulting) |
| 21 | 06/16/03 | Email | Andrew J. Bohonak (San Diego State University) |
| 22 | 06/20/03 | Fax | Marie Simovich (University of San Diego) |

| Doc. Num. | Date | Doc. Type | Comment Received From |
|---|---|---|---|
| 23 | 06/23/03 | Letter | Bonnie J. Ripley, PhD(Branchiopod Research Group) |
| **Public Comments 2004** | | | |
| 46 | 04/15/04 | Email | JDeMund |
| 47 | 04/29/04 | Letter | Lowell Grimaud |
| 48 | 04/29/04 | Letter | Lear Pearce |
| 49 | 05/10/04 | Letter | Donald E. Haines (SDGE) |
| 50 | 05/10/04 | Email | Mary Anne Pentis |
| 51 | 05/10/04 | Fax | Robert R. Copper (County of San Diego) |
| 52 | 05/10/04 | Fax | Richard Broming (Rancho Mission Viejo) |
| 53 | 05/10/04 | Fax | Mark W. Weston (Helix Water District) |
| 54 | 05/10/04 | Fax | Dennis Bostad (Sweetwater Authority) |
| 55 | 05/10/04 | Fax | August A. Caires (Padre Dam) |
| 56 | 05/10/04 | Letter | Robert D. Thornton (Nossaman, Guthner, Knox & Elliott) |
| 57 | 05/10/04 | Letter | Ronald D. Rempel (California Department of Fish & Game) |
| **Public Hearing Transcripts 2004** | | | |
| 58 | 04/29/04 | Transcripts | USFWS - Public Hearings- Transcript 1:00 PM |
| 59 | 04/29/04 | Transcripts | USFWS - Public Hearings- Transcript 6:00 PM |

3

## U.S. FISH & WILDLIFE SERVICE
## PUBLIC COMMENTS RECEIVED ON THE
## PROPOSED RULE TO DESIGNATE CRITICAL HABITAT
## FOR THE SAN DIEGO FAIRY SHRIMP/CALIFORNIA GNATCATCHER

### April 3, to May 3, 2007

| DOCUMENT NUMBER | DATE RECEIVED | DOCUMENT TYPE | COMMENT RECEIVED FROM | SPECIES | |
|---|---|---|---|---|---|
| | | | | CAGN | SDFS |
| 1 | April 16, 2007 | Letter | NRDC James M. Birkeland | XX | XX |
| 2 | April 23, 2007 | Letter | Net//David Wick | | XX |
| 3 | May 1, 2007 | Letter | United States Marine Corps William Moog | XX | XX |
| 4 | May 2, 2007 | E-mail | County of San Diego Robert R. Copper | XX | |
| 5 | May 2, 2007 May 2, 2007 May 2, 2007 | Letter E-Mail Facsimile | United States Marine Corps J.B. Seaton | XX | XX |
| 6 | May 3, 2007 | E-Mail | Coalition for Habitat Conservation Laer Pearce | XX | |
| 7 | May 3, 2007 May 3, 2007 May 7, 2007 | E-Mail Facsimile Letter | Department of the Navy Peter A. Kennedy | XX | |
| 8 | May 3, 2007 | Letter | Michael R. Land | XX | XX |
| 9 | May 3, 2007 | Letter | Newhall/Land Steven D. Zimmer | XX | |
| 10 | May 3, 2007 May 3, 2007 | Letter With Exhibits E-Mail | Hewitt & O'Neil Andrew Hartzell | XX | |
| 11 | May 3, 2007 May 3, 2007 | Letter E-Mail | Hewitt & O'Neil Hugh Hewitt | XX | XX |
| 12 | May 3, 2007 | E-Mail | Alliance for Habitat Conservation Craig Benedetto | XX | |

## U.S. FISH & WILDLIFE SERVICE
## PUBLIC COMMENTS RECEIVED ON THE
## PROPOSED RULE TO DESIGNATE CRITICAL HABITAT
## FOR THE SAN DIEGO FAIRY SHRIMP/CALIFORNIA GNATCATCHER

### April 3, to May 3, 2007

| DOCUMENT NUMBER | DATE RECEIVED | DOCUMENT TYPE | COMMENT RECEIVED FROM | SPECIES | |
|---|---|---|---|---|---|
| | | | | CAGN | SDFS |
| 13 | May 3, 2007<br>May 3, 2007<br>May 4, 2007 | E-Mail<br>Facsimile<br>Letter | Santa Margarita Water District Daniel R. Ferons | XX | XX |
| 14 | May 3, 2007<br>May 3, 2007<br>May 4, 2007 | Facsimile<br>E-Mail<br>Letter | Rancho Mission Viejo Eisenberg | XX | XX |
| 15 | May 3, 2007<br><br>May 4, 2007 | E-mail<br><br>Letter | Nossaman, Guthner, Knox & Elliott, LLP Sue Meyer | XX | XX |
| 16 | May 3, 2007<br><br>May 3, 2007<br><br>May 8, 2007 | E-Mail<br><br>Facsimile<br><br>Letter | EOMPOA East Otay Mesa Property Owners Association Tom Story Rob Hixson | | XX |
| 17 | May 3, 2007<br>May 3, 2007<br>May 8, 2007 | Facsimile<br>E-Mail<br>Letter | NRDC James M. Birkeland | XX | XX |
| 18 | May 4, 2007<br>May 8, 2007 | Facsimile<br>Letter | City of Santee Melanie Kush | XX | XX |
| 19 | May 4, 2007 | Letter | Otay Crossings Commerce Park, LLC. Judd Halenza | | XX |
| 20 | May 8, 2007 | Letter | Barratt Nicholas Arthur | XX | XX |
| 21 | May 8, 2007<br>May 14, 2007 | Facsimile<br>Letter | USDA Forest Service Joel D. Holtrop | XX | |
| 22 | May 21, 2007 | Letter | Santa Monica Mountains Conservancy | XX | XX |

Exhibit 2

Case No.1 :08-cv-00383-(RMC)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OTAY MESA PROPERTY L.P.,<br>a California limited partnership;<br>RANCHO VISTA DEL MAR,<br>a California corporation,<br>and OTAY INTERNATIONAL, LLC,<br>a California limited liability company,<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>THE INTERIOR,<br>UNITED STATES FISH<br>AND WILDLIFE SERVICE,<br>DIRK KEMPTHORNE, in his official<br>capacity as Secretary of the<br>Department of the Interior,<br>LYLE LAVERTY, in his official capacity<br>as Assistant Secretary for Fish, Wildlife<br>and Parks, Department of the Interior,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:08-cv-00383 |

## DECLARATION OF DAVID WICK

I, David Wick, pursuant to 28 U.S.C. § 1746, declare:

1. I am, and have been since 1992, an employee of S.D. Commercial, LLC, a California corporation, or its predecessor, a California property management company, with its principal place of business located at 5440 Morehouse Drive, Suite 4000, San Diego, California 92121. Throughout that time, I have been the person primarily responsible for the management of all of the property owned by Plaintiffs, Otay Mesa Property L.P., Rancho Vista Del Mar, and Otay International, LLC, including the land that has been designated "Critical Habitat" for the endangered fairy shrimp. I am

intimately familiar with the physical characteristics, history, topography, and development of the subject property since 1992, and I can personally testify to the facts set forth in this declaration.

2. Since 1992, I have visited the subject property, together with other properties I manage, on average about once a week in connection with my duties. The subject property consists of three parcels:

- A parcel owned by Otay Mesa Property, L.P., outlined in yellow on the map attached as Exhibit 1, approximately 56 acres of which has been designated as critical habitat for the endangered fairy shrimp;

- A parcel owned by Rancho Vista Del Mar, outlined in purple on the map attached as Exhibit 1, approximately 44 acres of which has been designated as critical habitat for the endangered fairy shrimp;

- A parcel owned by Otay International, LLC, outline in brown on the map attached as Exhibit 1, approximately 43 acres of which has been designated as critical habitat for the endangered fairy shrimp.

3. The map attached as Exhibit 1 accurately depicts these parcels, the area erroneously designated as fairy shrimp habitat, and the surrounding roads and other features. The area designated as Critical Habitat is outlined and labeled in red. The parcel of land owned by Plaintiff Otay Mesa Property, L.P., approximately 56 acres of which lie within the boundary of the Critical Habitat, is outlined in yellow. The parcels of land owned by Plaintiff Rancho Vista Del Mar, approximately 44 acres of which lie within the boundary of the Critical Habitat, is outlined in purple. The parcels of land owned by Plaintiff Otay International LLC, approximately 43 acres of which lie within

2

the boundary of the Critical Habitat, is outlined in brown.  One arrow on the map

measures the distance from the intersection of two local public roads, Alta Road and Otay

Mesa Road, and the nearest concurrence of Plaintiffs' private property and the Critical

Habitat; a distance of approximately 4,600 feet.  A second arrow on the map measures

the distance between a "prominent vista" along the Otay Truck Trail used by the Border

Patrol for surveying the area and known as the "56 Scope Site" (labeled in green on the

map) and the nearest concurrence of Plaintiffs' private property and the Critical Habitat;

a distance of approximately 4,200 feet.  The approximate path of the Otay Truck Trail is

marked by a dotted purple line found in the north-eastern corner of the map.

4.  I have read the Declaration of David Hogan dated May 12, 2008, in which he

states:

> I have traveled to Critical Habitat Unit 5D in the past and I intend to return
> to that critical habitat unit as part of my regular visits to the Otay
> Mountain Wilderness via Otay Mountain road, a.k.a. Otay Mountain truck
> trail. Portions of Critical Habitat Unit 5D are accessible via roads open to
> the public, and I often stop at a prominent vista overlooking Critical
> Habitat Unit 5D on my trips to and from the Otay Mountain Wilderness.
> My visits to the Otay Mountain Wilderness via Critical Habitat Unit 5D
> occur, approximately, on an annual basis.

5.  Mr. Hogan could not have accessed the subject property via the Otay truck

trail or any public road, as no public road provides access to it.  This area can only be

reached by heavy duty utility vehicle or horseback as there is no public road leading to it.

Plaintiffs have never given Mr. Hogan nor any other representative of the Center for

Biological Diversity ("CBD") permission to enter their land and, to the best of my

knowledge, neither Mr. Hogan nor any CBD representative has ever done so.  The only

way Mr. Hogan could access the Otay truck trail is to trespass on land owned by

Plaintiffs and managed by me.

3

6. The Otay truck trail to which Mr. Hogan refers is located approximately 1 mile from the designated area on the subject property, and not even Superman could observe fairy shrimp (if they existed on the subject property) from that distance. Moreover, the Otay truck trail is not a publicly maintained or publicly dedicated road; and is accessed via a locked gate located on private land owned by International Industrial Park, Inc., which I also manage. International Industrial Park ("IIP") has not given Mr. Hogan permission to enter its land, nor does he have a key to the locked gate. The only way Mr. Hogan could access the Otay truck trail is to trespass on land owned by IIP and managed by me.

7. In 2007, I retained an expert in fairy shrimp habitat to conduct a habitat survey of the subject property. That survey found no fairy shrimp, no vernal pools and no habitat on the subject property. Accordingly, even if he had access to the subject property, there would be nothing for Mr. Hogan to observe.

8. In reliance on this survey, on April 19, 2007, I filed with the Fish and Wildlife Service ("FWS") a comment on the proposed rule in which I pointed out that Plaintiffs land did not exhibit the characteristics of fairy shrimp habitat, and that FWS' mapping of critical habitat to include Plaintiffs' land was therefore "flawed and/or inaccurate." When the final rule was published in December 2007, designating approximately 143 acres of Plaintiffs' land as critical habitat for the fairy shrimp without explaining why, I instructed my lawyers to get to the bottom of this designation by opening discussions with FWS officials. I subsequently authorized my lawyers, at the suggestion of FWS officials, to submit a Freedom of Information Act request for all such evidence indicating the presence of fairy shrimp habitat on the subject property. (Ex. 2.) Although FWS

4

provided a CD of data, none of it demonstrated that there was habitat on the subject property. Convinced that FWS would not voluntarily review the evidence, I authorized the filing of this suit to require FWS to identify any evidence in the record supporting designation of Plaintiffs' property as fairy shrimp habitat.

I declare the foregoing to be true and correct under penalty of perjury as provided in 28 U.S.C. § 1746.

Execute this 7th day of June, 2008

David Wick

Exhibit 1

Civ. No. 1:08-cv-00383-(RMC)



Exhibit 2

Civ. No. 1:08-cv-00383-(RMC)

 Marzulla Law

1350 CONNECTICUT AVE., NW
SUITE 410
WASHINGTON, DC 20036

TEL: (202) 822-6760
FAX: (202) 822-6774
WWW.MARZULLA.COM

January 30, 2008

Ms. Judy Tetreault
FOIA Coordinator
Carlsbad Office
U.S. Fish and Wildlife Service
6010 Hidden Valley Road
Carlsbad, CA 92011

Re: Freedom of Information Act Request

Dear Ms. Tetreault:

Pursuant to the Freedom of Information Act, 5 U.S.C.A. § 552, I am requesting a copy of any report or document relating to or summarizing the results of the U.S. Fish and Wildlife Service's (FWS) designation of critical habitat for the San Diego Fairy Shrimp (branchinecta sandiegonensis) within the portion of subunit 5D (Otay Mesa) as listed in *Endangered and Threatened Wildlife and Plants; Designation of Critical Habitat for the San Diego Fairy Shrimp (Branchinecta sandiegonensis); Final Rule*, 72 Fed. Reg. 70648 (Dec. 12, 2007).

This request includes but is not limited to data from surveying biologists holding 10(A)(1)(a) permits, reports received from CalTrans regarding the specified area, and GIS maps of the specified area used in the creation of the record supporting the designation of critical habitat for San Diego Fairy Shrimp in the Final Rule issued by the FWS on December 12, 2007.

Additionally, we request copies of any and all permits, warrants, or any other documents authorizing surveyors to enter any private land for the purposes of surveying or for any other reason in connection with the record supporting the Final Rule issued by the FWS on December 12, 2007, as it pertains to the portion of subunit 5D that lays east of Alta Road.

If available, please provide these documents in electronic format (MS Excel, MS Word, or PDF), and email them to Peter Randolph, peter@marzulla.com. Should there be reasonable costs involved with the production of this request, we kindly ask that you contact our office at the phone number above first with that information and receive permission to incur the cost. Please provide a response within 20 working days, as provided by law. If you deny my request in whole or in part, please provide me detailed justification. I also request that any segregable portions that are not exempt be disclosed.

Please feel free to call me if you wish to discuss this request. Thank you for your prompt assistance in this regard.

Yours truly,

Peter D. Randolph

cc: Jim Bartel