UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Otay Mesa Property L.P.**, a California limited partnership; **Rancho Vista Del Mar**, a California corporation; and **Otay International, L.L.C.**, a California limited liability company,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**United States Department of the Interior, United States Fish and Wildlife Service, Dirk Kempthorne**, in his official capacity as Secretary of the Department of the Interior, **Lyle Laverty**, in his official capacity as Assistant Secretary for Fish, Wildlife and Parks, Department of the Interior.<br><br>　　　　　Defendants. | Case No. 1:08-cv-00383 |

**REPLY IN SUPPORT OF FEDERAL DEFENDANTS'
MOTION TO TRANSFER VENUE**

Federal Defendants respectfully file this reply in support of their motion to transfer this case to the U.S. District Court for the Southern District of California. The standards that govern this Court's decision to transfer are properly set forth in Defendants' first brief. Memorandum in Support of Federal Defendants' Motion to Transfer ("Defs' Brief") (Doc. No. 13) at 3-4. Basically, so long as the new forum is one where the case could have been brought, as is the case here, the decision to transfer is committed to the Court's sound discretion. Id.; see also Rosales v. United States, 477 F. Supp. 2d 213, 215 (D.D.C. 2007). Courts use the factors in the transfer statute, 28 U.S.C. § 1404(a) – the convenience of parties and witnesses and the interest of justice – as well as other *forum non conveniens* factors in making their decision based on the facts of a particular case.

In this case, Plaintiffs argue primarily that the District of Columbia was their chosen forum, a factor that is generally given substantial weight in transfer decisions. However, as Defendants argued in their opening brief and Plaintiffs failed to rebut, a court's deference to Plaintiffs choice of forum is diminished where, as here, the forum lacks meaningful ties or special interest in the controversy and where the forum is not the plaintiffs' home forum. Plaintiffs' other arguments – that their claim did not arise in the Southern District of California, that the convenience of the parties weighs against transfer, that Defendants' choice of forum does not support transfer, and that this is not a local controversy – are equally weak or otherwise incorrect. In the end, the factors weigh heavily in favor of transfer. Accordingly, the Court should, in its discretion, grant Defendants' motion and transfer the case to the Southern District of California.

//

The parties agree that courts balance a number of private and public interest factors in assessing a motion to transfer venue, including:

> (1) plaintiff's forum choice; (2) defendant's forum choice; (3) whether the claim arose elsewhere; (4) convenience of the parties; (5) convenience of the witnesses; (6) ease of access to the proof; (7) transferee's competence; (8) congestion of both courts; and (9) local interest in deciding local controversies at home.

Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 86 (D.D.C. 2004). Here, the factors in total weigh heavily in favor of transfer to the Southern District of California because each factor either weighs in favor of transfer or is neutral.

**1.    Private Interest Factors**

Of the first six factors listed above, which are considered private interest factors, the first four weigh in favor of transfer to the Southern District of California and the parties agree the other two are neutral.[1]

**A.    Plaintiffs' Forum Choice**

Defendants have already explained that a plaintiff's forum choice is entitled to less deference where, as here, the connection between the controversy and the chosen forum is attenuated. Defs' Brief at 8-10. In response, Plaintiffs argue that the usual deference to their forum choice should not be diminished because Defendants reside in Washington, D.C. and the challenged rule was reviewed and approved by officials in Washington, D.C. Plaintiffs' Opposition to Motion to Transfer ("Plfs' Brief") (Doc. No. 19) at 7. Plaintiffs' argument fails, however, because these ties with Washington, D.C. are attenuated, particularly when added to the fact that none of the Plaintiffs resides in the District of Columbia. Furthermore, the cases

---

[1] Since there is no real dispute as to the "convenience of the witnesses" and "ease of access to the proof" factors, Defendants will not address these factors further in this brief.

2

Plaintiffs cite in support of their argument are clearly distinguishable and Plaintiffs fail to distinguish the cases Defendants have cited.

The three cases Plaintiffs cite to support their argument that this forum has meaningful ties with the controversy are all readily distinguishable from the case here. In each of those cases, the Court emphasized the importance of the plaintiff's ties to the District of Columbia in its ultimate decision to give substantial deference to the plaintiff's choice of forum. The Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10, 14-15 (D.D.C. 2000) ("Plaintiffs also demonstrate that they have significant ties to the District of Columbia."); Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (explaining that "two of the five plaintiffs . . . have offices in the District of Columbia."); Sierra Club v. Van Antwerp, 523 F. Supp. 2d 5, 11-12 (D.D.C. 2007) ("Regardless of whether the remaining plaintiffs are entitled to a presumption in favor of the chosen forum, the Court determines that Clean Water Action's District of Columbia residency is sufficient to tip the balance in favor of this Court's strong presumption in favor of venue in this District."). That crucial factor is absent in this case, as none of the Plaintiffs reside in the District of Columbia. See Defs' Brief at 5-6, 11 (explaining that two of the Plaintiffs reside in San Diego County and the third resides in Carson City, Nevada, but has an officer with an address in San Diego). See also Rosales, 477 F. Supp. 2d at 216 ("[T]he fact that Plaintiffs chose to file their lawsuit here is entitled to little deference, if any, because they do not reside in the District of Columbia.") (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)); California Farm Bureau Fed'n v. Badgley, No. 02-2328 (RCL), 2005 WL 1532718, *3 (D.D.C. June 29, 2005) (level of deference to plaintiffs' choice of forum substantially diminished where plaintiffs did not reside in, or have substantial connection

to the District of Columbia).

In addition, the Court's decisions in both <u>Wilderness Soc'y</u> and <u>Greater Yellowstone Coalition</u> turned on the strong factual nexus between the District of Columbia and the substantial involvement of high level officials in Washington, D.C. in the dispute. In <u>Wilderness Soc'y</u>, the Court specifically noted Interior Secretary Babbitt's direct involvement in the challenged decision, that "[Secretary Babbitt] made a six-day visit to the area, and met with and was briefed by local Inupiaq Eskimo residents, government and industry officials, and scientists", and that Secretary Babbitt made public comments on his power to prevent the lease in question, and personally signed the record of decision and briefed the public in the District of Columbia. 104 F. Supp. 2d at 14. Similarly, in <u>Greater Yellowstone Coalition</u>, the Court gave weight to the plaintiffs' evidence that "high-ranking government officials in Washington, D.C. were involved in inter-agency discussions regarding the reissuance of the HBA grazing permit." 180 F. Supp. 2d at 128. In contrast, here, while Plaintiffs rely on the fact that the challenged rule was reviewed and approved by officials for the Service and the Department of the Interior's Solicitor's Office, they provide no evidence that any high level officials were substantially involved in the challenged rule. The routine processes of review and approval of agency action such as occurred in this case are simply not the sort meaningful ties that are determinative on a motion to transfer. <u>Southern Utah Wilderness Alliance</u>, 315 F. Supp. 2d at 87 ("Although extensive involvement by headquarters has, in some instances, been held to justify keeping a case in this jurisdiction, mere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C., is not determinative. ") (citations and quotations omitted). Rather, the more meaningful and relevant ties in this case are to the Southern District

4

of California, where, among other things, the Carlsbad Fish and Wildlife Office substantially developed the critical habitat designation for the San Diego fairy shrimp challenged here.

Finally, Plaintiffs have failed to distinguish the cases Defendants cited in support of their argument that there is an insufficient nexus between the controversy and this forum. Plaintiffs attempt to distinguish only three of the ten cases Defendants cite, implicitly conceding that the other seven cases support Defendants' argument that Plaintiffs' forum choice is entitled to less deference due to the attenuated connection between the forum and the controversy. Compare Defs' Brief at 7-9 with Plfs' Brief at 8-9.

Moreover, Plaintiffs' arguments on even the three cases they discuss are not persuasive. See Plfs' Brief at 8-9. Plaintiffs appear to argue that in these three cases the connection between the transferee forum and the controversy was more substantial than is the case here. However, the question is merely whether "the subject matter of the lawsuit is connected to that state." Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 17 (D.D.C. 1996). Here there is no question that the challenged critical habitat designation for the San Diego fairy shrimp is connected to San Diego since the designation has a direct and substantial impact on the residents and wildlife of San Diego, the species and its habitat are located primarily in San Diego, the land Plaintiffs allegedly own is located in San Diego, and the Carlsbad Fish and Wildlife Office, which is located in San Diego County, substantially developed the designation.

### B. Defendants' Forum Choice

Defendants have already provided numerous legitimate reasons for preferring this case be litigated in the Southern District of California. These include the following: (1) that the alleged harm to Plaintiffs from the challenged critical habitat determination is to their interest in land

5

they own in the Southern District of California; (2) that at least two of the three Plaintiffs reside in the Southern District of California; (3) that the species involved and its critical habitat is located almost entirely in the Southern District of California; and (4) that the Southern District of California has previously decided three cases involving the same species and/or its critical habitat.  Defs' Brief at 2-3, 8-10.  Plaintiffs' response is that the challenged rule arose from a case in the Central District of California, not the Southern District of California, and that the previous cases from the Southern District of California did not involve the precise issue here regarding Plaintiffs' land.  Plaintiffs' arguments are unpersuasive.

The fact that the U.S. Fish and Wildlife Service (the "Service") chose to re-propose critical habitat for the San Diego fairy shrimp as a result of litigation brought in the Central District of California is irrelevant to whether Defendants' forum choice in this litigation weighs in favor of transfer or not.  The critical habitat determination challenged by Plaintiffs here is an entirely separate agency action from that litigated over in the Central District of California.  Indeed, the litigation in Central District of California ended when the Service issued the rule challenged here, as the Service had completed the remand at that point.  Moreover, the fact that the past litigation over the San Diego fairy shrimp and/or its critical habitat in the Southern District of California has not involved the precise question of "whether there was evidence of fairy shrimp or vernal pools on the subject property" does not diminish the legitimacy of Defendants choice of the Southern District of California as a forum for this case.  Plfs' Brief at 11.

    **C.**    **Whether the Claim Arose Elsewhere**

Defendants demonstrated in their opening brief that Plaintiffs' claim in this case arose in

the Southern District of California because the land Plaintiffs allegedly own that has been designated as critical habitat for the San Diego fairy shrimp is located in the Southern District of California, and the Carlsbad Fish and Wildlife Office, also located in the Southern District of California, substantially developed the rule challenged here.  Defs' Brief at 5-6, 8-9.  Plaintiffs incorrectly argue nevertheless that their claim did not arise in the Southern District of California, but in Washington, D.C. because the challenged critical habitat determination for the San Diego fairy shrimp "was finalized and promulgated in Washington, D.C."  Plfs' Brief at 12.

In determining where a claim "arose" for the purposes of a motion to transfer venue, this Court looks to where substantive events forming the basis of the claim took place.  Securities and Exchange Comm'n v. Roberts, Civ. No. 07-407 (EGS), 2007 WL 2007504, *3 (July 10, 2007) ("As at least some of the substantive events in this case occurred in Northern California, this factor weighs in favor of transfer."); In re AT&T Access Charge Litigation, Civ. No. 05-1360 (ESH), 2005 WL 3274561, *4 (Nov. 16, 2005) ("It is therefore clear that the conduct that underlies plaintiffs' claims and caused their alleged harms occurred in New Jersey").  See also Dorman v. Thornburgh, 740 F. Supp. 875, 879-80 (D.D.C. 1990), aff'd, 955 F.2d 57 (D.C. Cir. 1992) (where the "claim arose" under 28 U.S.C. § 1391(b) should "be ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records.") (quoting Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978)).

The role played by the Carlsbad Fish and Wildlife Office in developing the critical habitat designation for the San Diego fairy shrimp can clearly be called a substantive event underlying Plaintiffs' claim, and Plaintiffs do not deny that such is the case.  Thus, even if

7

finalizing and approving the challenged rule in Washington, D.C. could also be called a substantive event, the fact that substantive events in this case occurred in San Diego County weighs in favor of transfer. Securities and Exchange Commission, 2007 WL 2007504 at *3.

### D. Convenience of the Parties

Defendants demonstrated that the convenience of the parties favors transfer to the Southern District of California because Defendants have offices in that jurisdiction, two of Plaintiffs reside in the Southern District of California and the third resides in Nevada, but has an officer in San Diego, and the property designated as critical habitat is located in the Southern District of California. Defs' Brief at 11. Plaintiffs state that they "chose this forum because it was more convenient for them," but fail to explain how so. Plfs' Brief at 12. Indeed this argument is rather curious given that none of the Plaintiffs resides in Washington, D.C. If Plaintiffs have chosen Washington, D.C. because it is a more convenient forum for Plaintiffs' counsel, this fact is not given much, if any, weight in deciding a motion to transfer. Defs' Brief at 11; see also In re Horseshoe Entertainment, 337 F.3d 429, 434 (5th Cir. 2003) ("the factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue."); Northwest Forest Res. Council v. Babbitt, No. 93-1579 JHG, 1994 WL 908586, *3 (D.D.C. Apr. 13, 1994) ("the convenience of the parties, convenience of witnesses, location of counsel, and location of books and records factors are largely irrelevant" in a record-review case). Given all of the relevant considerations, this factor favors transfer and certainly does not weigh against transfer, as Plaintiffs argue.

### 2. Public Interest Factors

The public interest factors also favor transfer to the Southern District of California. The

parties agree that both the "transferee's competence" and the "congestion of both courts" factors are neutral, and neither weigh in favor nor weigh against transfer. However, Plaintiffs dispute whether the "local interest in deciding local controversies at home" factor supports transfer, mistakenly arguing that the outcome of this case will not affect the lives of the people in the local San Diego community. Plfs' Brief at 6.

Defendants have already explained that the interests of justice will be promoted by transferring this case to the Southern District of California for resolution, because the issue of whether the land Plaintiffs allegedly own in San Diego County is designated as critical habitat for the San Diego fairy shrimp is a localized controversy in which there is local interest. Defs' Brief at 6-10. In particular, Defendants explained that the San Diego fairy shrimp exists primarily in San Diego County and entirely in Southern California, that the Carlsbad Fish and Wildlife Office had primary responsibility for designating critical habitat for the fairy shrimp, and that Plaintiffs have alleged that the designation of the land they allegedly own as critical habitat affects their ability to develop and market this land. Id.

Plaintiffs respond by arguing primarily that "[t]he designation of fairy shrimp habitat was not a local issue in San Diego" and that "only the parties will be impacted by a decision in this case." Plfs' Brief at 16. Both of Plaintiffs' conclusory statements are incorrect. To begin with, San Diego fairy shrimp and the designation of fairy shrimp habitat is covered in the San Diego newspaper, indicating the interest of the local community in these issues. A simple search of the San Diego Union-Tribune online for the words "fairy shrimp" results in 13 stories, including most recently an editorial criticizing the cost of the critical habitat designation and a story about a Service grant to the City of San Diego to facilitate conservation of fairy shrimp habitat. See

http://www.signonsandiego.com/uniontrib/20071224/news_lz1ed24top.html and

http://www.signonsandiego.com/uniontrib/20080329/news_lz1cz29short.html (visited July 7, 2008).

  Moreover, Plaintiffs' argument is disingenuous, as it fails to acknowledge the interests on both sides of the issue of whether or not they are able to "develop and market" the land they allegedly own that has been designated as critical habitat for the fairy shrimp. The interest by environmental groups in seeing that the land stays undeveloped is most obviously represented here by Intervenor-Applicants. On the other hand, from Plaintiffs' representation as to the value of the land, Complaint ¶ 23, it appears there are likely developers, construction workers, and others aside from Plaintiffs that might benefit financially if a court were to find that the Service improperly included this land in the critical habitat designation. In addition, the City of San Diego and others with property that contains San Diego fairy shrimp or its critical habitat likely have an interest in seeing that all habitat essential for the conservation of the San Diego fairy shrimp is identified in order to facilitate the species' recovery and delisting.

  Finally, Plaintiffs' citation to <u>Concerned Rosebud Area Citizens v. Babbitt</u>, 34 F. Supp. 2d 775 (D.D.C. 1999), to support their argument that the Court should refuse to transfer the case because it is a case for review on an administrative record is not helpful. Plfs' Brief at 17. In that case, the government argued "that South Dakota is a more convenient forum, primarily with respect to witnesses who may testify on the issue of injunctive relief." 34 F. Supp. 2d at 776. The Court disagreed, because it was limited to the administrative record in considering whether to grant injunctive relief. <u>Id.</u> In this case, in contrast, Federal Defendants have never argued that the Court should transfer this case for the convenience of witnesses, as all parties agree that in

this record-review case witnesses will not be necessary. See Defs' Brief at 12; Plfs' Brief at 13. Rather, Defendants maintain, among other things, that this case involves a local controversy that should be decided in the locality where the controversy arose.

In closing, for all the reasons set forth herein and in Defendants' opening memorandum, this case should be transferred to the Southern District of California.

Dated: July 9, 2008            Respectfully submitted,

RONALD J. TENPAS, Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
JEAN E. WILLIAMS, Chief

   **/s/ Meredith L. Flax**
MEREDITH L. FLAX, Trial Attorney (DCB 468016)
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7369 – Ben Franklin Station
Washington, D.C. 20044-7369
(202) 305-0404
(202) 305-0275 *[FAX]*
meredith.flax@usdoj.gov

Attorneys for Federal Defendants

**Certificate of Service**

I hereby certify that on July 9, 2008, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification of such to the attorneys of record:

| | |
|---|---|
| Nancie G. Marzulla | nancie@marzulla.com |
| Roger Joseph Marzulla | roger@marzulla.com |
| Michael Senatore | msenatore@biologicaldiversity.org |

    /s/ Meredith L. Flax
Meredith L. Flax