UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OTAY MESA PROPERTY L.P., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 08-383 (RMC) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| THE INTERIOR, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This case involves a challenge to a final critical habitat determination by the United States Fish and Wildlife Service for the San Diego fairy shrimp (*Branchinecta sandiegonensis*), an endangered species which inhabits the waters in and around San Diego County, California. The Federal Defendants move to transfer the case to the Southern District of California, asserting that the interests of justice will be served best by transferring this action. In support of their motion, the Federal Defendants observe that the agency that substantially developed the final critical habitat determination at issue is located within the Southern District of California, two of the Plaintiffs reside in the Southern District of California, and all five of the critical habitat units designated for the San Diego fairy shrimp are located in southern California, four of which are located in San Diego County. Despite the location of the property at issue, the Court finds that the arguments in favor of transfer do not outweigh the deference afforded to the Plaintiffs' choice of forum, and therefore will deny the Federal Defendants' motion to transfer this case to the United States District Court for the Southern District of California.

## I. BACKGROUND

The United States Department of the Interior ("DOI") is an agency of the Federal Government which is authorized to designate critical habitats for endangered species under Section 4 of the Endangered Species Act, 16 U.S.C. § 1533. In 1997, pursuant to this authorization, the United States Fish and Wildlife Service ("FWS"), an agency of DOI, added the San Diego fairy shrimp to the list of endangered species, *see* Determination of Endangered Status for the San Diego Fairy Shrimp, 62 Fed. Reg. 4925 (Feb. 3, 1997), and in 2000, the FWS designated approximately 4,000 acres in Orange and San Diego counties in California as critical habitat for the species, *see* Final Determination of Critical Habitat for the San Diego Fairy Shrimp, 65 Fed. Reg. 63438 (Oct. 23, 2000). Plaintiffs, Otay Mesa Property, L.P., Rancho Vista Del Mar, and Otay International, LLC, are owners of unimproved land in the Otay Mesa area of San Diego County, California. Compl. ¶¶ 1-3 [Dkt. # 1]. The 2000 final determination did not include any of Plaintiffs' land. Pls.' Opp'n to Mot. to Transfer ("Pls.' Opp'n") at 3 [Dkt. # 19].

After a challenge to the 2000 designation by the Natural Resources Defense Council in the United States District Court for the Central District of California, which FWS resolved by requesting a voluntary remand for further rulemaking, FWS published a new proposed rule designating approximately 6,000 acres as fairy shrimp habitat, *see* Designation of Critical Habitat for the San Diego Fairy Shrimp, 68 Fed. Reg. 19888 (Apr. 22, 2003), including about 143 acres of Plaintiffs' land. Pls.' Opp'n at 3. As of 2007, FWS had not issued a final rule, so the plaintiffs in the case pending before the Central District of California moved that court to order FWS to complete its rulemaking. *Id.* at 4. FWS issued its final rule on December 12, 2007, designating approximately 4,000 acres, including a portion of Plaintiffs' property, as critical habitat for the San Diego fairy

shrimp.  *See* Designation of Critical Habitat for the San Diego Fairy Shrimp, 72 Fed. Reg. 70648 (Dec. 12, 2007).

Plaintiffs' property is located along the United States-Mexican border in San Diego County, east of the city of San Diego, in a rugged and hilly coastal-mesa area, lying west of the foothills of the San Ysidro Mountains.  Pls.' Opp'n at 4.  Most of the area is accessible only in heavy-duty utility vehicles or on horseback, and is not accessible by public roads.  *Id.*, Ex. 2 (Wick Decl. ("Wick Decl.")) ¶ 5.  The portion of Plaintiffs' property that is designated as part of the critical habitat is privately owned, unimproved land, but is zoned for light industrial use.  Pls.' Opp'n at 4. The Plaintiffs together own approximately 274.55 acres, about 143 acres of which have been designated by the FWS as critical habitat for the San Diego fairy shrimp.  *Id.*  These 143 acres are included in a 391-acre area that the FWS refers to as Subunit 5D, a parcel designated by the FWS as fairy shrimp habitat.  *Id.* at 4-5.

Plaintiffs filed their Complaint on March 3, 2008, pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, seeking to declare unlawful and set aside the FWS's final rule designating the critical habitat.  The Federal Defendants filed a Motion to Transfer Venue to the United States District Court for the Southern District of California.  *See* Dkt. # 13.  They argue that the interests of justice will be best served by a transfer to that jurisdiction because the Carlsbad Fish and Wildlife Office in the Southern District of California substantially developed the final critical habitat determination at issue; all five of the critical habitat units designated for the San Diego fairy shrimp are located in southern California, one in Orange County, and the other four in San Diego County; and the property that Plaintiffs allege was included improperly in the final critical habitat determination is part of Subunit

5D, which is located in San Diego County.  Defs.' Mem. in Support of Mot. to Transfer Venue ("Defs.' Mem.") at 1-2.

## II.  LEGAL STANDARDS

Section 1404(a) of Title 28 of the United States Code authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice. . . ."  28 U.S.C.§ 1404(a).  The purpose of 28 U.S.C. § 1404(a) is "to prevent the waste of 'time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted).  Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).  Under this statute, the moving party bears the burden of establishing that transfer is proper.  *Trout Unlimited v. Dep't. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

"Transfer under section 1404(a) involves a multi-part analysis:  first, the court must determine that venue is proper in the transferor district; next, it must ensure both jurisdiction and venue will lie in the proposed transferee district; and finally, it must weigh several private and public interest factors to determine whether transfer would, indeed, be 'in the interest of justice.'" *Elemary v. Holzmann*, 533 F. Supp. 2d 144, 149 (D.D.C. 2008).  The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to

sources of proof. *Trout Unlimited*, 944 F. Supp. at 16. The public interest considerations include: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id*.

### III. ANALYSIS

While it is clear that jurisdiction and venue over this action are proper here, the Federal Defendants seek to have the case transferred to the Southern District of California. Because venue and jurisdiction over this action also lie in the Southern District of California, this Court must determine whether convenience and the interests of justice recommend transfer to that district. *See Citizen Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983). The Court concludes that the Federal Defendants have not met their burden of showing that transfer to the Southern District of California is appropriate for convenience or fairness.

The private interest factors are of limited value in this case. The convenience factors, including convenience of the parties, the witnesses, and ease of access to sources of proof, have little, if any, impact on this case. The parties agree that there is unlikely to be any discovery or trial since this case involves judicial review of agency action that is preserved in the administrative record, and the case likely will be resolved on summary judgment on the basis of that administrative record. *See* Defs.' Mem. at 11; *accord* Pls.' Opp'n at 9-10. With respect to the parties' choices of forum, the Federal Defendants argue that the Court should give little deference to the Plaintiffs' forum choice. *See* Defs.' Mem. at 8-9. While a plaintiff is given its choice of forum and "a trial judge must give considerable, but not conclusive, weight to the plaintiff's initial forum choice," *Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980), a Plaintiff's choice is entitled to less deference where

"the connection between plaintiffs, the controversy and the chosen forum is attenuated." *Citizen Advocates*, 561 F. Supp. at 1239 (citing *Pain*, 637 F.2d at 786); *see also Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).

Here, most of the Plaintiffs reside within the Southern District of California and the property at issue is located within the Southern District of California. The Federal Defendants therefore argue that the connection between the District of Columbia and the present controversy is attenuated. They rely on this attenuated connection to assert that the interests of justice favor transfer, but the Court is unpersuaded. Federal Defendants correctly state that the connection between the facts of the controversy and the District of Columbia is attenuated. Because of this attenuated connection, the deference afforded to the Plaintiffs' choice of forum is "diminished." *See Citizen Advocates*, 561 F. Supp. at 1239. However, the nexus between the present controversy and the Southern District of California is only marginally stronger than the connection between the controversy and the District of Columbia. For this reason, the deference afforded to Plaintiffs' forum choice, though diminished, nevertheless tips the balance in their favor.

The public interest factors similarly offer little to overcome the deference afforded to Plaintiffs' choice of forum. Neither the first nor the second public interest factor affects this analysis.[1] The Federal Defendants' argument in support of transfer relies primarily on the third

---

[1] The first public interest factor, the transferee court's familiarity with the governing laws, is irrelevant here, as the Plaintiffs base all of their claims on federal environmental law, and this Court follows the well-settled "'principle that the transferee federal court is competent to decide federal issues correctly.'" *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003) (citing *In re Korean Air Lines Disaster of Sept. 1, 1993*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)) (further internal citations omitted). As to the second public interest factor, the Court has no reason to believe that the transferee court is more or less congested than this Court.

public interest factor – the local interest in deciding local controversies at home[2] – in conjunction with the attenuated nature of the connection between the District of Columbia and the final critical habitat determination for the San Diego fairy shrimp.  To determine whether a controversy is local in nature, courts consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official. *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006); *Sierra Club*, 276 F. Supp. 2d at 70.  From these factors, it is easy to see that the issues at stake in this case are not as strongly connected to the local interests of San Diego County and its residents as the Federal Defendants argue, nor is the connection to the District of Columbia as attenuated as they suggest.

It is undisputed that the final rule was reviewed and approved by officials of the FWS and the DOI Solicitor's Offices in the District of Columbia.  *See* Defs.' Mem. at 9.  Thus, the ultimate decision to issue the final rule on the critical habitat designation for the San Diego fairy shrimp was made in the District of Columbia.  The Federal Defendants assert, however, and the Plaintiffs do not dispute, that the government officials in the District of Columbia did not have any "particular involvement in the promulgation of the final critical habitat designation, which substantially was developed in the Carlsbad Fish and Wildlife Office in San Diego County." *Id.* Accepting both of these facts as true, the factors regarding where the challenged decision was made

---

[2] *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (emphasizing the importance of the "local interest in having localized controversies at home").

and whether there was any personal involvement by an official in the District of Columbia provide little support for either side, as each side's argument balances out the other's.

The location of the controversy is best described as having arisen in the Southern District of California because the portion of Plaintiffs' property that was designated as part of the critical habitat is located in San Diego County, which is wholly subsumed by the Southern District of California, *see* 28 U.S.C. § 84(d).  This factor weighs in favor of transfer.  On the other hand, the controversy involves an issue of federal environmental law under the Endangered Species Act that is subject to judicial review under the APA; no local or state property laws are involved.  This factor weighs against transfer.

Finally, this issue affects the residents of San Diego County no more directly than it does the residents of the District of Columbia, or any other district within the United States, as this is an issue regarding the critical habitat of an endangered species whose vitality is as much a national concern as it is a local concern. Quite simply, this case presents a controversy over the application of a federal law whose purpose is to ensure the conservation of endangered and threatened species and their ecosystems.  *See* 16 U.S.C. § 1531(b).  Although the fairy shrimp have a natural habitat in San Diego County, the outcome of this case will have no direct or unique impact upon the residents of San Diego County.  It is on this point that the Federal Defendants' argument for transfer ultimately fails.

In each of the cases that the Federal Defendants cite, the local population faced specific injury of a particularly local nature either as a result of, or upon enjoinment of, a challenged

action.³ In *National Wildlife Federation v. Harvey*, for example, the district court for the District of Columbia found that the local interest in deciding the controversy at home strongly favored transfer to the Southern District of Florida where the plaintiffs challenged the United States Corps of Engineers' water management schedule for Lake Okeechobee that allegedly jeopardized the population of an endangered bird species that is native to Lake Okeechobee. 437 F. Supp. 2d at 44. The court ruled in favor of transfer largely because "[t]he management of Lake Okeechobee affects not only the snail kite, which is local to Southern Florida, but also navigation, flood control, agriculture, and municipal water supplies in South Central Florida," and thus, the controversy "directly affects the citizens of Florida." *Id.* at 49. Similarly, in *Trout Unlimited v. U.S. Department of Agriculture*, a case where a not-for-profit organization dedicated to conserving North America's cold water fisheries sought to enjoin the operation of the Long Draw Reservoir, a water storage facility located in northern Colorado, the court transferred the case to the District of Colorado because "[t]he agricultural and municipal properties which depend upon the water stored in the Long Draw Reservoir are located in Colorado," meaning that "the affected public, the water users and residents of Cache la Padre basin, are located in Colorado," and because "the people who are concerned about the easement's potentially negative impact upon wildlife are located in Colorado." 944 F. Supp. at 17. And in *Citizen Advocates*, 561 F. Supp. at 1239-40, the court granted the federal

---

³ The Federal Defendants also cite a number of cases that are factually dissimilar in that they do not implicate issues of federal environmental law, and are therefore unpersuasive. *See Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6 (D.D.C. 1996) (alleging breach of contract and implied covenant of good faith by life insurance company); *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991) (involving allegations that the defendants conspired to artificially inflate the cost of transporting and handling iron ore in the Great Lakes region); *Harris v. Republic Airlines*, 699 F. Supp. 961, 963 (D.D.C. 1988) (class action regarding a labor dispute between employees and a company headquartered in Minnesota).

defendants' motion to transfer the case to the Northern District of Texas (Fort Worth Division) where an organization that was committed to improving the city of Fort Worth, Texas, sued to enjoin construction of highway segments in Forth Worth primarily because the highway would bring unwanted increases in traffic to the area and would diminish the historic preservation of the city.[4]

In contrast, the present case directly affects only the Plaintiffs, who oppose the inclusion of a part of their property in the land designated as critical habitat, and the FWS, which is charged with enforcing the Endangered Species Act. The land at issue is private property that is not accessible by the public, and there is no construction project currently planned for the property. *See* Pls.' Opp'n at 15. Furthermore, the outcome of this case will not affect the local water supply, availability of irrigation water, flood levels or economic development of San Diego County, or have any other foreseeable direct impact on the residents of San Diego County. *Cf., e.g., Nat'l Wildlife Fed'n*, 437 F. Supp. 2d at 47 (reasoning that the case was of local concern because the outcome could have affected the local drinking water supply, availability of irrigation water for agricultural canals, recharge of wellfields, sport fishing, commercial fisheries, and tourism). Thus, unlike the cases cited by the Federal Defendants, this dispute does not directly affect the residents of San Diego County. Because this controversy does not present issues of particularly local concern, the Federal Defendants cannot overcome the deference afforded to the Plaintiffs' choice of forum even where,

---

[4] The Federal Defendants cite two other cases in support of their motion to transfer venue, but in each of those cases, the court granted the motion to transfer because a nearly identical suit was already pending in the transferee court. *See Cal. Farm Bureau Fed'n v. Badgley*, No. 02-2328 (RCL), 2005 U.S. Dist. LEXIS 12861, at *5-7 (D.D.C. June 29, 2005); *Nw. Forest Res. Council v. Babbitt*, No. 93-1579 (JHG), 1994 WL 908586, at *3-4 (D.D.C. Apr. 13, 1994). This Court is not aware of any other lawsuit currently pending regarding the FWS's final rule designating Plaintiffs' property as critical habitat for the San Diego fairy shrimp.

as here, the connection of this controversy to southern California is only somewhat stronger than it is to the District of Columbia.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny the Federal Defendants' motion to transfer this case to the United States District Court for the Southern District of California. A memorializing order accompanies this Memorandum Opinion.


Date: November 3, 2008                                  /s/
                                           ROSEMARY M. COLLYER
                                           United States District Judge